## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SOCCER FEDERATION FOUNDATION, INC., 1140 Connecticut Ave., NW Suite 1200, Washington, DC 20036, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES SOCCER FEDERATION, INC., 1801 S. Prairie Ave., Chicago, IL 60616, <br><br> Defendant. | Civil Action No. _____ <br><br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff United States Soccer Federation Foundation, Inc., d/b/a U.S. Soccer Foundation (the "Foundation"), as and for its Complaint against Defendant United States Soccer Federation, Inc. (the "USSF"), by and through undersigned counsel, hereby alleges as follows:

### NATURE OF THE ACTION

1.      This is a dispute between the USSF and the Foundation over the Foundation's use of its name, "U.S. Soccer Foundation." The Foundation has served as the major charitable arm of soccer in the United States since 1994. The Foundation's mission is to enhance, assist and grow the sport of soccer in the United States, with a special emphasis on children in underserved communities. For over two decades, the Foundation—and only the Foundation—has used the "U.S. Soccer Foundation" name and logos to identify it to the public as the source of its goods and services. During this time, the Foundation has co-existed peacefully with the USSF, which has pursued its own, distinct mission of developing elite, world-class players, coaches and National Teams in the United States. But recently, and for the first time in decades, the USSF has threatened to hijack the Foundation's trademarks for its own use—likely in an effort to capitalize on lucrative business opportunities when the United States hosts the World Cup in 2026. The Foundation brings this lawsuit to protect its rights in its trademarks and their goodwill.

2.     The Foundation was created in 1991 so that an independent charitable organization could manage surplus funds from the 1994 World Cup tournament, held in the United States. Since the Foundation began its operations, it has had a mission of promoting soccer and healthy lifestyles for children in underserved communities. In creating easy and affordable access to quality soccer programs, the Foundation has provided more than $100 million to support soccer programs, to build soccer fields (or "pitches") in all 50 states and the District of Columbia, and to distribute more than one million items of soccer equipment to children in need.

3.     Since at least 1996, the Foundation has exclusively used in commerce the name "U.S. Soccer Foundation" and certain logos bearing that name as trademarks (collectively, the "Foundation Marks" or the "Marks") to identify the Foundation as the sole source of its goods and services. The Foundation has invested millions of dollars into building and sustaining substantial goodwill in the Foundation Marks. In addition, the Foundation has continually used and promoted the Foundation Marks with the awareness of the USSF, which has made no effort to control or otherwise interfere with the Foundation's use of the Marks.

4.     Notwithstanding that the Foundation has made exclusive use of the Foundation Marks for more than two decades, the USSF recently has demanded that the Foundation cease using the signature Foundation Marks. The USSF has never used the Foundation Marks, nor controlled the Foundation's use of the Marks; nevertheless, the USSF now demands that the Foundation cease using the trademarks long associated solely with the Foundation.

5.     Although the USSF is listed as the owner for certain federal trademark registrations for the Foundation Marks, both the Foundation and the USSF have shared the understanding that the Foundation is the actual owner of the Foundation Marks. And even if the USSF now claims

otherwise, the USSF has unreasonably delayed in challenging the Foundation's use of the Marks after decades of the Foundation's exclusive use of and investment in the Marks.

6.     The claims asserted in this Complaint arise under the Lanham Act of the United States, 15 U.S.C. § 1051, *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and are brought for a declaration by this Court that by using the Marks, the Foundation has not infringed and is not liable for infringing any of the USSF's trademark rights because: (i) the Foundation has superior rights to the Marks; and (ii) in any event, the USSF is barred from any claim to the Marks by the doctrines of laches, abandonment, acquiescence, waiver, estoppel and unclean hands, particularly in light of the USSF's decades-long failure to enforce any purported rights it now claims to have in the Marks after unjustly inducing the Foundation to invest in them. In addition: (iii) the trademark register should be rectified such that the Foundation is listed as the owner of any federal registrations or applications for the Foundation Marks, or those registrations and applications should be cancelled or denied; and (iv) in the alternative, to the extent that the USSF claims to have made use of the Marks, such use constitutes unfair or deceptive trade practice and unjust enrichment.

## THE PARTIES

7.     Plaintiff, the Foundation, is an independent, section 501(c)(3) nonprofit organization dedicated to enhancing, assisting and growing the sport of soccer in the United States, with a special emphasis on children in underserved communities, including by providing access to soccer programs for children living in areas traditionally underserved by the soccer community. The Foundation is organized under the laws of Delaware and its principal place of business is in Washington, D.C.  It is registered to do business in Washington, D.C.  The Foundation has awarded more than $100 million in grants to non-profit organizations across the country, distributed over one million items of soccer equipment to children in need, and educated members of Congress on

the power of using sport as a vehicle to prevent childhood obesity and juvenile delinquency and to promote mentorship and healthy lifestyles.

8.       Upon information and belief, Defendant, the USSF, is a section 501(c)(3) nonprofit organization organized under the laws of New York, with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

9.       Jurisdiction is proper in this court because this litigation arises under federal law, namely 17 U.S.C. § 1051 *et seq*. (Lanham Act).  The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201 (Declaratory Judgment Act).  Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and more than $75,000 is in controversy.

10.      Personal jurisdiction over the USSF is proper because the USSF has carried on a continuous and systematic part of its general business within the District of Columbia, including but not limited to overseeing and regulating various soccer clubs based within this District, as well as staging and promoting soccer events in the District.  The USSF also maintains a website, http://www.ussoccer.com, that is accessible and, upon information and belief, has been accessed in the District for commercial purposes, including some of the USSF's work within the District. Additionally, the court has personal jurisdiction pursuant to the District of Columbia long-arm statute, D.C. Code § 13-423 (2018), because, among other things, the USSF has transacted business in the District.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(d).

12.     An actual, present and justiciable case or controversy has arisen between the parties.  The USSF has claimed in recent weeks that the USSF is the owner of the name "U.S. Soccer Foundation"; that the Foundation must cease its use of the Foundation Marks; and that if the Foundation does not do so, the USSF would initiate legal action.  Because the USSF is now asserting ownership of the Marks and demanding that the Foundation cease use of the Marks or face legal action, a specific and immediate dispute exists between the Foundation and the USSF.

## FACTUAL BACKGROUND

### I.      THE FOUNDATION'S HISTORY, MISSION AND ACHIEVEMENTS

13.     The Foundation was formed in 1991 to serve as the major charitable organization of soccer in the United States.  The USSF recognized that any surplus funds remaining after the U.S.-held 1994 World Cup tournament should be managed by a separate, independent entity rather than the USSF itself.  The Foundation was created to serve as that entity.

14.     The Foundation was inactive until 1994, when it received the surplus funds from the World Cup tournament, as well as subsequent donations and grants, to fulfill its mission of assisting underserved communities through soccer-based youth development programs.

15.     By supporting the development of places to play and learn, the Foundation seeks to ensure that children in underserved communities have easy and affordable access to quality soccer programs that support their physical and personal development.

16.     The Foundation has established programs proven to help children embrace an active and healthy lifestyle while nurturing their personal growth beyond sports.  It has distributed more than $100 million to support soccer programs and initiatives to build pitches in all 50 states and the District of Columbia.  These programs, which use the Foundation Marks, include:

(a)      ***Soccer for Success***, a free after-school program that helps children establish healthy habits and develop critical life skills through trained coach-mentors and family engagement.  Participants learn about eating properly, among other healthy habits, and they acquire important decision-making and relationship skills from multiple interactions with coach-mentors and peers.  Coach-mentors meet with families regularly.  The *Soccer for Success* program, which currently enrolls more than 70,000 children, more generally offers education, mentorship, and valuable life skills, such as confidence, teamwork and perseverance.

(b)      ***Safe Places to Play***, which transforms underutilized areas, such as abandoned courts, empty schoolyards and vacant lots, into soccer pitches.  The Foundation also awards grants to help communities cover the costs of lighting, irrigation, construction, surfacing, and enhancement of their soccer pitches.  The Foundation has improved more than 1,100 play spaces nationwide.

(c)      The ***Passback*** program collects and redistributes new and gently used soccer equipment to kids in underserved communities.  The Foundation has collected and redistributed more than one million pieces of gently-used and new equipment since the program began.

17.      The Foundation also educates members of Congress about soccer's power to promote mentorship and healthy lifestyles for children.  For example, the Foundation hosts an annual Congressional Soccer Match, bringing together members of Congress, Capitol Hill staffers, and others to compete on the pitch.  Additionally, the Foundation helps urban soccer programs from across the nation develop relationships with their elected leaders and key decision-makers in Washington, D.C.

18.     The Foundation has used the Foundation Marks in connection with its goods and services since the mid-1990s, including in connection with providing association and other services to advance and promote interest in the sport of soccer in the United States, and especially to children in underserved communities.   For example, the Foundation Marks appear on fundraising material sent to prospective donors; on jerseys worn by children participating in its programs; at the top of the Foundation's website and social media pages; on the surface of pitches across the country; and on numerous other public-facing materials.   The Foundation has also provided Foundation-branded goods such as T-shirts, polo shirts, and sports bags.   The Foundation Marks are also prominently featured in all of the Foundation's marketing materials.

19.     Since it began its work, the Foundation has used the Foundation Marks in countless events and invested millions of dollars to promote the Foundation Marks over the years.   The substantial goodwill the Foundation has built over that time is closely tied to both the "U.S. Soccer Foundation" name and its associated logos.

20.     Although the Foundation got its start with the proceeds from the 1994 World Cup tournament, today it has an active fundraising program that brought in approximately $18 million from supporters over the past year alone.

21.     The Foundation is independent of the USSF in mission and in fact.   The Foundation's mission is to enhance, assist and grow the sport of soccer in the United States, with a special emphasis on children in underserved communities.   Today, the Foundation promotes soccer as a vehicle for social change by nurturing the physical and personal development of children in underserved communities.   In contrast, the USSF acts as the governing body for elite soccer in the United States, and it focuses on identifying and supporting international-caliber athletes who play on world-class National Teams.   As set forth on the USSF website, its mission

is "to make soccer, in all its forms, a preeminent sport in the United States and to continue the development of soccer at all recreational and competitive levels." The USSF has its own, distinct charitable arm—the U.S. Soccer Development Fund—which solicits donations to "develop world-class players, coaches and National Teams that inspire a nation."

## II.   THE FOUNDATION MARKS

22.   While the USSF and the Foundation have shared the understanding that the Foundation has exclusively used and controlled all aspects of the Foundation Marks, and that the Foundation is the actual owner of the Marks, the USSF nonetheless has filed applications with the United States Patent and Trademark Office ("USPTO") to register certain of the Marks.

23.   As such, certain Foundation Marks registered with the USPTO list the USSF, and not the Foundation, as the owner of those registrations:

| Reg. No. | Mark | Reg. Date | First Use In Commerce | Goods/Services (Int'l Class) |
|---|---|---|---|---|
| 2,327,950 | **U.S. SOCCER FOUNDATION** | 3/14/2000 | 1996 | Lapel pins of non-precious metal (6) |
| | | | 1996 | Providing services to advance the sport of soccer in the United States, namely, fund raising, program development, grant making, and scholarships (41) |
| | | | 1996 | Association services; namely, promoting the interests of member soccer clubs, scheduling games and promoting interest in soccer; information services; namely, providing information about the sport of soccer (42) |
| 2,235,888 |  | 3/30/1999 | 1996 | Lapel pins of non-precious metal (6) |
| | | | 1996 | Providing services to advance the sport of soccer in the United States; namely, conducting workshops, sports clinics, and seminars in the field of soccer; promoting and staging of athletic events; providing sports officiating |

| Reg. No. | Mark | Reg. Date | First Use In Commerce | Goods/Services (Int'l Class) |
|---|---|---|---|---|
| | | | | services; conducting entertainment in the nature of soccer exhibitions and games (41) |
| | | | 1996 | Association services; namely, promoting the interests of member soccer clubs, scheduling games and promoting interest in soccer; information services; namely, providing information about the sport of soccer (42) |
| 2,702,785 | U.S. SOCCER FOUNDATION | 4/1/2003 | 2001 | Folders (16) |
| | | | 2002 | Sports bags (18) |
| | | | 1999 | T-shirts, polo shirts (25) |
| 2,702,781 |  | 4/1/2003 | 2001 | Folders (16) |
| | | | 2002 | Sports bags (18) |
| | | | 1999 | T-shirts, polo shirts (25) |

24.     In addition, the USSF filed with the USPTO the following application for registration, listing the USSF, and not the Foundation, as the owner of this Foundation Mark:

| App. Serial No. | Mark | Filing Date | First Use In Commerce | Goods/Services (Int'l Class) |
|---|---|---|---|---|
| 87/495,842 |  | 6/19/2017 | TBD | Lapel pins of non-precious metal (14) |
| | | | TBD | Folders (16) |
| | | | TBD | T-shirts, polo shirts (25) |
| | | | TBD | Association services, namely, promoting interest in soccer and the interests of member soccer clubs, scheduling games and promoting interest in soccer (35) |
| | | | TBD | Providing educational and entertainment services to advance the sport of soccer in the United States, namely, conducting workshops, sports clinics, and seminars in the field of soccer; promoting and administering of |

| App. Serial No. | Mark | Filing Date | First Use In Commerce | Goods/Services (Int'l Class) |
|---|---|---|---|---|
| | | | | athletic events; providing sports officiating services; conducting entertainment in the nature of soccer exhibitions and games; scheduling soccer games; information services, namely, providing sports information in the field of soccer (41) |

25.     Upon information and belief, the USSF has never—and certainly not within the last three years—itself used the Foundation Marks in connection with the USSF's own goods or services.  And although the USSF is listed in the USPTO's records as the owner of the above registrations and applications, at no time was the USSF ever the actual owner of the Foundation Marks.

## III.     THE FOUNDATION'S USE OF THE FOUNDATION MARKS WITH THE USSF'S KNOWLEDGE AND CONSENT

26.     The Foundation has consistently used the Foundation Marks in commerce—including the name "U.S. Soccer Foundation" and logos such as —since at least 1996.

27.     The USSF has been aware of these uses by the Foundation, but has made no effort to control the Foundation's use of the Foundation Marks.  To wit, the USSF has not exerted quality control over the Foundation's services or goods bearing the Marks, has no agreement with the Foundation over how the Marks must be used, and has brought no enforcement actions over the Foundation's use of or quality standards for the Marks.

28.     The Foundation not only built goodwill in using the Foundation Marks for decades in its programs, advocacy, and fundraising, but it also invested decades and millions of dollars building goodwill value in the Marks.  The Foundation Marks are on the uniforms and shirts that the Foundation gives out to children.  They are on the pitches built through the *Safe Places to Play* program.  They appear on the Foundation's letterhead, annual report, advertising materials,

website, and social media accounts.  Moreover, the Foundation has enforced the Foundation Marks against third parties' uses.  During these decades of use by the Foundation, while the USSF and the Foundation would attempt to cooperate to achieve their respective separate missions, the USSF neither sought to nor actually did perform any meaningful control over the Foundation's use of the Foundation Marks.

29.     Upon information and belief, from 1996 through 2018, the USSF has made no use of the Foundation Marks (other than to refer to the Foundation as a separate entity), and only the Foundation has produced goods and offered services under the Foundation Marks or otherwise used them in commerce.

30.     While the USSF is listed as the owner of the above registrations and applications, both the Foundation and the USSF have had the understanding that the Foundation, not the USSF, is the actual owner of the Foundation Marks.

31.     The USSF has itself acted as if it believed the Foundation controlled the Foundation Marks.  For example, in 2009 and 2010, the Foundation awarded grants to the USSF, pursuant to which the USSF signed grant agreements that required the USSF to "first provide notice to the Foundation" before it used "a Foundation logo."

32.     Notwithstanding the decades of practice and a consistent and uniform course of dealings, the USSF has recently and abruptly done an about-face, demanding that the Foundation cease using the Foundation Marks and indicating an intention to use them in the future.

33.     At a meeting that took place on or about September 11, 2018 between representatives of the Foundation and the USSF, the USSF refused to confirm that they would not use the Foundation Marks—including the name "U.S. Soccer Foundation"—in the future for a foundation of their own.  Upon information and belief, the USSF seeks to secure control over the

Foundation Marks in advance of the 2026 World Cup, which will take place in the United States, Canada, and Mexico and will entail significant sponsorship and fundraising opportunities tied to the public awareness and goodwill built upon the Marks.

34.     At a meeting on or about November 12, 2018 between representatives of the Foundation and the USSF, the USSF represented that: (i) the USSF is the owner of the name "U.S. Soccer Foundation"; (ii) the USSF had an interest in using the name "U.S. Soccer Foundation" for its own services in the future; (iii) the Foundation's use of the Foundation Marks purportedly had caused and will cause customer confusion; (iv) the USSF expects the Foundation to stop identifying itself as the "U.S. Soccer Foundation" and must cease use of the name; and (v) unless the Foundation signs an agreement to change its name, the USSF would initiate legal action.

## CLAIMS FOR RELIEF

### CLAIM ONE
**(Declaratory Judgment of Non-Infringement)**

35.     The Foundation hereby incorporates each and every allegation contained in Paragraphs 1 through 34 above.

36.     The Foundation's use of the Foundation Marks does not infringe any trademark rights that the USSF claims to have in the Foundation Marks, including because the Foundation is the owner of the Marks and in any event the Foundation's use of the Marks is not likely to cause confusion as to the source, sponsorship or affiliation of its goods or services with the USSF. Thus, the Foundation's use of the Foundation Marks does not infringe any purported rights that the USSF asserts in the Marks.

37.     An actual, present and justiciable controversy has arisen between the Foundation and the USSF concerning the Foundation's right to use the Foundation Marks, and whether the Foundation's use of the Marks constitutes trademark infringement. The Foundation and the USSF

have adverse legal interests.  The USSF has represented that it, and not the Foundation, is the owner of the Foundation Marks, that the Foundation's use of the Marks has caused and will cause confusion, and that the USSF will initiate legal action unless the Foundation agrees to cease its use.  The Foundation denies any wrongdoing.  The dispute between the Foundation and the USSF is substantial, definite, immediate and not hypothetical.

38.    To resolve the uncertainty raised by the USSF, and to afford the Foundation relief from the uncertainty and controversy that the USSF's assertions have precipitated, the Foundation is entitled to a declaratory judgment from this Court that the Foundation has not infringed upon any of the USSF's alleged rights in the Foundation Marks.

**CLAIM TWO**
**(Declaratory Judgment of No Liability for Infringement Due to Laches, Abandonment, Acquiescence, Waiver, Estoppel and Unclean Hands)**

39.    The Foundation hereby incorporates each and every allegation contained in Paragraphs 1 through 38 above.

40.    The USSF has been aware of the Foundation's use of the Foundation Marks since the Foundation began using them in 1996.  In all that time, the USSF has never brought a claim asserting its ownership of the Foundation Marks or alleging infringement by the Foundation of those Marks.

41.    The USSF has performed no meaningful quality control over the Foundation's use of the Foundation Marks.

42.    The USSF has not used the Foundation Marks in commerce.

43.    The USSF has repeatedly represented to the Foundation that the Foundation controlled and/or had rights to the Foundation Marks.

44.    In reliance on these and other representations, the Foundation has invested more than two decades and millions of dollars building recognition of and goodwill toward the Foundation Marks.

45.    The Foundation would suffer economic prejudice and irreparable economic and non-economic harm if the USSF were to claim the Foundation Marks as its own, or to claim the Foundation infringed any purported rights in those Marks, after waiting so long to do so.

46.    As more than two decades have passed since the Foundation began using the Foundation Marks, memories have faded and evidence may no longer be available concerning the ownership, licensing, supervision or control of the Marks.   The Foundation would accordingly suffer trial prejudice if the USSF were to assert infringement claims now.

47.    The USSF's delay in claiming rights to the Foundation Marks is not excusable.

48.    If the USSF were now to assert control over the Foundation Marks and use them for its own purposes, it would unjustly benefit from the investments that it induced the Foundation to make in the Marks.

49.    Upon information and belief, the USSF intentionally relinquished any purported right to enforce the Foundation Marks.   Moreover, the USSF's actions, and failure to act, led the Foundation to reasonably believe that the USSF did not intend to enforce any of its purported rights in the Foundation Marks.

50.    Thus, an actual, present and justiciable controversy has arisen between the Foundation and the USSF concerning the Foundation's right to use the Foundation Marks.   The dispute between the Foundation and the USSF is substantial, definite, immediate and not hypothetical.

51.     To resolve the uncertainty raised by the USSF, and to afford the Foundation relief from the uncertainty and controversy that the USSF's assertions have precipitated, the Foundation is entitled to a declaratory judgment from this Court that the USSF is enjoined from claiming infringement of the Foundation Marks, and that the Foundation is not liable for any alleged infringement of the Foundation Marks, based on the doctrines of laches, abandonment, acquiescence, waiver, estoppel and the USSF's unclean hands.

### CLAIM THREE
**(Rectification of the Register – Federal Registration Nos. 2,327,950; 2,235,888; 2,702,785; and 2,702,781 and Application Serial No. 87/495,842, 15 U.S.C. § 1119)**

52.     The Foundation hereby incorporates each and every allegation contained in Paragraphs 1 through 51 above.

53.     The Foundation, and not the USSF, is the actual owner of the Foundation Marks.

54.     The Foundation believes that it will be damaged by the continued registration of Registration Nos. 2,327,950; 2,235,888; 2,702,785; and 2,702,781, and by the registration of Application Serial No. 87/495,842, if the USSF continues to be listed as the owner because the Foundation, and not the USSF, is the actual, valid owner of the Foundation Marks that are the subjects of those registrations and that application.

55.     For that reason, the Foundation seeks an Order directing the USPTO to rectify the register such that either the Foundation is listed as the rightful owner of the registrations and application identified above and the USSF is removed as the listed owner, or in the alternative, cancellation of these registrations and denial of this application, on the grounds that: (i) the Foundation, not the USSF, is the proper owner of the Foundation Marks that are the subjects of these registrations and that application; (ii) the USSF did not and cannot make the requisite use of the Marks that are the subjects of the registrations and application; and/or (iii) the registrations and application have been abandoned by non-use.

## CLAIM FOUR
### (Unfair or Deceptive Trade Practice, DC ST § 28-3904)

56.     The Foundation hereby incorporates each and every allegation contained in Paragraphs 1 through 55 above.

57.     The Foundation Marks are closely associated with the Foundation.  It has used the Foundation Marks for more than two decades.  The Foundation's charitable programs, advocacy, and messages are closely associated in the public's mind with the Foundation Marks.

58.     As a claim alleged in the alternative, to the extent that the USSF claims to have made use of the Foundation Marks or substantially similar marks (including, upon information and belief, reflected in any trademark registration or application documents), such use would misrepresent a material fact, to the detriment of the Foundation, as to the USSF's activities and tend to mislead consumers into believing the Foundation sponsored, approved, or was affiliated with the USSF's activities, in violation of District of Columbia law.

## CLAIM FIVE
### (Unjust Enrichment)

59.     The Foundation hereby incorporates each and every allegation contained in Paragraphs 1 through 58 above.

60.     The USSF has watched over the course of more than two decades as the Foundation invested significant time and money in building and promoting the Foundation Marks, while the USSF did little or nothing to assert control over the Marks.

61.     The USSF has repeatedly represented to the Foundation that the Foundation controlled the Foundation Marks.

62.     As a claim alleged in the alternative, to the extent that the USSF claims to have made use of the Foundation Marks or substantially similar marks (including, upon information and belief, reflected in any trademark registration or application documents), the USSF would unjustly

retain the benefits of the Foundation's investments in the Marks.  Due to the USSF's failure to control the Foundation Marks and the repeated representations that the Foundation controlled the marks, such retention of benefits would be unjust.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for judgment in its favor and requests the following relief:

1.  Declare that: (i) the Foundation has trademark rights in the Foundation Marks superior to any asserted rights by the USSF; (ii) the Foundation has not infringed upon any of the Foundation Marks; and (iii) the Foundation is not liable for any claim of trademark infringement alleged by the USSF, including based on the doctrines of laches, abandonment, acquiescence, waiver, estoppel and unclean hands;

2.  Permanently enjoin the USSF from claiming that the Foundation infringed or infringes the Foundation Marks;

3.  Permanently enjoin the USSF from using the Foundation Marks or any other marks in a manner that would cause a likelihood of confusion with the Foundation Marks;

4.  Rectification of the register in the form of an Order that the USPTO either: (i) identify the Foundation as the owner of Registration Nos. 2,327,950; 2,235,888; 2,702,785; and 2,702,781, and Application Serial No. 87/495,842, and remove the USSF as the listed owner; or (ii) in the alternative, cancel those registrations and that application.

5.  Award damages to the Foundation for any of the USSF's unfair or deceptive trade practices and the unjust enrichment the USSF derived from its use of the Foundation Marks or substantially similar marks;

6.      Award punitive damages to the Foundation;

7.      Award the Foundation costs and reasonable attorney fees, including but not limited

to those provided pursuant to 15 U.S.C. § 1117 as an exceptional case; and

8.      Grant such further relief as it deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Federal Rule of Civil Procedure 38, the Foundation demands trial by jury for

all claims triable by jury.


Dated: December 6, 2018                    Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____

Scott E. Lerner
DC Bar # 1024964
scottlerner@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
Fax: (202) 538-8100

Robert L. Raskopf (*pro hac vice forthcoming*)
robertraskopf@quinnemanuel.com
Todd Anten (*pro hac vice forthcoming*)
toddanten@quinnemanuel.com
Julia M. Beskin (*pro hac vice forthcoming*)
juliabeskin@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff United States Soccer*
*Federation Foundation, Inc.*