**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES SOCCER FEDERATION FOUNDATION, INC., 1140 Connecticut Ave., NW Suite 1200, Washington, DC 20036, | |
| Plaintiff, | Civil Action No. 1:18-cv-02856-TJK |
| v. | **ANSWER & COUNTERCLAIMS** |
| UNITED STATES SOCCER FEDERATION, INC., 1801 S. Prairie Ave., Chicago, IL 60616, | |
| Defendant. | |

**DEFENDANT AND COUNTERCLAIMANT UNITED STATES SOCCER
FEDERATION, INC.'S ANSWER AND COUNTERCLAIMS
AND DEMAND FOR JURY TRIAL**

Defendant United States Soccer Federation, Inc. ("U.S. Soccer"), through undersigned

counsel, answers the Complaint of Plaintiff United States Soccer Federation Foundation, Inc.

(the "Foundation"), as follows. The paragraph numbers of this Answer correspond to the

paragraph numbers of the Complaint. The use of capitalized terms in this Answer correspond to

the defined terms used in the Complaint. The denial of a paragraph of the Complaint constitutes

a denial of each allegation within that paragraph. U.S. Soccer intends no implied admissions;

unless an allegation is expressly admitted in this Answer, the allegation is denied.

**ANSWER**

**NATURE OF THE ACTION**

1.      U.S. Soccer admits that the Foundation was established to assist in promoting the

mission, general purposes, and goals of U.S. Soccer, has served as a non-exclusive charitable

arm of U.S. Soccer since its formation, and today is a charitable organization supporting the sport of soccer in the United States.  U.S. Soccer denies the remaining allegations in Paragraph 1.

2.      U.S. Soccer admits that the Foundation was incorporated in 1991 and has a mission of promoting soccer in the United States, and that its original purpose was, among other things, to support U.S. Soccer.  U.S. Soccer denies the remaining allegations in Paragraph 2.

3.      U.S. Soccer admits that the Foundation has used the word mark "U.S. SOCCER FOUNDATION" and stylized versions of the mark that incorporate certain logos owned by U.S. Soccer (the "Marks at Issue") with the awareness, oversight, and approval of U.S. Soccer.  U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the specific amount of monies spent by the Foundation to promote the Marks at Issue or the specific locations where soccer fields have been built.  U.S. Soccer denies the remaining allegations in Paragraph 3.

4.      U.S. Soccer denies the allegations in Paragraph 4.

5.      U.S. Soccer admits that U.S. Soccer is the owner of the Marks at Issue.  U.S. Soccer denies the remaining allegations in Paragraph 5.

6.      The allegations in Paragraph 6 are legal conclusions to which no response is required.  To the extent that a response is required, U.S. Soccer denies the allegations in Paragraph 6.

## THE PARTIES

7.      U.S. Soccer denies that the Foundation is an independent organization, as it understands that term.  U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the specific amount of monies the Foundation has awarded to other nonprofit organizations.  U.S. Soccer admits the remaining allegations in Paragraph 7, including that U.S. Soccer member organizations have donated certain soccer equipment to the Foundation, which has then distributed that equipment to children in need.

8.      U.S. Soccer admits the allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.      U.S. Soccer does not waive and expressly reserves all rights to object to jurisdiction as permitted by the Court's Local Rules and the Federal Rules of Civil Procedure. U.S. Soccer avers that the Foundation has failed to state a claim for declaratory judgment relief and denies the remaining allegations in Paragraph 9.

10.     U.S. Soccer admits that it maintains the website www.ussoccer.com. U.S. Soccer otherwise denies the allegations in Paragraph 10.

11.     U.S. Soccer admits that venue is proper in this District, but only if the Court can exercise personal jurisdiction over U.S. Soccer. U.S. Soccer otherwise denies the allegations in Paragraph 11.

12.     U.S. Soccer avers that the Foundation has failed to state a claim for declaratory judgment relief and denies the remaining allegations in Paragraph 12.

## FACTUAL BACKGROUND

### I.      THE FOUNDATION'S HISTORY, MISSION AND ACHIEVEMENTS

13.     U.S. Soccer admits that the Foundation was formed in 1991 and funded by U.S. Soccer with proceeds from the 1994 FIFA World Cup tournament. U.S. Soccer denies the remaining allegations in Paragraph 13.

14.     U.S. Soccer admits that the Foundation appears to have been inactive until 1994 and that the Foundation, with the full blessing of U.S. Soccer, received proceeds from the 1994 FIFA World Cup tournament in 1994. U.S. Soccer denies the remaining allegations in Paragraph 14.

15.     U.S. Soccer admits that the Foundation's activities seek to improve access to soccer in underserved communities. U.S. Soccer otherwise denies the allegations in Paragraph 15.

16.     U.S. Soccer admits that the Foundation distributes funds to support soccer programs and initiatives, including Soccer for Success, Safe Places to Play, and the Passback program. U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 16.

17.     U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 17.

18.     U.S. Soccer admits that U.S. Soccer has allowed the Foundation to use the Marks at Issue (with oversight and control) since the mid-1990s in connection with the goods and services identified in the respective trademark registrations, including on the materials described in Paragraph 18. U.S. Soccer denies the remaining allegations in Paragraph 18.

19.     U.S. Soccer admits that the Foundation has used and promoted the Marks at Issue (in furtherance of U.S. Soccer's mission and with U.S. Soccer's oversight and control) since it began its operations, including at events. U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the total amounts expended by the Foundation to promote the Marks at Issue. U.S. Soccer denies the remaining allegations in Paragraph 19.

20.     U.S. Soccer admits that the Foundation was funded through USA 94, the committee U.S. Soccer established to handle proceeds from the 1994 FIFA World Cup, and has an active fundraising program. U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 20.

21.     U.S. Soccer admits that it is the National Governing Body for the sport of soccer in the United States and that its mission includes making "soccer, in all its forms, a preeminent sport in the United States and to continue the development of soccer at all recreational and competitive levels." U.S. Soccer also admits that the U.S. Soccer Development Fund exists to advance U.S. Soccer's mission. U.S. Soccer denies the remaining allegations in Paragraph 21.

## II.     THE MARKS AT ISSUE

22.     U.S. Soccer admits that it filed applications with the USPTO to register the Marks at Issue. U.S. Soccer denies the remaining allegations in Paragraph 22.

23.     U.S. Soccer admits that it is the owner of the Marks at Issue and the registrations identified in Paragraph 23. U.S. Soccer denies the remaining allegations in Paragraph 23.

24.     U.S. Soccer admits that it is the owner of the Marks at Issue and filed with the USPTO the application for registration of the trademark bearing Application Serial Number

87/459,842 identified in Paragraph 24.   U.S. Soccer denies the remaining allegations in Paragraph 24.

25.      U.S. Soccer denies the allegations in Paragraph 25.

### III.      THE FOUNDATION'S USE OF THE MARKS AT ISSUE WITH U.S. SOCCER'S KNOWLEDGE AND CONSENT

26.      U.S. Soccer admits that the Foundation has used the Marks at Issue since at least 1996, including the word mark U.S. SOCCER FOUNDATION and the stylized version described in Paragraph 26 (with U.S. Soccer's oversight and control).   U.S. Soccer denies the remaining allegations in Paragraph 26.

27.      U.S. Soccer admits that that it has been aware of the Foundation's use of the Marks at Issue, including because U.S. Soccer exercised oversight and control.   U.S. Soccer denies the remaining allegations in Paragraph 27.

28.      U.S. Soccer admits that the Marks at Issue have appeared on uniforms, shirts, pitches, letterhead, annual reports, advertising materials, websites, and social media accounts. U.S. Soccer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the Foundation's enforcement of the Marks at Issue against third parties. U.S. Soccer denies the remaining allegations in Paragraph 28.

29.      U.S. Soccer denies the allegations in Paragraph 29.

30.      U.S. Soccer admits that it is the owner of the registrations and applications for the Marks at Issue.   U.S. Soccer denies the remaining allegations in Paragraph 30.

31.      U.S. Soccer admits that the Foundation awarded grants to U.S. Soccer in 2009 and 2010 pursuant to grant agreements.   U.S. Soccer denies the remaining allegations in Paragraph 31.

32.      U.S. Soccer denies the allegations in Paragraph 32.

33.      U.S. Soccer admits that a meeting took place on or about September 11, 2018 between representatives of U.S. Soccer and the Foundation in which the Marks at Issue were discussed.   U.S. Soccer denies the remaining allegations in Paragraph 33.

34.     U.S. Soccer admits that a meeting took place on or about November 12, 2018 between representatives of U.S. Soccer and the Foundation in which U.S. Soccer confirmed its ownership of the Marks at Issue and expressed concern regarding the potential for consumer confusion from the Foundation's continued use of the Marks at Issue following the Foundation's announcement earlier in 2018 that they desired to disaffiliate from U.S. Soccer. U.S. Soccer denies the remaining allegations in Paragraph 34.

## CLAIMS FOR RELIEF

## CLAIM ONE

### (Declaratory Judgment of Non-Infringement)

35.     U.S. Soccer incorporates herein by this reference its response to Paragraphs 1 through 34 of the Complaint.

36.     U.S. Soccer denies the allegations in Paragraph 36.

37.     U.S. Soccer admits that it is the owner of the Marks at Issue. U.S. Soccer denies the remaining allegations in Paragraph 37.

38.     U.S. Soccer denies the allegations in Paragraph 38.

## CLAIM TWO

### (Declaratory Judgment of No Liability for Infringement Due to Laches, Abandonment, Acquiescence, Waiver, Estoppel and Unclean Hands)

39.     U.S. Soccer incorporates herein by this reference its response to Paragraphs 1 through 38 of the Complaint.

40.     U.S. Soccer admits that it is aware of the Foundation's use of the Marks at Issue, including because U.S. Soccer exercised oversight and control. U.S. Soccer denies the remaining allegations in Paragraph 40.

41.     U.S. Soccer denies the allegations in Paragraph 41.

42.     U.S. Soccer denies the allegations in Paragraph 42.

43.     U.S. Soccer denies the allegations in Paragraph 43.

44.     U.S. Soccer denies the allegations in Paragraph 44.

45.     U.S. Soccer denies the allegations in Paragraph 45.

46.     U.S. Soccer denies the allegations in Paragraph 46.

47.     U.S. Soccer denies the allegations in Paragraph 47.

48.     U.S. Soccer denies the allegations in Paragraph 48.

49.     U.S. Soccer denies the allegations in Paragraph 49.

50.     U.S. Soccer denies the allegations in Paragraph 50.

51.     U.S. Soccer denies the allegations in Paragraph 51.

## CLAIM THREE

**(Rectification of the Register – Federal Registration Nos. 2,327,950; 2,235,888; 2,702,785; and 2,702,781 and Application Serial No. 87/495,842, 15 U.S.C. § 1119)**

52.     U.S. Soccer incorporates herein by this reference its response to Paragraphs 1 through 51.

53.     U.S. Soccer denies the allegations in Paragraph 53.

54.     U.S. Soccer denies the allegations in Paragraph 54.

55.     U.S. Soccer denies the allegations in Paragraph 55.

## CLAIM FOUR

**(Unfair or Deceptive Trade Practice, DC ST § 28-3904)**

56.     U.S. Soccer incorporates herein by this reference its response to Paragraphs 1 through 55.

57.     U.S. Soccer admits that the Foundation has used the Marks at Issue for more than two decades pursuant to U.S. Soccer's oversight and control. U.S. Soccer denies the remaining allegations in Paragraph 57.

58.     U.S. Soccer denies the allegations in Paragraph 58.

## CLAIM FIVE

**(Unjust Enrichment)**

59.     U.S. Soccer incorporates herein by this reference its response to Paragraphs 1 through 58.

60.     U.S. Soccer denies the allegations in Paragraph 60.

61.     U.S. Soccer denies the allegations in Paragraph 61.

62.     U.S. Soccer denies the allegations in Paragraph 62.

## GENERAL DENIAL

63.     U.S. Soccer denies each and every allegation of the Complaint not expressly admitted in this Answer.

## PRAYER FOR RELIEF

With respect to the Foundation's "Prayer for Relief," including each subpart thereto:

1.     U.S. Soccer denies that the Foundation is entitled to any relief; and

2.     U.S. Soccer avers that judgment should be entered in U.S. Soccer's favor.

### First Affirmative Defense
### (Laches)

64.     Plaintiff is barred in whole or in part from enforcing its claims against U.S. Soccer or recovering any alleged damages by the equitable doctrine of laches.

### Second Affirmative Defense
### (Waiver)

65.     On information and belief, Plaintiff is barred in whole or in part from enforcing its claims against U.S. Soccer or recovering any alleged damages by the equitable doctrine of waiver.

### Third Affirmative Defense
### (Estoppel)

66.     On information and belief, Plaintiff is barred in whole or in part from enforcing its claims against U.S. Soccer or recovering any alleged damages by the equitable doctrine of estoppel.

### Fourth Affirmative Defense
### (Unclean Hands)

67.     On information and belief, Plaintiff is barred in whole or in part from enforcing its claims against U.S. Soccer or recovering any alleged damages by the equitable doctrine of

unclean hands, including because Plaintiff has acted contrary to its Articles of Incorporation and hence *ultra vires*.

## Fifth Affirmative Defense
### (Failure to State a Claim)

68.    Plaintiff has failed to state a claim against U.S. Soccer.

## Sixth Affirmative Defense
### (Offset)

69.    If Plaintiff is entitled to recover damages against U.S. Soccer as alleged in its Complaint, such recovery against U.S. Soccer must be offset both by the amount of damages suffered by U.S. Soccer as a result of Plaintiff's own wrongful acts and by any benefits U.S. Soccer has already provided to Plaintiff through monetary donations or otherwise.

## Seventh Affirmative Defense
### (Failure to Mitigate)

70.    If Plaintiff is entitled to recover damages against U.S. Soccer as alleged in its Complaint, such recovery against U.S. Soccer must be offset by the amount of damages suffered by U.S. Soccer as a result of Plaintiff's own failure to mitigate.

## Eighth Affirmative Defense
### (Reservation of Defenses)

71.    U.S. Soccer has insufficient knowledge or information at this time upon which to form a belief as to whether it may have additional, and as yet unstated, affirmative defenses available, and U.S. Soccer reserves the right to assert such additional defenses in the event discovery, investigation or analysis indicates they are proper.

## Ninth Affirmative Defense
### (Lack of Personal Jurisdiction)

72.    The complaint, and each and every purported claim for relief of the complaint, is barred, in whole or in part, because this Court lacks personal jurisdiction.

## DEFENDANT UNITED STATES SOCCER FEDERATION, INC.'S COUNTERCLAIMS

1.      Counterclaimant United States Soccer Federation, Inc. ("Counterclaimant" or "U.S. Soccer") complains against and alleges as to Counterdefendant United States Soccer Federation Foundation, Inc. ("Counterdefendant" or "the Foundation"), as follows:

### NATURE OF ACTION

2.      U.S. Soccer asserts these Counterclaims for declaratory relief, trademark infringement, unfair competition, unfair and deceptive trade practices, copyright infringement, fraudulent and negligent misrepresentation, and unjust enrichment against the Foundation pursuant to Rule 13 of the Federal Rules of Civil Procedure.

### THE PARTIES

3.      U.S. Soccer is, and at all times relevant hereto was, a New York not-for-profit corporation with its principal place of business in Chicago, Illinois.

4.      The Foundation is a Delaware not-for-profit corporation with its principal place of business in Washington, DC.

### JURISDICTION AND VENUE

5.      Based on, *inter alia*, the allegations in the Foundation's Complaint, there presently exists a justiciable controversy regarding the validity and ownership of certain trademarks and service marks owned by U.S. Soccer ("the U.S. Soccer Marks"), specifically the Marks at Issue, and the Foundation's right to use these marks.

6.      This Court has jurisdiction over the counterclaims in this action under 28 U.S.C. §§ 1331, 1338(a), and 2201 and 15 U.S.C. § 1121(a) because U.S. Soccer's claims arise under the Lanham Act, 15 U.S.C. § 1051 et seq., the Copyright Act, 17 U.S.C § 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

7.      The Foundation is subject to personal jurisdiction in this Court because its principal place of business is in Washington, DC, and because it has submitted to the jurisdiction of the Court by filing the present Complaint with the Court.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the Foundation has filed its complaint in the District, because the Foundation is doing business within this District, and because the Foundation's acts or omissions giving rise to these Counterclaims, as well as substantial injury to U.S. Soccer, have occurred and will continue to occur in interstate commerce and in this District.

## GENERAL ALLEGATIONS

### *U.S. Soccer: Past to Present*

9.      As the governing body of soccer in all its forms in the United States, U.S. Soccer has played an integral role in charting the course for the sport in this country for over 100 years. Originally founded in 1913 as the United States Football Association, U.S. Soccer was one of the world's first organizations to be affiliated with the Fédération Internationale de Football Association ("FIFA"), soccer's world governing body.

10.      In additional to being a National Association member of FIFA, U.S. Soccer is also recognized by the United States Olympic Committee as the national governing body (an "NGB") for the sport of soccer in the United States pursuant to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501 *et seq*. Among other requirements, to remain a designated NGB, U.S. Soccer must be a member in good standing of FIFA, the international federation governing the sport of soccer.

11.      Since its inception in the early 1900s, U.S. Soccer has grown into one of the sport's organizational leaders, integrating player participation and player development into a comprehensive National Team program. U.S. Soccer is structured as a tax-exempt, not-for-profit 501(c)(3) charitable organization based, in part, on its purpose of fostering national or international amateur sports competition.

12.      Since its formation, U.S. Soccer's mission has been clear and simple: to make soccer the preeminent sport in the United States. To this end, U.S. Soccer's National Teams have won at the highest levels, including in the FIFA World Cup and at the Olympics, and have represented this country at the Paralympic Games. National Team players are competitive on the

world stage and, when not representing this country, National Team players compete in professional leagues in the United States and across the world. U.S. Soccer was also responsible for bringing the 1994, 1999, and 2003 FIFA World Cup tournaments to the United States and recently, in collaboration with Canada and Mexico, was awarded the 2026 FIFA World Cup.

13.     To achieve this success, U.S. Soccer has invested not only in the development of athletes at the youth and professional levels, but also in the coaches who train and develop these players, and in the infrastructure of the sport, for example by setting the rules of play and training the referees who enforce them.

14.     U.S. Soccer's steadfast commitment to growing the sport has sparked widespread interest in soccer among the American public, which only continues to grow. For example, in 2014, over 24 million U.S. viewers tuned in to watch the U.S. Men's National Team face Portugal during the 2014 FIFA World Cup, and over 25 million U.S. viewers watched the Women's National Team defeat Japan to win the 2015 FIFA World Cup. Tickets for exhibition games ("friendlies") featuring the National Teams continue to sell out, as do games like the most recent Major League Soccer ("MLS") Cup Championship and All-Star Game and the National Women's Soccer League Championship.

15.     In comparison, almost three decades ago, soccer in the United States stood on different ground from where it does today. For example, in 1990, the U.S. Men's National Team was participating in the FIFA World Cup for the first time in 40 years.

16.     The progress that U.S. Soccer has made to advance its mission can be traced, in a meaningful way, to 1994 when, for the first time, U.S. Soccer hosted the most important international competition for the world's most popular sport: the FIFA World Cup.

17.     Today, U.S. Soccer is governed in large part by various constituent member groups that broadly represent the interests of: adult amateur soccer; youth soccer; professional athletes; and the professional leagues. These member groups, our councils, comprise most of U.S. Soccer's National Council ("the National Council"), the representative membership body of U.S. Soccer that has the authority to, *inter alia*, elect the President of U.S. Soccer; amend U.S.

Soccer's bylaws; approve U.S. Soccer's budget; adopt, rescind, or amend policies adopted by U.S. Soccer's Board of Directors; and elect members of the Foundation's Board.

18.     Today, U.S. Soccer continues to strive towards its simple mission of promoting, developing, and governing soccer in the United States in order to make it the preeminent sport, recognized for: excellence in participation, spectator appeal, international competition, and gender equality. Most recently, U.S. Soccer won the right, along with Canada and Mexico, to host the 2026 FIFA World Cup, in furtherance of its aim of making the world's sport into this nation's preeminent sport.

### *Portfolio of U.S. Soccer Marks*

19.     In service of this mission, U.S. Soccer has at all times been focused on the development of its brand. The goodwill and consumer recognition associated with the U.S. Soccer Marks are among its most valuable assets, and U.S. Soccer takes care to protect these assets. Attached as Exhibit A are the true and correct copies of the trademark registration certificates for certain U.S. Soccer Marks relevant to the present action.

20.     As part of the worldwide development of its brand, for example, U.S. Soccer is the exclusive, worldwide owner of all rights, titles, and interest to the trademarks, trade names, service marks, logos, designs, seals, symbols, emblems, and other intellectual property for all United States National Teams and their uniforms, marks, and designs. Indeed, U.S. Soccer owns numerous registrations for marks covering various goods and services relating to, *inter alia*, U.S. Soccer and the United States National Teams.

21.     Specifically, and particularly relevant to this dispute, U.S. Soccer has registered or applied to register the following marks with the U.S. Patent and Trademark Office ("PTO"):

| Reg. No. 1,975,699 | U.S. SOCCER |
|---|---|
| Reg. No. 3,189,854 |  |

| Reg. No. 1,975,698 |  |
|---|---|
| Reg. No. 1,912,928 |  |
| Reg. No. 2,058,436 |  |
| Reg. No. 2,157,799 |  |
| Reg. No. 3,052,315 |  |
| App. Serial No. 86/922,338 |  |

22.    The progression of these U.S. Soccer Marks tells most of the visual story of U.S. Soccer's branding throughout its history, from its origin crest in 1913 to the crest worn today, with the iconic "Shooting Ball" logos used in between:



CURRENT CREST

23.     U.S. Soccer also holds an exclusive copyright in the design featuring the "Shooting Ball" and stylized "US," which was first published in 1991 and was registered with the United States Copyright Office, Registration No. VA 596-012 in 1994 ("the Copyrighted Logo"):

Attached as Exhibit B is a true and correct copy of the registration certificate issued by the Copyright Office for the Copyrighted Logo.

24.     Since 1995, U.S. Soccer has invested or caused to be invested over $100 million in these, and other U.S. Soccer Marks and logos, and spends nearly $2 million on advertising annually.   A crucial component of these investments is U.S. Soccer's relationships with certain official sponsors, such as Nike, who are granted limited, exclusive licenses to use and market the entire portfolio of U.S. Soccer Marks in commerce.

25.     Because U.S. Soccer is a not-for-profit corporation, it relies heavily on these relationships to secure crucial funding needed to advance the U.S. Soccer mission.

### *The Success of the 1994 FIFA World Cup & Funding the Foundation*

26.     Back in the 1990s, when U.S. Soccer had secured the right to host its first FIFA World Cup – and was optimistic about the trajectory of soccer in the United States – it established the Foundation.   The Foundation was formed in 1991 to, among other reasons, solicit

charitable donations to support U.S. Soccer's mission and organization members by capitalizing on increased interest in soccer arising from the 1994 FIFA World Cup.  Among the Foundation's explicitly stated purposes were: "To assist [U.S. Soccer] in promoting the general purposes and goals of said entity by offering financial assistance and contributions to [U.S. Soccer]" and "[t]o invest, or cause to be invested, any and all revenues and contributions it receives and, to the extent [it] shall determine, to apply the income from such investments and the principal thereof, to the general purposes of [U.S. Soccer]."

27.     That the Foundation was established to support U.S. Soccer and its purposes is made even clearer by the fact that, upon dissolution, any remaining assets would be directly distributed to U.S. Soccer.

28.     The Foundation was inactive until 1994 when U.S. Soccer (through USA 94, the committee it established for the 1994 FIFA World Cup) received approximately $40 million in surplus funds from the 1994 FIFA World Cup.  USA 94, in turn, transferred this sum to the Foundation.  The Foundation's purpose was still explicitly intended to promote soccer in the United States, including through activities such as scholarships, and by applying the Foundation's own income and principal to benefit the general purposes of U.S. Soccer and U.S. Soccer's organization members.  The Foundation was to be governed by a Board of Directors, all of whom were either U.S. Soccer representatives (*e.g.*, the President of U.S. Soccer) or elected by organization members of U.S. Soccer (*e.g.*, elected by the National Council).

29.     As a non-profit entity, the Foundation acts through its Board of Directors and since its inception, and up until recently, U.S. Soccer has played a meaningful role in the Foundation's governance, thus ensuring a unity of interest between the Foundation's activities and U.S. Soccer's general purposes.

30.     During its early years, the Foundation fulfilled its stated purpose by assisting U.S. Soccer with its mission and goals.  For example, most of the Foundation's grants were made to U.S. Soccer member organizations.

31.     In addition, the Foundation provided funds directly to U.S. Soccer.  For example,

beginning in or around 2001, the Foundation provided funds so that U.S. Soccer's Sports Medicine Committee could conduct studies on head and ACL injuries, supporting U.S. Soccer's mission of promoting player development by focusing on player safety. With this support, U.S. Soccer was able to present its findings at an international congress co-hosted by FIFA in hopes of influencing the laws of the game so as to help protect its players.

32.     The Foundation's own fundraising initiatives were also geared towards U.S. Soccer's mission. For example, in the early 2000s, the Foundation partnered with National Team star Landon Donovan to create a bobblehead doll, with proceeds intended to go towards building the future National Team Training Center.

33.     During these early years of the Foundation, U.S. Soccer also registered certain marks that featured U.S. Soccer's existing and well-known design and word marks, plus the word "FOUNDATION." This included adding the word "FOUNDATION" to U.S. Soccer's "Shooting Ball" logo  used to identify U.S. Soccer's National Teams for decades. U.S. Soccer registered these marks (the Marks at Issue), which included the word mark "U.S. SOCCER FOUNDATION" and stylized design mark:



Attached as Exhibit A are true and correct copies of the trademark registration certificates for the Marks at Issue relevant to the present action (Reg. Nos. 2,327,950; 2,235,888; 2,702,785; 2,702,781).

34.     As the exclusive owner of the U.S. Soccer Marks, including the Marks at Issue, U.S. Soccer has policed against the misuse of these marks or use of marks that are confusingly similar to these marks. For example, in 2010, U.S. Soccer successfully brought suit against a retailer whose advertisement prominently featured a National Team player wearing an official jersey that featured the crest incorporating the "Shooting Ball" logo. U.S. Soccer alleged that the

retailer's conduct infringed certain of the U.S. Soccer Marks, including the Marks at Issue.

35.     U.S. Soccer also exerts strict control over authorized uses of the U.S. Soccer Marks by licensees, member organizations, sponsors, related entities, or otherwise.

36.     For example, U.S. Soccer mandates how its various membership organizations can use U.S. Soccer marks and the U.S. Soccer name.  In general, member organizations are authorized to display the Shooting Ball logo (  ), but also often seek permission to use other logos with U.S. Soccer's authorization.  Moreover, member organizations can only display such logos in certain ways.  For example, the logos may not be directly adjacent to, connected to, or closely associated with any other commercial mark, logo, or entity name without U.S. Soccer's express permission.

37.     In addition, at least as early as 1998 and through today, U.S. Soccer has established logo or brand guidelines detailing how U.S. Soccer Marks may be used.  These guidelines mandate, for example, the permissible color palette, font, and size to ensure consistency among entities authorized to use the U.S. Soccer Marks.  These guidelines also set forth the manners of use that constitute misuse of U.S. Soccer Marks, such as altering the marks or featuring the marks in close proximity to other logos or brand names in a way that improperly implies U.S. Soccer affiliation or endorsement.

38.     This control and oversight extended to the Foundation's use of the Marks at Issue. This includes specific oversight of the marks themselves, for example when U.S. Soccer approved the use of certain Marks at Issue on Dreyer's Grand Ice Cream, Inc.'s products, alongside National Team star Mia Hamm, in exchange for Dreyer's making a donation to the Foundation.  This also included U.S. Soccer's oversight over the Foundation's initiatives and projects more broadly, including through a formal role on the Foundation Board of Directors (both U.S. Soccer and its councils), and through more informal meetings and discussions.

39.     U.S. Soccer has also, at all times, retained responsibility or exercised oversight over the maintenance and renewal of the U.S. Soccer Marks, including the Marks at Issue, and many of these marks are now incontestable.

40.     On multiple occasions from approximately 2002 through 2004, the Foundation requested that U.S. Soccer assign to it the Marks at Issue. In doing so, the Foundation either explicitly or implicitly acknowledged that U.S. Soccer owns the Marks at Issue, and all accompanying goodwill. In response to these requests, U.S. Soccer maintained that it would remain the sole owner of the Marks at Issue because of, *inter alia*, the need to retain a unity of control over its portfolio of U.S. Soccer Marks to ensure all such marks signify affiliation only with U.S. Soccer, and therefore continue to build corresponding goodwill only for U.S. Soccer (rather than signifying any separate, independent entity or growing any separate, independent brand). Relatedly, and as U.S. Soccer explained to the Foundation, unity of control was necessary to avoid confusion, particularly given the similarity among the various U.S. Soccer Marks.

41.     On information and belief, then, any independent investment by the Foundation in the Marks at Issue was undertaken with knowledge that U.S. Soccer intended to retain ownership over these marks and their accompanying goodwill.

### The Foundation's Affiliation with U.S. Soccer

42.     Overall, since its inception, and up until recently, the Foundation has maintained an alignment, affiliation, and unity of interest with U.S. Soccer in at least three significant ways. First, the Foundation has supported the general purposes of U.S. Soccer by financially supporting U.S. Soccer member organizations and U.S. Soccer, for example by providing grants to U.S. Soccer for the broad purpose of promoting player development and by providing annual scholarships so that players from low-income families can participate in the elite U.S. Soccer Development Academy, U.S. Soccer's player development program, dedicated to providing education, resources, support, and a competitive structure to soccer clubs in order to develop world-class players. Second, U.S. Soccer has had consistent representation on the Foundation's Board of Directors – and U.S. Soccer members have exerted control over the Foundation and/or its Board from its inception until recently, including by electing Board members and by providing or withholding approval for certain proposals or initiatives. Third, the Foundation has

provided reports, at least on an annual basis, to U.S. Soccer's Board of Directors and/or U.S. Soccer's National Council to provide updates on the Foundation's work, and how the Foundation is advancing the mission of promoting soccer in this country, and supporting U.S. Soccer specifically.

43.     Although generally aligned, that is not to say that U.S. Soccer and the Foundation have always been in complete agreement about how the Foundation can best fulfill its stated purpose of promoting the sport of soccer in this country and supporting the mission of U.S. Soccer, specifically.  Disputes have arisen when the Foundation has sought to partner with brands that would have jeopardized U.S. Soccer's pre-existing sponsor relationships, placing these relationships – and crucial funding – at risk.  In 2008, for example, the Foundation sought to partner with Adidas even though Nike has long been the exclusive provider for all U.S. Soccer team apparel.  U.S. Soccer stepped in to restructure the Foundation's deal to ensure that the relevant funding could go towards the ultimate intended recipients, but in a way that did not place U.S. Soccer's brand, or brand relationships, at risk.  When this issue arose, the Foundation acknowledged that U.S. Soccer owned and controlled the Marks at Issue, and so had full right and authority to assert its control in this way.

44.     Despite such disputes, U.S. Soccer has been willing to support the Foundation's fundraising initiatives to the extent they advance soccer in the United States and U.S. Soccer's purposes.  To this end, U.S. Soccer and its members have donated some of its most valuable assets to the Foundation, such as tickets to and experiences at U.S. Soccer-affiliated events like the FIFA World Cup, as well as events featuring U.S. Soccer's current and former National Teams and players.  In addition, U.S. Soccer has permitted the Foundation to take advantage of U.S. Soccer infrastructure, for example, by permitting the Foundation to seek support from member organizations at National Council meetings, and permitting the Foundation to hold their own meetings at these and other U.S. Soccer events.

45.     More specifically, U.S. Soccer has supported the Foundation's efforts to advance its programs, such as Soccer for Success, and achieve its goal of building soccer pitches across

this country, by donating U.S. Soccer assets, like tickets, to the Foundation. Upon information and belief, the Foundation then offers such tickets to donors as a way to achieve its fundraising goals. U.S. Soccer has done so because the Foundation was simultaneously advancing the sport of soccer in those general areas, while also upholding the Foundation's stated purpose of providing support for all of U.S. Soccer's general purposes, for example, by putting some of the Foundation's funds towards scholarships for low-income players to participate in the U.S. Soccer Development Academy.

46.    U.S. Soccer has also worked in conjunction with the Foundation on these goals to maintain alignment with U.S. Soccer's aim of making soccer the preeminent sport by focusing on players, coaches, and referees. For example, U.S. Soccer has trained the coaches affiliated with the Foundation's programming in accordance with U.S. Soccer's coaching curriculum, and has also offered these coaches complimentary access to U.S. Soccer's online coaching curriculum resources.

47.    In short, so long as the *U.S. Soccer* Foundation was living up to its name and stated purpose, *i.e.*, supporting U.S. Soccer, there was a unity of interest between the two affiliated entities and the Foundation could benefit from this affiliation, including through use of the marks.

48.    On information and belief, throughout its years of existence, the Foundation's interest in affiliating itself with U.S. Soccer and benefitting from the U.S. Soccer name and assets have increased – no doubt in step with the rise in popularity and success of U.S. Soccer. However, over this time, the Foundation's financial support of U.S. Soccer, U.S. Soccer's organization members, and U.S. Soccer's purposes – out of the initial $40 million grant for this very purpose – has steadily declined. To this end, as the Foundation's financial contributions to U.S. Soccer declined, U.S. Soccer was forced to focus on its own fundraising initiatives – without the Foundation's assistance – particularly to provide support to U.S. Soccer member organizations that were no longer receiving support from the Foundation, such as the National Women's Soccer League. These U.S. Soccer-only initiatives also included raising funds for

21

scholarship recipients and, in recent years, raising over $15 million for coaching development and training.

49.     So long as there was some support, though, there was at least some alignment.  To this end, members of U.S. Soccer continued to meet informally with members of the Foundation to discuss the focus of both U.S. Soccer and the Foundation's fundraising initiatives.

50.     On information and belief, around 2015 or 2016, however, there were signs that, from the Foundation's perspective, this alignment and affiliation could be coming to an end. Around that time, the Foundation indicated that it was considering ceasing its financial support for the scholarships that allowed low-income players to participate in the U.S. Soccer Development Academy. Shortly after this communication, the Foundation abruptly indicated that it would, in fact, stop funding these scholarships altogether.

51.     Around this same time period, the Foundation amended its Articles of Incorporation (now for the fifth time) in a way that, for the first time, weakened U.S. Soccer's representation on the Foundation's Board, to the point where the Foundation Board could act without any U.S. Soccer approval.

52.     After it ceased this scholarship support and made this governance change, though, the Foundation did continue reporting on its activities to U.S. Soccer's Board of Directors and to the National Council, and U.S. Soccer was still represented on the Foundation's own Board of Directors. For financial purposes, as well, the Foundation continued to identify itself as a related organization to U.S. Soccer, hold itself out to donors as affiliated with U.S. Soccer, and use U.S. Soccer's access and assets in order to raise money.

53.     During this time, the Foundation also continued to acknowledge that U.S. Soccer owned and controlled the Marks at Issue. For example, in early 2017, the Foundation asked U.S. Soccer to introduce a new U.S. Soccer Mark ("New Mark at Issue"). U.S. Soccer selected the appropriate design, and then took the necessary steps to apply for registration of this New Mark at Issue in 2017 (App. No. 87/495,842), which features a slight variation on the "Shooting Ball" logo (  ):



The New Mark at Issue copies constituent elements from the original "Shooting Ball" logo: use of stylized "U" and "S" characters that are divided by a soccer ball, which is depicted above a series of parallel, diagonal lines evoking movement, followed by the word "SOCCER." The character font is also based on U.S. Soccer's propriety font, which was created by Nike for the U.S. Soccer Crest. The soccer ball featured in the New Mark at Issue is also identical to the soccer ball featured in other U.S. Soccer Marks, and the soccer ball featured in the Copyrighted Logo. Attached as Exhibit A is a true and correct copy of the Notice of Publication for App. No. 87/495,842.

54.     Shortly after this acknowledgement, however, things changed again in the Spring of 2018, when the Foundation informed U.S. Soccer that it no longer desired U.S. Soccer to have a presence on the Foundation's Board of Directors, *i.e.*, that it desired to disaffiliate itself from U.S. Soccer. Any designated U.S. Soccer Director on the Foundation Board would not be replaced once his or her term expired. This announcement was made unilaterally by the Foundation and without any consultation with U.S. Soccer or its National Council members.

55.     Despite communicating that it no longer wanted to financially support U.S. Soccer as it previously had, and no longer wanted U.S. Soccer involved in its governance, the Foundation continued to claim an affiliation with U.S. Soccer to the outside world. For example, a Foundation fundraising event that is set to occur in April 2019: (A) is organized around the U.S. Women's National Team's "friendly" against Belgium set to be played as part of U.S. Soccer's "Countdown to the Cup" series; (B) will honor the current and former U.S. Women's National Teams and other U.S. Soccer affiliates; (C) is offering U.S. Soccer affiliate assets in exchange for donations to the Foundation; and (D) is being promoted by prominently featuring players from the U.S. Women's National Teams wearing their official National Team Jerseys that bear U.S. Soccer Marks.



56.     To address the Foundation's apparent desire both to disassociate itself from U.S. Soccer's mission and control on the one hand, while still presenting itself as affiliated and aligned with U.S. Soccer on the other, members of U.S. Soccer agreed to meet with members of the Foundation in late 2018 to discuss an amicable path forward.

57.     At these meetings, there was a consensus that U.S. Soccer owned the Marks at Issue. U.S. Soccer also communicated its concerns with achieving market clarity – assuming the Foundation continued to desire to no longer be aligned with U.S. Soccer. For example, in the past, both U.S. Soccer and the Foundation have been aware of instances where consumers have contacted the Foundation when, in fact, they were intending to contact U.S. Soccer. U.S. Soccer has invested significant money in developing its portfolio of U.S. Soccer Marks, and thus consumers understandably associate these marks, and the corresponding goodwill, with U.S. Soccer. U.S. Soccer representatives understood the parties to be working towards a solution, and were thus surprised to read news stories that the Foundation had filed a lawsuit, which further proclaimed their formal disaffiliation. Further, members of the Foundation Board, including those unaffiliated with U.S. Soccer, have since complained that the Foundation's Board had not authorized this lawsuit prior to the Complaint's filing.

58.     If the Foundation no longer wants to be formally affiliated with U.S. Soccer and support its general purposes, then U.S. Soccer Foundation is no longer an appropriate name given there is no longer a unity of interest between the entities, and U.S. Soccer therefore has a need to protect its marks against what will now constitute inevitable confusion as to affiliation

and source.

59.     For example, the Foundation has increased the visibility of its partnerships with sponsors like Adidas in a way that is likely to cause confusion and threaten U.S. Soccer's commercial relationships with its own sponsors.  On information and belief, the Foundation partnered with Adidas to build a futsal court in Los Angeles that prominently features the Marks at Issue in close proximity to the Adidas logo.  On information and belief, the Foundation is also providing apparel to those involved in programs like Soccer for Success that feature the Adidas logo in close proximity to the Marks at Issue.  This conduct has already prompted one commentator on the Foundation's own website to note that it is "awesome to see Adidas partnering with US Soccer."  Given that the Foundation formally ended its affiliation with U.S. Soccer, this conduct is now clearly and inevitably likely to cause confusion.

 
Very awesome to see Adidas partnering with US Soccer to create safe place to play for lower poverty area. I run a urban at risk Youth soccer program in the SE part of Colorado Springs. I would love to get more feedback and info on how I can bring this program to Colorado. Please let me know if there is an opportunity.

Johnny - September 19, 2018

Confusion is particularly inevitable given the similarity between the Marks at Issue and U.S. Soccer's other marks, which the Foundation is not challenging:

  

60.     Moreover, with the 2026 FIFA World Cup approaching, there is a risk that the Foundation will seek to benefit from opportunities sparked by U.S. Soccer's host nation status, and thus continue this conduct in earnest by placing the Marks at Issue alongside other brands or marks.  This conduct, in turn, is likely to engender more confusion, threaten the valuable reputation and goodwill of the U.S. Soccer Marks, and threaten U.S. Soccer's major funding sources – the last of which is now more concerning given that U.S. Soccer has finally and

completely been cut out of its own $40 million endowment.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

61.     Paragraphs 1 through 60 are incorporated by reference in support of this claim for relief.

62.     As set forth above and in the Foundation's Complaint, there is an actual and ongoing controversy between U.S. Soccer and the Foundation as to who has a superior claim of right to certain U.S. Soccer Marks, specifically the Marks at Issue (which includes the New Mark at Issue).

63.     The Foundation's claims all require a showing that U.S. Soccer is either not the owner of the Marks at Issue, or otherwise prohibited on equitable grounds from asserting exclusive ownership over the Marks at Issue.

64.     Most of the Marks at Issue are registered to U.S. Soccer on the Principal Register of the PTO pursuant to 15 U.S.C. § 1051, and these registrations are valid, subsisting, and enforceable. U.S. Soccer is also the owner and registrant of the pending application for the New Mark at Issue.

65.     The Marks at Issue, including the New Mark at Issue, and certain similar U.S. Soccer Marks, have continuously been used in commerce either by U.S. Soccer or in a manner where any such use inures to the sole and exclusive benefit of U.S. Soccer.

66.     U.S. Soccer has stated repeatedly that it is and would remain the sole owner of the Marks at Issue, including the New Mark at Issue, and would not assign such marks to the Foundation, who has acknowledged U.S. Soccer as the sole and exclusive owner of the marks. On information and belief, any use of or investment in the Marks at Issue, including the New Mark at Issue, by the Foundation was thus undertaken with knowledge that such use inured to U.S. Soccer as the owner.

67.     To resolve the uncertainty raised by the Foundation, and to afford U.S. Soccer relief from the uncertainty and controversy caused by the Foundation's conduct, U.S. Soccer is

entitled to a declaratory judgment from this Court that U.S. Soccer is the sole and exclusive owner of the Marks at Issue, including the New Mark at Issue, which are valid and enforceable, and that U.S. Soccer is not barred from asserting this ownership or enjoining the Foundation's use of the Marks at Issue, the New Mark at Issue, or any confusingly similar mark.

## SECOND CAUSE OF ACTION
**(Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114)**

68.     Paragraphs 1 through 67 are incorporated by reference in support of this claim for relief.

69.     As stated above, U.S. Soccer owns the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue. At all relevant times, the Foundation is and has been aware of U.S. Soccer's ownership of these marks. True and correct copies of the Certificates of Trademark Registration and Notices of Publication for pending applications for the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, are attached as Exhibit A, and are incorporated by reference.

70.     Pursuant to 15 U.S.C. § 1057(b), U.S. Soccer's federal registration certificates are prima facie evidence of the validity of these U.S. Soccer Marks as well as U.S. Soccer's ownership and exclusive right to use its U.S. Soccer Marks in connection with the goods and services identified in the registration certificates. Moreover, U.S. Soccer's federal registration for the '699, '854, '698, '928, '436, '799, '315, '950, and '888 marks are incontestable under 15 U.S.C. § 1065. U.S. Soccer's incontestable registrations are conclusive evidence of the validity of these marks listed in the registrations, U.S. Soccer's ownership of these marks, and U.S. Soccer's exclusive right to use these marks in commerce in connection with the identified goods and services.

71.     Since approximately 2018 when the Foundation disaffiliated from U.S. Soccer and its mission, the Foundation has used, and continues to use, the Marks at Issue, the New Mark at Issue, and marks that are confusingly similar to those and other U.S. Soccer Marks without the consent of U.S. Soccer in connection with the promotion, sale, or offering for sale of the

Foundation's goods and services.

72.     The Foundation's actions are likely to have caused and will continue to cause confusion, mistake, and deception as to the affiliation, connection, sponsorship, partnership, and/or association of the Foundation with U.S. Soccer.

73.     By committing these acts, the Foundation has willfully infringed the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, and the Foundation has deprived, and continues to deprive, U.S. Soccer of the ability to control the consumer perception of its brands, placing the valuable reputation and goodwill of U.S. Soccer in the hands of the Foundation, over whom U.S. Soccer no longer has control.

74.     The Foundation's willful infringement of the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, has caused, and will continue to cause, U.S. Soccer to suffer damages in an amount to be determined at trial.

75.     The Foundation's willful infringement of these marks has also caused, and, if not preliminarily and permanently enjoined, will continue to cause, U.S. Soccer to suffer irreparable harm.

## THIRD CAUSE OF ACTION
**(False Designation of Origin, Trademark Infringement, and Unfair Competition under the Lanham Act, 15 U.S.C. § 1125)**

76.     Paragraphs 1 through 75 are incorporated by reference in support of this claim for relief.

77.     Consumers exclusively associate the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, with U.S. Soccer. Since approximately 2018 when the Foundation disaffiliated from U.S. Soccer and its mission, the Foundation's use of the Marks at Issue, the New Mark at Issue, and/or marks confusingly similar to these and other U.S. Soccer Marks without authorization, in connection with the promotion, sale, or offering for sale of the Foundation's goods or services, has likely caused and will continue to cause confusion, mistake, and deception among consumers as to the affiliation, connection, sponsorship, partnership and/or association of the Foundation and its goods and services with U.S. Soccer.

28

78.     By committing these acts, the Foundation has willfully infringed the U.S. Soccer Marks and the Foundation has deprived and continues to deprive U.S. Soccer of the ability to control the consumer perception of its brand, placing the valuable reputation and goodwill of U.S. Soccer in the hands of the Foundation, over whom U.S. Soccer no longer has control.

79.     As a result of its conduct, the Foundation has willfully caused, and will continue to cause, U.S. Soccer to suffer damages. Moreover, the Foundation has and will continue to obtain an improper benefit, monetary or otherwise, from its acts of unfair competition and false advertising.

80.     On information and belief, the Foundation's use of U.S. Soccer's marks have also caused, and, if not preliminarily and permanently enjoined, will continue to cause, U.S. Soccer to suffer irreparable harm.

## FOURTH CAUSE OF ACTION
### (Unfair or Deceptive Trade Practice, DC ST § 28-3904)

81.     Paragraphs 1 through 80 are incorporated by reference in support of this claim for relief.

82.     The U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, are closely associated with U.S. Soccer and the goodwill attached to all of the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, belongs solely to U.S. Soccer.

83.     To the extent the Foundation has officially and affirmatively ended its affiliation with U.S. Soccer, the Foundation's use of the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, would misrepresent a material fact, to the detriment of U.S. Soccer, as to the Foundation's activities, and would tend to mislead consumers into believing U.S. Soccer sponsored, approved, or was affiliated with the Foundation's activities, in violation of District of Columbia law.

## FIFTH CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. § 501 *et seq*)

84.     Paragraphs 1 through 83 are incorporated by reference in support of this claim for relief.

85.     The Copyrighted Logo is an original pictorial or graphic work and constitutes copyrightable subject matter under 17 U.S.C. §§ 101 and 102.

86.     The Foundation had access to the Copyrighted Logo.

87.     Since approximately 2018 when the Foundation disaffiliated from U.S. Soccer and its mission, the Foundation has not been, and is not authorized to use, distribute, transmit, copy, or display the Copyrighted Logo.

88.     The Foundation has infringed U.S. Soccer's copyrights in the Copyrighted Logo through the distribution, transmission, copying or public display of the Copyrighted Logo on, among other places, its website and promotional publications.

89.     The Foundation has also infringed U.S. Soccer's copyrights in the Copyrighted Logo through the distribution, transmission, copying, or public display of a pictorial or graphic work that is substantially similar to the Copyrighted Logo on, among other places, its website and promotional publications.

90.     On information and belief, the infringement of U.S. Soccer's Copyrighted Logo by the Foundation was willful or, at a minimum, reckless. The Foundation was aware that it was not authorized to use, distribute, transmit, copy, or display the Copyrighted Logo or any work that was substantially similar to the Copyrighted Logo. The Foundation's refusal to cease distribution and display of the Copyrighted Logo and works that are substantially similar to the Copyrighted Logo evidence the Foundation's willful infringement. At a minimum, the Foundation's actions were reckless.

91.     U.S. Soccer has been damaged by the willful infringement of the Foundation in a sum to be determined.

92.     On information and belief, the Foundation can and may continue its infringing activities unless restrained and enjoined.

93.     U.S. Soccer's remedy at law is not by itself adequate to compensate it for the harm inflicted and threatened by the Foundation.   The Foundation's conduct has also caused, and, if not preliminarily and permanently enjoined, will continue to cause, U.S. Soccer to suffer

30

irreparable harm.

## SIXTH CAUSE OF ACTION
### (Fraudulent Concealment and Fraudulent Misrepresentation)

94.     Paragraphs 1 through 93 are incorporated by reference in support of this claim for relief.

95.     On information and belief, the Foundation made false representations of material fact in connection with its request that U.S. Soccer file an application to register the New Mark at Issue, *inter alia*, that U.S. Soccer owned the mark and any subsequent registration and, by implication, that the Foundation would not challenge U.S. Soccer's ownership in the mark or any subsequent registration.

96.     On information and belief, the Foundation made these representations with knowledge that it would claim to hold superior rights in the mark and any subsequent registrations, and/or seek to obtain sole ownership over the mark and any subsequent registrations.

97.     Alternatively, the Foundation failed to disclose a material fact that it was under a duty to disclose, namely that it believed it held superior rights in the mark and any subsequent registrations, and/or would seek to obtain sole ownership over the mark and any subsequent registrations.

98.     On information and belief, the Foundation made these representations or omissions with the intent to deceive U.S. Soccer into applying for registration of the New Mark at Issue and approving the Foundation's use of that mark. On information and belief, the Foundation knew that it could not use the New Mark at Issue, or seek registration of that mark, without U.S. Soccer's approval in light of U.S. Soccer's intellectual property rights in substantially similar marks and logos.

99.     In reliance upon the Foundation's representations or omissions, U.S. Soccer undertook the expense of seeking to register the New Mark at Issue. These representations or omissions were material because, had U.S. Soccer known the complete truth, it would not have

31

applied for registration of the New Mark at Issue nor approved the Foundation's use of said mark.

100.    U.S. Soccer has been harmed by the actions it has taken in reliance on the Foundation's false representations or omissions by, *inter alia*, expending resources to obtain registration and expending resources to ensure that ownership of the mark, which is substantially similar to other U.S. Soccer Marks and the Copyrighted Logo, remains with U.S. Soccer so as to avoid confusion, protect against the infringement of its exclusive rights, and protect against the loss of goodwill that would come with loss of the ownership over this new mark.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Negligent Misrepresentation)**

101.    Paragraphs 1 through 100 are incorporated by reference in support of this claim for relief.

102.    On information and belief, the Foundation made false representations in connection with its request that U.S. Soccer file an application to register the New Mark at Issue, *inter alia*, that the Foundation agreed that U.S. Soccer owned the mark and any subsequent registration and, by implication, that the Foundation would not challenge U.S. Soccer's ownership in the mark or any subsequent registration. Alternatively, on information and belief, the Foundation omitted a fact that it had a duty to disclose to U.S. Soccer, *inter alia*, that it believed it had superior rights in the New Mark at Issue.

103.    In reliance upon the Foundation's representations, U.S. Soccer undertook the expense of seeking to register the new mark. These representations were material because, had U.S. Soccer known the truth, it would not have applied for registration of the new mark nor approved the Foundation's use, and, upon information and belief, the Foundation should have recognized U.S. Soccer would be harmed by relying on these representations or omissions.

104.    U.S. Soccer has been harmed by the actions it has taken in reliance on the Foundation's false representations or material omissions by, *inter alia*, expending resources to obtain registration and expending resources to ensure that ownership of the New Mark at Issue,

which is substantially similar to U.S. Soccer's other exclusive intellectual property, remains with U.S. Soccer so as to avoid confusion, protect against the infringement of its exclusive rights, and protect against the loss of goodwill that would come with loss of the ownership of the new mark.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

105.    Paragraphs 1 through 104 are incorporated by reference in support of this claim for relief.

106.    Upon information and belief, the Foundation has received, and continues to receive, a pecuniary and/or other benefit by using and displaying the Marks at Issue and the New Mark at Issue even though it has disaffiliated from U.S. Soccer and its mission.

107.    U.S. Soccer has been, and will continue to be, deprived of pecuniary and/or other benefits by the Foundation's unauthorized use of the Marks at Issue and the New Mark at Issue.

108.    The Foundation's retention of a benefit obtained through the unauthorized or infringing use of the Marks at Issue and the New Mark at Issue would be unjust, particularly in light of the parties' consistent communications that U.S. Soccer owned the Marks at Issue and the New Mark at Issue, and the Foundation's subsequent decision to continue use of these marks.

## DEMAND FOR JURY TRIAL

109.    In accordance with Rule 38 of the Federal Rules of Civil Procedure, U.S. Soccer hereby demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

Defendant and Counterclaimant U.S. Soccer prays for the entry of a preliminary injunction enjoining the Foundation's improper conduct as alleged above and that the Court enter such orders and judgments as are necessary to grant it the following relief:

A.    That the Foundation takes nothing, whether in the form of damages, declaratory judgment, or attorneys' fees or costs, by its Complaint;

B.    For a judgment dismissing the Foundation's Complaint with prejudice;

C.    Entry of a declaratory judgment that U.S. Soccer is the sole owner of the U.S.

Soccer Marks, including the Marks at Issue and the New Mark at Issue, which are valid and enforceable;

       D.     For an order preliminarily and permanently enjoining and restraining the Foundation and its officers, directors, agents, servants, employees, licensees, and all other persons in privity or acting in concert with them from doing any of the following:

          i.    distributing, transmitting, copying, publically displaying, or creating derivative works of the Copyrighted Logo;

         ii.    doing business, in any capacity, using the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, and any confusingly similar marks;

        iii.    using the U.S. Soccer Marks, including the Marks at Issue and the New Mark at Issue, or any confusingly similar marks, in connection with the manufacture, design, import, distribution, sale, or offering for sale of goods or services, including the use on any and all packaging, promotional material, advertisements, point-of-sale materials, and websites;

        iv.    falsely or inaccurately describing or designating the origin or other facts related to any goods or services, or passing off any goods or services in any manner that is likely to cause confusion, mistake or deception as to the affiliation, connection, sponsorship, or association of the Foundation or any of their respective goods or services with U.S. Soccer;

         v.    engaging in false designation and advertising;

        vi.    continuing to use the U.S. Soccer Marks including, the Marks at Issue and the New Mark at Issue;

       E.     For an award at U.S. Soccer's election, pursuant to 17 U.S.C. § 504, of either (1) the actual damages suffered by U.S. Soccer with respect to past infringement, plus any additional profits of the Foundation that are attributable to the infringement that are not taken into account in computing the actual damages; or (2) statutory damages as provided by Section 504(c);

       F.     For a finding that the infringement by the Foundation was willful, and for an

award to U.S. Soccer at its election, of statutory damages against Defendants for willfully committing infringement as provided by 17 U.S.C. § 504;

G.      For an order that the Foundation account for all sales, revenues, costs, and profits from their wrongful conduct and unauthorized use of the U.S. Soccer Marks and Copyrighted Logo, and that the Foundation pay U.S. Soccer damages in an amount to be proven at trial, but including the Foundation's profits and actual damages suffered by U.S. Soccer as a result of the Foundation's wrongful acts;

H.      For an award of trebled damages, for the profits and actual damages proven at trial, pursuant to 15 U.S.C. § 1117(a) because of the willfulness of the Foundation's conduct described in these Counterclaims;

I.      For an award of U.S. Soccer's attorneys' fees, expenses and costs, pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a);

J.      For an award of damages and/or restitution as proven at trial for the Foundation's unfair or deceptive trade practices, misrepresentations, and the unjust enrichment the Foundation derived from its use of the U.S. Soccer Marks;

K.      For an award of punitive damages;

L.      For an award of U.S. Soccer's pre- and post-judgment interest;

M.      For an award to U.S. Soccer of such other and further relief as the Court deems just and proper.

Dated: February 18, 2019

Respectfully submitted,

CROWELL & MORING, LLP

By:  */s/ David J. Ervin*
David J. Ervin (D.C. Bar #445013)
DErvin@crowell.com
Shari Ross Lahlou (D.C. Bar #476630)
SLahlou@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 624-2500

Kent B. Goss (*pro hac vice forthcoming*)
KGoss@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Tel: (213) 443-5504

*Attorneys for Defendant United States*
*Soccer Federation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2019 I electronically filed the foregoing document using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ David J. Ervin
David J. Ervin (D.C. Bar #445013)
DErvin@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 624-2500