# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES SOCCER FEDERATION FOUNDATION, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES SOCCER FEDERATION, INC.,<br><br>                              Defendant. | Civil Action No. 1:18-cv-02856-TJK<br><br>ORAL HEARING REQUESTED |

**DEFENDANT'S MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN LLP AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION TO DISQUALIFY & STAY PROCEEDINGS ........... 1ii

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT U.S. SOCCER'S MOTION TO DISQUALIFY COUNSEL & STAY PROCEEDINGS ......... 3

I.   INTRODUCTION ................................................................................................. 3

II.  FACTUAL AND PROCEDURAL BACKGROUND ..................................... 4

    A.   The Parties' Relationship and the Nature of this Dispute ..................................... 4

    B.   Quinn Emanuel & Mr. Raskopf's Relationship with U.S. Soccer. ...................... 6

        1.   Mr. Raskopf Registered and Prosecuted Trademarks as U.S. Soccer's Counsel. ................................................................. 6

        2.   Mr. Raskopf Resumed Prosecuting Trademarks Owned by U.S. Soccer While at Quinn Emanuel ......................................................... 7

        3.   Quinn Emanuel Is Still Attorney of Record for Certain Marks at Issue..... 9

    C.   U.S. Soccer Has Complied with LCvR 7(m) by Diligently Attempting To Resolve These Issues ................................................................. 10

    D.   This Case is at an Early Stage and A Stay Would Promote Efficiency ................ 10

III. LEGAL STANDARD .......................................................................................... 12

IV.  ARGUMENT ........................................................................................................ 13

    A.   Mr. Raskopf and Quinn Emanuel's Conduct Violates the D.C. Rules of Professional Conduct and Breaches Fiduciary Duties Owed to U.S. Soccer ........ 13

        1.   Mr. Raskopf Is a Former Attorney of U.S. Soccer ................................... 14

        2.   The Subject Matter of the Litigation is the Same as or Substantially Related to Mr. Raskopf and Quinn Emanuel's Work On Behalf of U.S. Soccer ................................................................. 18

        3.   The Parties' Interests are Adverse ............................................................ 19

        4.   Under Rule 1.10, Any Conflict Under Rule 1.9 Is Imputed To Quinn Emanuel ................................................................. 21

    B.   Mr. Raskopf Will Be a Necessary Witness at Trial ............................................ 22

V.   CONCLUSION ..................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

### Federal Cases

*Ahn v. Scarlett*,
No. 5:16-CV-05437-EJD, 2017 WL 6326693 (N.D. Cal. Dec. 11, 2017) ...........................11

*Caluori v. One World Techs., Inc.*,
No. CV 07-2035 CAS VBKX, 2012 WL 2004173 (C.D. Cal. June 4, 2012).......................23

*Dietz v. Bouldin*,
136 S. Ct. 1885 (2016) .........................................................................................................11

*GFL Advantage Fund, Ltd. v Colkitt*,
216 F.R.D. 189 (D.D.C. 2003) ............................................................................................12

*Groper v. Taff*,
717 F.2d 1415 (D.C. Cir. 1983) ..........................................................................................12

*IPVX Patent Holdings, Inc. v. 8X8, Inc.*,
No. C 13-01707, 2013 WL 6000590 (N.D. Cal. Nov. 12, 2013)..........................................11

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) ..............................................................................................4

*Konarski v. Donovan*,
763 F. Supp. 2d 128 (D.D.C. 2011) .....................................................................................13

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
505 F. Supp. 2d 20 (D.D.C. 2007) .......................................................................................16

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
No. CIVA 95-1231 RCL, 2007 WL 842081 (D.D.C. Mar. 19, 2007) ..................................22

*Nat'l Grange of Order of Patrons of Husbandry v. Guild*,
No. CV 2:16-201 WBS DB, 2017 WL 1397242 (E.D. Cal. Apr. 4, 2017)............................12

\*\**Paul v. Judicial Watch, Inc.*,
571 F. Supp. 2d 17 (D.D.C. 2008) .................................................................12, 13, 14, 19

*Premium Prod., Inc. v. Pro Performance Sports*,
LLC, 997 F. Supp. 2d 433 (E.D. Va. 2014) ........................................................................24

\*\**Queen v. Schultz*,
No. CV 11-871, 2015 WL 13680823 (D.D.C. May 7, 2015)..........................................15, 22

*Sai v. Dep't of Homeland Sec.*,
99 F. Supp. 3d 50, 58 (D.D.C. 2015) ...................................................................................11

*SC Innovations, Inc. v. Uber Tech., Inc.*,
    No. 18-cv-7440-JCS (N.D. Cal. Jan. 14, 2019), Dkt. No. 23 ...............................................11

*Shvartser v. Lekser*,
    321 F.R.D. 23-24 (D.D.C. 2017) ....................................................................................11

*T. C. Theatre Corp. v. Warner Bros. Pictures*,
    113 F. Supp. 265 (S.D.N.Y. 1953) ................................................................................19

### State Cases

*Bolton v. Crowley, Hoge & Fein, P.C.*,
    110 A.3d 575 (D.C. 2015) ..............................................................................................18

*Derrickson v. Derrickson*,
    541 A.2d 149 (D.C. 1988) .......................................................................................14, 19

### Other Authorities

15 U.S.C. § 1115 ........................................................................................................3, 8

**D.C. Rule of Professional Conduct Rule 1.7 ..............................................................21, 24

**D.C. Rule of Professional Conduct Rule 1.9 ...............................................................*passim*

**D.C. Rule of Professional Conduct Rule 1.10 ...............................................................13, 21

**D.C. Rule of Professional Conduct Rule 3.7 ...............................................................*passim*

Federal Rule of Civil Procedure 26(c) ........................................................................1

Federal Rule of Civil Procedure 26(c)(1)(B) ..............................................................11

Local Civil Rule 7(f) ..............................................................................................2, 5, 6

Local Civil Rule 7(m) ..................................................................................................10

Local Civil Rule 78.1 ............................................................................................2, 5, 6

Local Civil Rule 83.15 ...............................................................................................1, 13

Restatement (Second) of Agency § 5 (1958) ..............................................................16

Restatement (Third) Of Agency § 1.01 (2006) ......................................................15, 16

## NOTICE OF MOTION AND MOTION TO DISQUALIFY & STAY PROCEEDINGS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE that Defendant United States Soccer Federation, Inc. ("U.S. Soccer") will and hereby does move this Court for an order disqualifying Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") from representing Plaintiff United States Soccer Federation Foundation, Inc. (the "Foundation") in this action.  Additionally, U.S. Soccer will and hereby does move this Court for an order staying proceedings in this action until U.S. Soccer's Motion to Disqualify has been resolved.  This motion is based on Federal Rule of Civil Procedure 26(c), Local Civil Rule 83.15, and on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of David J. Ervin and Greg Fike and supporting exhibits, all pleadings on file in this matter, and other matters as may be presented to the Court at the time of the hearing or otherwise.

## ISSUES TO BE DECIDED

(1) Whether Quinn Emanuel and counsel of record Robert L. Raskopf are presumptively disqualified from representing the Foundation in this trademark action because of their prior representation of U.S. Soccer, wherein Quinn Emanuel and Mr. Raskopf previously represented before the U.S. Patent & Trademark Office that U.S. Soccer owned and used the trademarks at-issue in this action, but are now representing the Foundation in claiming these trademarks are solely owned and used by the Foundation;

(2) Whether, alternatively, Quinn Emanuel and Mr. Raskopf are disqualified from representing the Foundation in this trademark action at trial because Mr. Raskopf is a necessary witness;

(3) Whether U.S. Soccer has shown good cause for staying all proceedings in this action pending the resolution of its motion to disqualify Quinn Emanuel.

Pursuant to Local Civil Rules 7(f) and 78.1, U.S. Soccer respectfully requests an oral hearing on these matters.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT U.S. SOCCER'S MOTION TO DISQUALIFY COUNSEL & STAY PROCEEDINGS**

## I.   INTRODUCTION

This case involves an action brought by the United States Soccer Federation Foundation, Inc. (the "Foundation") against the United States Soccer Federation, Inc. ("U.S. Soccer") seeking a declaration that certain trademarks (the "Marks at Issue") belong to the Foundation in spite of the fact that U.S. Soccer registered the Marks at Issue with the U.S. Patent & Trademark Office ("USPTO") and remains the registrant. On the merits, U.S. Soccer will be able to show that it is the owner of the Marks at Issue, that the Foundation is not entitled to any relief, and that U.S. Soccer is the party being harmed. Before proceeding to the merits, however, U.S. Soccer is respectfully requesting that this Court disqualify the Foundation's counsel, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), and stay all proceedings until the disqualification issue is resolved.

As their names suggest, the parties in this dispute have been intertwined in countless ways for nearly three decades. U.S. Soccer is the national governing body of soccer in this country and the Foundation was formed by, and to support, U.S. Soccer. Relevant here, this connection between the parties extends to the fact that U.S. Soccer has used the Foundation's trial counsel, Quinn Emanuel, to prosecute, maintain, and protect some of U.S. Soccer's trademarks—including the Marks at Issue. Indeed, in some instances, Quinn Emanuel and its attorneys submitted filings to the USPTO on U.S. Soccer's behalf attesting (contrary to their pleadings in this case) that U.S. Soccer owns the Marks at Issue—and that these marks are incontestable.[1] D.C. ethical rules—which apply to attorneys practicing before this Court—

---

[1]     *See* 15 U.S.C. § 1115 ("To the extent that the right to use the registered mark has become incontestable . . . , the registration shall be conclusive evidence of the validity of the registered (Continued...)

compel disqualification here both because of the conflict of interest created by Quinn Emanuel and its attorneys' prior conduct on behalf of U.S. Soccer, and because one of these attorneys will be a necessary fact witness once this action does proceed to the merits.[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties' Relationship and the Nature of this Dispute.

As U.S. Soccer explained in its Answer and Counterclaims, U.S. Soccer established the Foundation in 1991 to, *inter alia,* solicit charitable donations to support U.S. Soccer's mission and organization members by capitalizing on increased interest in soccer arising from the 1994 FIFA World Cup. *See generally* Dkt. No. 16, ¶¶ 26-49. During the early years of the Foundation, U.S. Soccer registered certain marks that featured U.S. Soccer's existing and well-known design and word marks, plus the word "FOUNDATION." *See id.,* Ex. A (listing U.S. Soccer as the registrant or applicant for the Marks at Issue).[3] This included adding the word "FOUNDATION" to U.S. Soccer's famous "Shooting Ball" logo used to identify U.S. Soccer's National Teams for decades, *e.g.*:



mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.").

[2]    By filing this motion and its supporting papers, and discussing the matters herein, U.S. Soccer does not waive any applicable attorney-client privilege, work-product protection, or any other applicable privilege or protection.

[3]    U.S. Soccer requests that this Court take judicial notice of all trademark filings attached to U.S. Soccer's Answer & Counterclaims, Dkt. No. 16, Ex. A, as well as the Exhibits A – G attached to the Declaration of David J. Ervin ("Ervin Decl."), filed concurrently with and in support of this Motion, Ervin Decl., Exs. A – G. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (documents recorded by the USPTO are public records subject to judicial notice).

U.S. Soccer contends it has allowed the Foundation to use the Marks at Issue (with oversight and control) since the mid-1990s. *See, e.g.*, Dkt. No. 16, ¶¶ 38-39. Throughout these years, the Foundation has acknowledged U.S. Soccer's ownership of the Marks at Issue. *See id.*, ¶¶ 40, 43. Meanwhile, U.S. Soccer has allowed the Foundation to prosecute filings to the USPTO confirming that the Marks at Issue are in use, and acknowledging U.S. Soccer's continued ownership. *See id.*, ¶ 39; *see also* Declaration of Greg Fike ("Fike Decl."), Ex. A at 1-2, 4, 11 (U.S. Soccer reminding the Foundation to renew certain Marks at Issue and report back to U.S. Soccer). This latter conduct—regarding prosecution of the Marks at Issue—is where Quinn Emanuel and counsel of record Robert L. Raskopf become particularly relevant (although, as will be discussed below, Mr. Raskopf began representing U.S. Soccer long before the Foundation or the Marks at Issue even came into existence).

U.S. Soccer's position is that this lawsuit—which it did not anticipate or initiate—arose because of the Foundation's desire to disaffiliate from its stated purpose of supporting U.S. Soccer and its members on the one hand, while still benefitting from a suggested affiliation with the U.S. Soccer brand on the other hand. Dkt. No. 16, ¶¶ 50-60. More simply, though, this dispute revolves around the ownership, validity, and use of the Marks at Issue. The Foundation alleges that only it has made exclusive use of the Marks at Issue and that U.S. Soccer recently demanded that the Foundation stop using the Marks at Issue. *See generally* Dkt. No. 1. The Foundation seeks, among other things, declaratory judgment that it has not infringed on U.S. Soccer's trademark rights and an order directing the USPTO to list the Foundation as the owner or, in the alternative, to cancel the registrations. *Id.*

U.S. Soccer, however, contends that it used the Marks at Issue, including by permitting the Foundation to use the Marks at Issue with U.S. Soccer's oversight and control. *See generally*

Dkt. No. 16.  Despite the Foundation's requests for an assignment, U.S. Soccer consistently maintained that it owned and controlled the Marks at Issue, and the Foundation repeatedly acknowledged U.S. Soccer's ownership and control.  *Id.*  The Foundation expressed a desire to disaffiliate from U.S. Soccer, and U.S. Soccer is concerned that continued use of its marks will create confusion and damage U.S. Soccer's goodwill.  *Id.*  U.S. Soccer seeks, among other things, a declaratory judgment that U.S. Soccer is the sole and exclusive owner of the Marks at Issue.  *Id.*

At its core, then, this action directly implicates Quinn Emanuel and Mr. Raskopf's prior work on U.S. Soccer's behalf:  affirming the validity of the Marks at Issue, and U.S. Soccer's use and ownership of these marks.

**B.      Quinn Emanuel & Mr. Raskopf's Relationship with U.S. Soccer.**

**1.      Mr. Raskopf Registered and Prosecuted Trademarks as U.S. Soccer's Counsel.**

Mr. Raskopf's attorney-client relationship with U.S. Soccer dates back decades.  Mr. Raskopf (then at Townley & Updike) first began representing U.S. Soccer and prosecuting its intellectual property in 1980—well before the Foundation existed or the Marks at Issue were created.  During that time, Mr. Raskopf was appointed by Kurt Lamm, Corporate Secretary of U.S. Soccer, as the attorney of record for U.S. Soccer's registration and prosecution of Trademark Reg. Nos. 1,201,646 and 1,216,276.   Ervin Decl., Ex. B at 9-10, Ex. C at 9-10; *see also id.*, Ex. A at 1 (listing Mr. Raskopf as counsel of record for U.S. Soccer's "USSF" mark).  In this capacity, Mr. Raskopf actively prosecuted U.S. Soccer's intellectual property, including by responding on multiple occasions to USPTO Office Actions regarding U.S. Soccer's

applications.[4]  *Id.*, Ex. B at 5-7, Ex. C at 4-5, 11, 15.  One of these marks ('646 for the word

mark "UNITED STATES SOCCER FEDERATION") is particularly relevant to the present

action, as U.S. Soccer alleges that the Foundation's use of the Marks at Issue also infringes on

U.S. Soccer's *other* trademarks—such as the '646 mark.  *See* ECF No. 16, ¶¶ 19-25, 68-75, Ex.

A.

> ### 2.  Mr. Raskopf Resumed Prosecuting Trademarks Owned by U.S. Soccer While at Quinn Emanuel

Mr. Raskopf resumed his trademark prosecution efforts on behalf of U.S. Soccer in

2005—this time with regard to the Marks at Issue.  From 2005 through 2013, U.S. Soccer gave

Mr. Raskopf power of attorney and Mr. Raskopf served as counsel of record, prosecuting

multiple renewals for the Marks at Issue on behalf of U.S. Soccer.  *See* Ervin Decl., Ex. F at 11-

12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30 ("Registrant [U.S. Soccer] hereby appoints

Robert Raskopf . . . with full power of substitution and revocation, to transact all business in the

Patent and Trademark Office in connection with this registration [of one of the Marks at

Issue].");  *id.* at Ex. D at 16-17, Ex. E at 15-16 ("The registrant [U.S. Soccer] hereby appoints . . .

Robert L. Raskopf . . . to file this Declaration of Use of Mark in Commerce under Section 8 [for

one of the Marks at Issue] on behalf of the registrant [U.S. Soccer]");  *see also id.* at Ex. D at 14-

15, Ex. E at 12-14 (listing Mr. Raskopf as an appointed attorney).[5]  U.S. Soccer did not pay Mr.

---

[4]    There can be no doubt that Mr. Raskopf played a critical role in these efforts on behalf of U.S. Soccer.  When U.S. Soccer retained a new law firm for its trademark work, for example, the new firm contacted Mr. Raskopf directly seeking the original certificates of registration for certain marks.  Fike Decl., Ex. D (letter from Cadwalader to Raskopf).

[5]    In 2005, Mr. Raskopf was a partner at White & Case, LLP before moving to Quinn Emanuel in 2006 where he and a team of attorneys continued to prosecute the Marks at Issue on behalf of U.S. Soccer.  *See, e.g.*, Ervin Decl., Ex. F at 11-12, Ex. G at 16-17, 22-23.  This team included Mr. Alan Blum, who also features prominently in the relevant filings for the Marks at Issue.  *See id.*  It is U.S. Soccer's understanding, however, that Mr. Blum is now deceased.

Raskopf for his services; rather, U.S. Soccer authorized the Foundation to retain counsel to prosecute the Marks at Issue on behalf of U.S. Soccer. *See, e.g.*, Fike Decl., Ex. A, Ex. C. During these efforts, Quinn Emanuel and Mr. Raskopf worked with Rob Kaler, the Foundation's Chief Operating Officer & General Counsel, to file declarations in support of renewal.[6]

These declarations and renewals unequivocally identify U.S. Soccer as the applicant, registrant, and owner of the Marks at Issue. *See* Ervin Decl., Ex. D at 16-17, Ex. E at 15-16, Ex. F at 11-12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30 (declarations of incontestability and/or confirming U.S. Soccer was the applicant, owner, and was using the mark in commerce and had been using the mark in commerce for years).[7] Moreover, the signature lines of these declarations that Quinn Emanuel and Mr. Raskopf filed in support of the renewals for the Marks at Issue evolve over time and demonstrate an awareness of U.S. Soccer's ownership of these marks and its status as the beneficiary of the renewals. *See id.* For example, in the declaration Mr. Raskopf filed in March 2005 for the '888 Mark at Issue, Mr. Kaler is identified as the General Counsel and Director of Business Affairs *for U.S. Soccer*. Ervin Decl., Ex. F at 11-12, 16-17. Likewise, on January 6, 2006, Mr. Raskopf filed a declaration for renewal of the '950 Mark at Issue executed by Mr. Kaler identifying U.S. Soccer's ownership, and listing Mr. Kaler as Chief Operating Officer and General Counsel *for U.S. Soccer*. *Id.*, Ex. G at 12-13.

Mr. Kaler was authorized to facilitate renewal of the Marks at Issue; however, at no time was Mr. Kaler an employee of U.S. Soccer as these declarations suggest. In March 2006, Mr.

---

[6]     *See* Foundation Website, "About, Foundation Team, Rob Kaler" *available at* https://ussoccerfoundation.org/about/rob-kaler.

[7]     Again, incontestability means the registration is conclusive evidence that the mark is valid, that the registrant owns the mark, and that the registrant has the exclusive right to use the mark. 15 U.S.C. § 1115.

Raskopf filed a correction to Mr. Kaler's title, identifying him *under the U.S. Soccer byline* as "Counsel for Registrant." Ervin Decl., Ex. G at 19-23. Still later though, in March 2009 and 2010, Mr. Raskopf filed renewals (as always, identifying U.S. Soccer as the owner) with Mr. Kaler serving as the declarant under the title of "Chief Operating Officer & General Counsel" without identifying which entity he was affiliated with (although, again, clearly signing the declaration on behalf of the owner, U.S. Soccer). Ervin Decl., Ex. D at 16-17, Ex. G at 7-8.[8]

In total, such filings leave no room for doubt that: Mr. Raskopf and Quinn Emanuel acted on U.S. Soccer's behalf to protect and renew the Marks at Issue as authorized by U.S. Soccer; in doing so, Mr. Raskopf and Quinn Emanuel consistently confirmed and reaffirmed U.S. Soccer's rights in the Marks at Issue; and, by now taking a contrary position in this suit, Mr. Raskopf and Quinn Emanuel are going directly against the interests of their former client—and their own filings before the USPTO.

### 3.    Quinn Emanuel Is Still Attorney of Record for Certain Marks at Issue

What's more, U.S. Soccer may even be considered Quinn Emanuel's *current* client. To this day, Quinn Emanuel is listed as the attorney of record for the '888 and '950 Marks at Issue based on its previous prosecution efforts on behalf of U.S. Soccer.[9] Ervin Decl., Ex. F at 1-6, Ex. G at 1-5. As recently as March 30, 2018 and March 14, 2019, Quinn Emanuel received communication from the USPTO reminding the firm that the certain Marks at Issue were due for renewal. *Id.* Months after receiving the former notification, Quinn Emanuel and Mr. Raskopf started to entertain a suit against U.S. Soccer—the owner of the Marks at Issue on whose behalf

---

[8]    Subsequent filings by Arent Fox, LLP (the law firm that took over for Quinn Emanuel in prosecuting the Marks at Issue) correctly list Mr. Kaler as an employee of the *Foundation*. Ervin Decl., Ex. D at 9-11, Ex. E at 4-7.

[9]    While Mr. Blum is sometimes listed as the Quinn Emanuel attorney for correspondence, again, it is U.S. Soccer's understanding that Mr. Blum is deceased.

they are listed as attorneys of record for, and have prosecuted.  And, of course, Quinn Emanuel and Mr. Raskopf had already filed suit against U.S. Soccer by the time they received the latter notification from the USPTO.

### C.     U.S. Soccer Has Complied with LCvR 7(m) by Diligently Attempting To Resolve These Issues

U.S. Soccer first expressed a concern with Mr. Raskopf's conflict in a letter sent on January 16, 2019.  Ervin Decl., Ex. H.  The letter sought clarification (and provided documentation) regarding the Foundation's position in its Complaint that U.S. Soccer was never the actual owner of the Marks at Issue, given that Mr. Raskopf and Quinn Emanuel had repeatedly prosecuted renewals of those marks on behalf of U.S. Soccer.  *Id.*  The issue was again discussed at length at an in-person meeting between counsel on January 24, 2019.  Ervin Decl., ¶¶ 2, 10.  During the March 5, 2019 Rule 26(f) Conference, the parties again discussed Mr. Raskopf and Quinn Emanuel's prior representation of U.S. Soccer.  *Id.*  Despite these efforts, the parties have reached an impasse and Court intervention is necessary.

### D.     This Case is at an Early Stage and A Stay Would Promote Efficiency

U.S. Soccer has also diligently brought this motion while this case is still at an early stage.  The Foundation filed its Complaint on December 6, 2018.  Dkt. No. 1.  The parties engaged in preliminary settlement discussions before U.S. Soccer filed its Answer and Counterclaims on February 18, 2019.  Dkt. No. 16.  The Foundation's Answer is due on March 25, 2019.  Dkt. No. 18.  An initial status conference is set for March 26, 2019.  Minute Order (Feb. 19, 2019).  The parties held their Rule 26(f) and LCvR 16.3 conference on March 5, 2019, and exchanged initial disclosures on March 22, 2019.  Dkt. No. 19.  While the Foundation has already served 89 Requests for Production, the parties have not yet moved for—or even agreed upon—the entry of a protective order or an order governing the production of electronically

stored information.   There have been no depositions,  none are scheduled, and no other motions are pending.

In light of the proceedings thus far, then, U.S. Soccer requests that all further proceedings, including discovery, be stayed while this motion is pending. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).  This includes the inherent authority to stay discovery.  Fed. R. Civ. P. 26(c)(1)(B) (court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including  "specifying [the] time and place . . . for . . . discovery").  Courts— including in this District—have found good cause to stay proceedings, including discovery, while a motion to disqualify counsel is pending.  *Shvartser v. Lekser*, 321 F.R.D. 23-24 (D.D.C. 2017) (referencing stay of discovery pending a ruling on defendant's motion to disqualify plaintiff's counsel); *see also Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (noting that stay of discovery pending resolution of threshold or dispositive motions "is an eminently logical means to prevent wasting time and effort of all concerned, and to make the most efficient use of judicial resources") (citation omitted); *IPVX Patent Holdings, Inc. v. 8X8, Inc.*, No. C 13-01707,  2013 WL 6000590, at *2 (N.D. Cal. Nov. 12, 2013) (proceedings held in abeyance "pending a ruling on Defendant's motion to disqualify Plaintiff's counsel").  Because disqualification of counsel may result in pleadings or discovery being stricken, a stay promotes efficiency and avoids duplication of effort and wasted resources.  *See Ahn v. Scarlett*, No. 5:16-CV-05437-EJD,  2017 WL 6326693, at *2 (N.D. Cal. Dec. 11, 2017); *SC Innovations, Inc. v. Uber Tech., Inc.*, No. 18-cv-7440-JCS (N.D. Cal. Jan. 14, 2019), Dkt. Nos. 15, 23 (granting stay where Uber argued it would be inefficient to proceed before resolving its motion to disqualify

plaintiff's counsel, Quinn Emanuel).  Nor will there be any prejudice to the Foundation in permitting a stay at this early stage. *Nat'l Grange of Order of Patrons of Husbandry v. Guild*, No. CV 2:16-201 WBS DB, 2017 WL 1397242, at *1 (E.D. Cal. Apr. 4, 2017) (finding no prejudice from granting stay of discovery while motion to disqualify is pending).  Instead, U.S. Soccer is likely to be prejudiced if required to proceed against counsel who formerly advocated on its behalf—including with regard to the very issues at dispute in this case.  Further, the import of avoiding wasted effort weighs heavily in favor of a stay where, as here, both parties are non-profit entities.

The Foundation may claim that a stay is appropriate only in "extreme circumstances"; however, that is not the standard that applies here. Dkt. No. 19 (citing *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003)).  *GFL* addressed a scenario where one district court is asked to stay proceedings while a related matter pending before a *different* district court proceeds.  *Id.* (relying on Tenth Circuit authority addressing a stay of numerous, related state and federal court proceedings).  That is not the scenario here.  Instead, here, U.S. Soccer has shown that there is good cause for granting a stay so it may avoid being prejudiced, confirm who plaintiff's counsel will be, and avoid unnecessarily wasting or duplicating effort if Quinn Emanuel is disqualified.[10]

## III.   LEGAL STANDARD

Federal courts have the power and responsibility to control the appearance of counsel before them in the exercise of their discretion.  *Groper v. Taff*, 717 F.2d 1415, 1418 (D.C. Cir. 1983); *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008).  The court has authority to disqualify an attorney from participating in a case before it if there is a conflict of

---

[10]   Given the timing of this motion, U.S. Soccer is not requesting the Court stay, vacate, or continue the initial scheduling conference that is set for tomorrow, March 26, 2019.

interest or if the attorney has committed ethical violations. *Konarski v. Donovan*, 763 F. Supp. 2d 128, 135 (D.D.C. 2011). In federal court, motions to disqualify counsel are governed by two sources of authority: the local rules of the court (including any rules of professional responsibility adopted by those rules), and standards developed under federal law. *Paul*, 571 F. Supp. 2d at 20. The local rules of this Court acknowledge that the District of Columbia Rules of Professional Conduct govern the conduct of attorneys in this District. LCvR 83.15; *Paul*, 571 F. Supp. 2d at 20.

Here, Quinn Emanuel and Mr. Raskopf have violated three of those Rules: Rule 1.9, prohibiting a lawyer from representing a person with interests materially adverse to the interests of the former client in the same or a substantially related matter; Rule 1.10, prohibiting representation by a firm when one if its lawyers is prohibited to do so because of a conflict of interest; and Rule 3.7, prohibiting a lawyer from acting as advocate in a trial in which the lawyer is likely to be a necessary witness.

## IV.     ARGUMENT

### A.      Mr. Raskopf and Quinn Emanuel's Conduct Violates the D.C. Rules of Professional Conduct and Breaches Fiduciary Duties Owed to U.S. Soccer

A conflict of interest exists when an attorney who previously represented a client is now adverse to the client on the same or a substantially related matter. Rule 1.9 of the Rules of Professional Conduct sets forth the general rule for conflicts of interest:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

D.C. R. Prof. Cond 1.9. An attorney violates Rule 1.9 if three elements are met. First, the attorney is a "former attorney" with respect to a party presently before the court. Second, the subject matter of the former representation is the same as, or substantially related to, the present

matter on which the alleged violation of Rule 1.9 is based. Third, the interests of the former client are adverse to the interests of the party represented by the attorney who is accused of violating Rule 1.9. *Paul*, 571 F. Supp. 2d at 21. All three elements are met here with regard to U.S. Soccer and Mr. Raskopf.

### 1.    Mr. Raskopf Is a Former Attorney of U.S. Soccer

Mr. Raskopf's own attorney-work product proves he is a former attorney of U.S. Soccer. Mr. Raskopf was first retained by U.S. Soccer beginning in 1980 when he served as the attorney of record and prosecuted trademarks on behalf of U.S. Soccer—including marks relevant to the present dispute. Ervin Decl., Ex. A at 1-3, Ex. B at 5-7, 9-10, Ex. C at 4-5, 9-11, 15; Dkt. No. 16, ¶¶ 19-25, 68-75, Ex. A.[11] In this capacity, Mr. Raskopf was charged with authority to transact all business in connection with certain marks, including responding on behalf of U.S. Soccer to a USPTO Office Action. *See id.*

Mr. Raskopf resumed his prosecution efforts of U.S. Soccer's intellectual property in 2005 and continued these efforts through 2013. Ervin Decl., Ex. D at 13-15, 16-17, Ex. E at 12-14, 15-16, Ex. F at 11-12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30. Although U.S. Soccer did not directly retain Mr. Raskopf during these more recent prosecution efforts, it had notice that the Foundation had retained him and Quinn Emanuel as counsel to prosecute the marks, and that the work of this outside counsel would be on behalf of and for the benefit of U.S. Soccer. *See Derrickson v. Derrickson*, 541 A.2d 149, 153 (D.C. 1988) (stressing that "neither a formal

---

[11]    Notably, Mr. Raskopf assisted U.S. Soccer with obtaining the UNITED STATES SOCCER FEDERATION mark, the related shield mark (displayed above at p.4 as the National Team's logo beginning in 1984), and even the USSF mark—the very acronym Plaintiff now uses as shorthand to accuse U.S. Soccer of wrongdoing. Ervin Decl., Ex. A at 1-3, Ex. B at 5-7, 9-10, Ex. C at 4-5, 9-11, 15. Curiously, Mr. Raskopf's firm biography states that he *has* represented "USSF" – although, apparently referring to the United States Soccer Federation Foundation (*i.e.*, "USSF*F*") despite his having registered the "USSF" mark for U.S. Soccer. *See id.*, Ex. J.

agreement nor the payment of fees is necessary to create an attorney-client relationship"); *see also* Restatement (Third) of the Law Governing Lawyers § 14, cmt. c (same); *see also* Fike Decl., Ex. A, Ex. C; Ervin Decl., Ex. F, Ex. G. This evidence establishes that Mr. Raskopf's attorney-client relationship with U.S. Soccer continued into the 2000s and implicated the Marks at Issue. *Queen v. Schultz*, No. CV 11-871, 2015 WL 13680823, at *2 (D.D.C. May 7, 2015) ("A relationship of client and lawyer arises when: (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services"); *see also* Ervin Decl., Ex. D at 16-17, Ex. E at 15-16, Ex. F at 11-12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30 (documentation received by U.S. Soccer stating that the registrant, U.S. Soccer, was appointing Mr. Raskopf with full power to transact business in connection with certain Marks at Issue, and file declarations in support of certain Marks at Issue).

Moreover, even absent indicia of the typical attorney-client relationship regarding Mr. Raskopf's prosecution of the Marks at Issue, Mr. Raskopf owes U.S. Soccer fiduciary duties based on his prior representation of U.S. Soccer and as U.S. Soccer's sub-agent for the prosecution of the Marks at Issue. The lawyer-client relationship is a commonsensical illustration of agency. A lawyer acts on behalf of the client, representing the client, with consequences that bind the client. The Third Restatement of Agency explains:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

Restatement (Third) Of Agency § 1.01 (2006).  U.S. Soccer allowed the Foundation, through its outside counsel, to prosecute filings of the Marks at Issue, but always insisted on maintaining ownership.  Fike Decl., Ex. B, Ex. C.  U.S. Soccer (the principal) agreed with the Foundation (the agent) to allow the Foundation to act on behalf of U.S. Soccer to renew the Marks at Issue, subject to U.S. Soccer's continued ownership and control of the marks.  *See id.*

When forming the agency relationship for the renewal of the Marks at Issue, U.S. Soccer and the Foundation contemplated that the Foundation would hire outside counsel to prosecute the renewals.  In the early 2000s, the Foundation retained counsel to prosecute renewals of the Marks at Issue on behalf of, and under the control of, U.S. Soccer—and U.S. Soccer and that counsel often communicated about and coordinated these prosecution efforts.  *See* Ervin Decl., Ex. D at 18-33, Ex. E at 17-38, Ex. H at 5-12; Fike Decl., Ex. A, Ex. C.  Thus, when Quinn Emanuel and Mr. Raskopf were eventually hired by the Foundation, they were hired to effectuate the Foundation's grant of authority as U.S. Soccer's agent.  The Second Restatement of Agency explains that:

> The subagent stands in a fiduciary relation to the principal, and is subject to all the liabilities of an agent to the principal, except liability dependent upon the existence of a contractual relation between them.

Restatement (Second) of Agency § 5 (1958).  A subagent owes duties to the principal (*i.e.*, becomes the agent of the principal) when: (1) the principal directs, either expressly or impliedly, the agent to hire the subagent; and (2) the subagent is aware of who the ultimate principal is.  *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 32 (D.D.C. 2007).  Both factors are met here.

First, when U.S. Soccer permitted the Foundation to prosecute the Marks at Issue, it always intended for the Foundation to hire an agent, *i.e.*, outside counsel.  As a matter of

common practice, it would be presumed that a sophisticated entity like the Foundation with no trademark lawyer on staff would hire outside counsel to handle trademark prosecutions. And, in fact, U.S. Soccer *knew* that the Foundation had outside counsel handling these matters, including because U.S. Soccer communicated directly with outside counsel about these filings—or at least was on notice that outside counsel was handling the filings. Ervin Decl., Ex. D at 18-33, Ex. E at 17-38, Ex. H at 5-12; Fike Decl., Ex. A, Ex. C. When U.S. Soccer delegated prosecution efforts for the Marks at Issue, U.S. Soccer explicitly acknowledged that it was permitting the Foundation's "*attorneys*" to handle the filings (while U.S. Soccer maintained ownership of the Marks at Issue). Fike Decl., Ex. C. With only one attorney on the Foundation's staff—and, again, one who is not a trademark lawyer—there can be no doubt that U.S. Soccer expressly or impliedly directed the Foundation to hire an agent for handling these filings. By 2005, the Foundation had switched outside counsel and begun working with Mr. Raskopf while he was with White & Case, continuing to work with him after he joined Quinn Emanuel. *See, e.g.*, Ervin Decl., Ex. F at 11-12, Ex. G at 16-17, 22-23. The Foundation's continued use of outside counsel (and, indeed, its inability to prosecute the renewals without outside counsel) is clear evidence of U.S. Soccer's implicit direction to the Foundation to retain an agent.

Second, Mr. Raskopf and Quinn Emanuel always knew that U.S. Soccer was the principal on behalf of whom they were working. By the very nature of the work they performed—prosecuting trademarks owned by U.S. Soccer—the Foundation's outside counsel was consistently aware that U.S. Soccer was the owner of the marks and the ultimate principal. And, as discussed in detail above, on each filing Mr. Raskopf submitted on U.S. Soccer's behalf, U.S. Soccer was unequivocally listed as the owner and registrant—and thus the beneficiary of

Mr. Raskopf's renewal efforts.  Ervin Decl., Ex. D at 16-17, Ex. E at 15-16,  Ex. F at 11-12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30.

Thus, as a subagent of U.S. Soccer, Mr. Raskopf and Quinn Emanuel owed and continue to owe fiduciary duties—including the duty of loyalty—to U.S. Soccer. *See, e.g., Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 583-84 (D.C. 2015) ("An agent owes his principal a fiduciary duty and a duty of loyalty and like other agents, lawyers owe their clients a duty of loyalty and a duty of care. A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another. The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to the most conscientious fidelity[.]") (alterations and citations omitted).  This means that Mr. Raskopf and Quinn Emanuel cannot serve as counsel for the Foundation in this suit without breaching ethical duties owed to U.S. Soccer.  As such, there is a clear conflict of interest created by permitting Quinn Emanuel and Mr. Raskopf to serve as counsel in this matter.

### 2.    The Subject Matter of the Litigation is the Same as or Substantially Related to Mr. Raskopf and Quinn Emanuel's Work On Behalf of U.S. Soccer

The second element under Rule 1.9 requiring substantially related matters is undoubtedly met here, where Mr. Raskopf's representation of U.S. Soccer has always centered on the prosecution of U.S. Soccer's intellectual property, including the Marks at Issue. The D.C. Rules on Professional Conduct provide that:

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

D.C. R. Prof. Cond 1.9 Cmt. 3.  Although Mr. Raskopf and Quinn Emanuel prosecuted the Marks at Issue on behalf of U.S. Soccer as the owner of the marks, they now advance the

position that U.S. Soccer does *not* own the marks and, in fact, "at no time was [U.S. Soccer] ever the actual owner of the Foundation Marks." Dkt. No. 1, ¶ 25. This matter thus involves the same transactions and issues—the validity, use, and ownership of U.S. Soccer's marks—that Mr. Raskopf and Quinn Emanuel previously prosecuted on behalf of U.S. Soccer. *See* Ervin Decl., Ex. D at 16-17, Ex. E at 15-16, Ex. F at 11-12, 16-17, Ex. G at 12-13, 16-17, 22-23, 29-30. (Mr. Raskopf's filings before the USPTO identifying U.S. Soccer as owner, registrant, and user of the Marks at Issue).

Once a "substantial relationship" between the prior representation and the present matter is shown, "there is an *irrebuttable* presumption that counsel received information during the first representation that is relevant to the second." *Paul*, 571 F. Supp. 2d at 26 (quoting *Derrickson*, 541 A.2d at 152-53) (emphasis added). This presumption is sufficient to conclude that there is a substantial possibility of an unfair advantage here. *See id*. Mr. Raskopf and Quinn Emanuel's representation of U.S. Soccer are "substantially related" to this suit, so it is immaterial whether they can show they did not have access to—or do not recall—any confidential information.[12] Instead, there is an *irrebuttable* presumption that they may have received information that could be used against their former client, U.S. Soccer. *See Derrickson*, 541 A.2d at 151-52.

### 3. The Parties' Interests are Adverse.

In a litigation, where the former client is the adverse party, this final prong under Rule 1.9 is readily established. *See Paul*, 571 F. Supp. 2d at 21. Thus, all three elements necessary to

---

[12]     *Cf. T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953) ("To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule.").

demonstrate a conflict under Rule 1.9 exist here, and the Court should disqualify Mr. Raskopf and Quinn Emanuel from representing the Foundation in this matter.

Persuasive authority also supports Mr. Raskopf's disqualification. *See* Ervin Decl., Exhibit I (D.C. Bar Ethics Opinion No. 247 (May 1994)). The D.C. Bar has addressed whether an attorney involved in a transaction can later represent the purchaser against the seller in a dispute. In that case, the attorney performed certain work for the seller during a real estate transaction (*e.g.*, drafting a deed of trust) but never disclosed that he represented only the purchaser in that transaction, nor specified his precise relationship to the seller during that transaction. *Id.* at 1-3. Rather than focusing on whether the attorney obtained confidential information from the seller or categorizing the precise type of relationship formed between the attorney and the seller, the opinion concluded that the attorney was disqualified based solely on the ambiguity the attorney had created. *Id.* "[T]he lack of notice clarifying the lawyer's role with respect to the seller allowed sufficient ambiguity that [the attorney] should not later take on an adverse representation in a substantially related matter over the seller's objection. The relationship between lawyer and seller was sufficient to result in a disqualification under Rule 1.9." *Id.* at 3.[13]

Here, similarly, Mr. Raskopf performed work on behalf of U.S. Soccer, purporting to act as its subagent, but failing to disclose that he represented only the Foundation. The combination of Mr. Raskopf's work prosecuting the Marks at Issue, and "the absence of a contemporaneous statement that [Mr. Raskopf] represented only the [Foundation] and not [U.S. Soccer]" means that "[Mr. Raskopf] may not represent the [Foundation] against [U.S. Soccer] in a subsequent

---

[13]     Notably, this was so even though the seller was himself a lawyer—and the attorney tried (unsuccessfully) to argue that the seller's sophistication somehow negated any conflict. *Id.* at 3.

substantially related matter"—*i.e.*, this action challenging the validity of the Marks at Issue that Mr. Raskopf himself prosecuted. *Id.* In light of Rule 1.9's animating principles, then, categorizing Mr. Raskopf's relationship with or exchange of information with U.S. Soccer is less important than recognizing the ambiguity as to loyalties and conflicts that Mr. Raskopf's prior conduct has created.

### 4.   Under Rule 1.10, Any Conflict Under Rule 1.9 Is Imputed To Quinn Emanuel

Because Mr. Raskopf has a conflict of interest under Rule 1.9, and any representation on behalf of the Foundation in this matter would breach fiduciary duties owed and owing to U.S. Soccer, Quinn Emanuel is likewise conflicted under Rule 1.10, which imputes his conflict to his firm. *See* D.C. R. Prof. Cond 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9."). Nor do any of the exceptions to Rule 1.10 apply here. Instead, the facts support that the duty of loyalty owed to U.S. Soccer would be breached by permitting Mr. Raskopf's partners and colleagues at Quinn Emanuel to proceed adversely to U.S. Soccer:

> The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the Rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.

*Id.*, cmt. 4. In sum, then, U.S. Soccer has shown that the letter *and* spirit of Rules 1.9 and 1.10 will be violated if the Foundation is permitted to proceed in this matter with Quinn Emanuel as counsel of record.

### B.   Mr. Raskopf Will Be a Necessary Witness at Trial

Separate and apart from a conflict under Rule 1.9, Mr. Raskopf should be disqualified for the independent reason that his involvement in the prosecution of the Marks at Issue will necessarily be an issue at trial, such that he will need to testify about the facts of his work maintaining the Marks at Issue on behalf of U.S. Soccer.[14]  D.C. Rule of Professional Conduct 3.7(a) states that:

> [a] lawyer *shall not* act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship on the client.

D.C. R. Prof. Cond 3.7 (emphasis added); *Queen v. Schultz*, No. CV 11-871, 2015 WL 13680823, at *1 (D.D.C. May 7, 2015).

In order to determine whether an attorney is required to withdraw under Rule 3.7(a), the Court must conduct a balance between the interests of the client and those of the opposing party. D.C. R. Prof. Cond 3.7, Cmt. 4.  Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. *Id.*; *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. CIVA 95-1231 RCL, 2007 WL 842081, at *4 (D.D.C. Mar. 19, 2007).

The Foundation alleges that U.S. Soccer never owned the Marks at Issue and seeks an order directing the USPTO to change the register of the Marks at Issue to reflect the Foundation as the owner.  Mr. Raskopf has personal knowledge that cuts to the heart of the Foundation's

---

[14]   Again, while Alan Blum may have played a role in this work alongside Mr. Raskopf at both White & Case and then Quinn Emanuel, it is U.S. Soccer's understanding that Mr. Blum is deceased—leaving only Mr. Raskopf as an available witness.

claims. U.S. Soccer will call Mr. Raskopf to testify about his prosecution efforts and whether he understood that the Foundation owned the Marks at Issue during his eight years prosecuting the marks. For example, both U.S. Soccer and the Foundation relied on Mr. Raskopf in confirming that the Marks at Issue were being used in commerce—as that term is understood under trademark law—and *only* Mr. Raskopf can testify on U.S. Soccer's behalf as to why he represented to the USPTO that the Marks at Issue were in use by U.S. Soccer. *See, e.g.*, Ervin Decl., Ex. D at 16-17 (listing U.S. Soccer as owner and stating that the registrant, U.S. Soccer, appoints Mr. Raskopf to file a declaration of use attesting that the Mark at Issue is in use). Mr. Raskopf will also be called to explain why the declarations he filed (executed by Mr. Kaler) identify Mr. Kaler as a representative of U.S. Soccer (until 2013, when Arent Fox began to list Mr. Kaler's correct title as with the Foundation). *Compare, e.g.*, Ervin Decl., Ex. G at 19-23, *and id.*, Ex. F at 11-12, 16-17, *with id.*, Ex. D at 9-11, *and* Ex. E at 4-7. Mr. Raskopf is thus a necessary witness in this case. *See Caluori v. One World Techs., Inc.*, No. CV 07-2035 CAS VBKX, 2012 WL 2004173, at *5 (C.D. Cal. June 4, 2012) (noting lawyer is necessary witness where testimony is "relevant, material, not merely cumulative, and unobtainable elsewhere" and concluding attorney who was "responsible for drafting the application for the [] patent" was a necessary witness "[g]iven his familiarity with the [] patent and its prosecution history," and so excluded from appearing as trial counsel).

Mr. Raskopf's disqualification does not satisfy any of the exceptions of Rule 3.7. His testimony relates to the core questions of this lawsuit, which the parties vigorously dispute in their pleadings. There is no question as to the nature and value of legal services rendered. Finally, the likely prejudice that U.S. Soccer will face should Mr. Raskopf serve in a dual role of attorney and witness far outweighs the Foundation's interest in allowing Mr. Raskopf and Quinn

Emanuel to serve as trial counsel. Mr. Raskopf's testimony may conflict with the testimony of U.S. Soccer's witnesses—and may even conflict with the testimony of the Foundation's own witnesses. And regardless of whether Mr. Raskopf's testimony would be consistent with or adverse to either position, his testimony would "relate[ ] to a [ ] contested issue," and the Rule thus states that he "*shall* not act as advocate." D.C. R. Prof. Cond 3.7(a) (emphasis added). His participation as both lawyer and fact witness will undoubtedly confuse the jury. The prejudice to U.S. Soccer far outweighs the inconvenience to the Foundation of having to find new representation for trial at this very early stage of the litigation.[15] Even if there were any doubt— which there is not—the risk of requiring U.S. Soccer to proceed to trial against Mr. Raskopf counsels in favor of disqualification. *See Premium Prod., Inc. v. Pro Performance Sports*, LLC, 997 F. Supp. 2d 433, 438 (E.D. Va. 2014) ("[The attorney's] dual roles as lawyer and witness create, at the very least, the appearance of impropriety. [The plaintiff] splits hairs as to whether the appearance of impropriety will ripen into actual impropriety, but ultimately the magistrate was correct to resolve all doubts in favor of disqualification.").

## V.   CONCLUSION

For the foregoing reasons, U.S. Soccer respectfully requests that the Court grant its motion to disqualify Mr. Raskopf and Quinn Emanuel from representing the Federation in this action, or in the alternative, disqualify Mr. Raskopf and Quinn Emanuel from serving as counsel

---

[15]   Because Mr. Raskopf has a conflict of interest under D.C. Rule of Professional Conduct Rule 1.9 and is a likely necessary witness at trial, D.C. Rule of Professional Conduct Rule 3.7 also prohibits attorneys from Quinn Emanuel acting as advocates at trial—meaning that Mr. Raskopf's prior conduct necessarily disqualifies both him and his firm from representing the Foundation in this matter. *See* D.C. R. Prof. Cond 3.7(b) ("A lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness if the other lawyer would be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9.").

at trial.  In addition,  U.S. Soccer also respectfully requests that the Court stay all proceedings in this matter while the present motion is pending.[16]

Dated: March 25, 2019

Respectfully submitted,

CROWELL & MORING, LLP

By:  */s/ David J. Ervin*
David J. Ervin (D.C. Bar #445013)
DErvin@crowell.com
Shari Ross Lahlou (D.C. Bar #476630)
SLahlou@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 624-2500

Kent B. Goss (admitted *pro hac vice*)
KGoss@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Tel: (213) 443-5504

*Attorneys for Defendant United States Soccer Federation, Inc.*

---

[16]   If the Court denies this motion, U.S. Soccer requests that any denial be without prejudice given that further discovery in this case may warrant revisiting the issues raised herein.

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record and pro se individuals with CM/ECF privileges.

*/s/ David J. Ervin*
David J. Ervin