**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES SOCCER<br>FEDERATION FOUNDATION, INC.,<br><br>     Plaintiff/Counter-Defendant,<br><br>  v.<br><br>UNITED STATES SOCCER<br>FEDERATION, INC.,<br><br>     Defendant/Counter-Plaintiff. | Civil Action No. 1:18-cv-02856-TJK<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISQUALIFY QUINN EMANUEL URQUHART & SULLIVAN, LLP**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL BACKGROUND ........................................................................................................3

    A.    The Foundation ....................................................................................................3

    B.    The Registration And Use Of The Foundation Marks .............................................4

    C.    Proceedings Before This Court................................................................................6

    D.    The USSF's Motion To Disqualify ........................................................................7

ARGUMENT .................................................................................................................................9

I.    THE USSF HAS NOT MET THE HIGH BURDEN FOR DISQUALIFYING
    MR. RASKOPF OR QUINN EMANUEL DUE TO A CONFLICT OF
    INTEREST ...........................................................................................................................10

    A.    The USSF Fails To Show A Conflict Of Interest Requiring
        Disqualification Under Rule 1.9 ...........................................................................10

    B.    Any Purported Prior Representation Of The USSF In The Early 1980s By
        Mr. Raskopf May Not Be Imputed To Quinn Emanuel Under Rule 1.10 .............23

    C.    Any Alleged Violations Are Not Sufficient Grounds For Disqualifying
        Mr. Raskopf And Quinn Emanuel ........................................................................24

    D.    The USSF Unreasonably Delayed In Filing The Motion To Disqualify .............26

II.    THE USSF DOES NOT SHOW THAT MR. RASKOPF SHOULD BE
    DISQUALIFIED BECAUSE HE WILL BE A NECESSARY WITNESS......................27

    A.    The USSF's Motion To Disqualify Mr. Raskopf As A Necessary Witness
        Is Premature ..........................................................................................................27

    B.    The USSF Has Not Shown Mr. Raskopf Will Be A Necessary Witness .............28

CONCLUSION.............................................................................................................................30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alchemy II, Inc. v. Yes! Entm't Corp.*,
844 F. Supp. 560 (C.D. Cal. 1994) ................................................................. 22

*Allergia, Inc. v. Bouboulis*,
2015 WL 11735651 (S.D. Cal. May 5, 2015) ................................................. 17

*\*Ambush v. Engelberg*,
282 F. Supp. 3d 58 (D.D.C. 2017) ................................................. 10, 25, 26, 28

*Caluori v. One World Techs., Inc.*,
2012 WL 2004173 (C.D. Cal. June 4, 2012) ................................................. 29

*Cardiogrip Corp. v. MD Sys., Inc.*,
2007 WL 1464249 (D. Idaho Jan. 4, 2007) ..................................................... 18

*Cauderlier & Assocs., Inc. v. Zambrana*,
2006 WL 3445493 (D.D.C. Oct. 6, 2006) ................................................... 9, 19

*Enslein v. Di Mase*,
2018 WL 1426361 (W.D. Mo. Mar. 22, 2018) ............................................... 26

*Etkin & Co. v. SBD LLC*,
2012 WL 5398966 (S.D. Fla. Nov. 5, 2012) ................................................... 26

*G.D. Searle & Co. v. Nutrapharm Inc.*,
1999 WL 249725 (S.D.N.Y. Apr. 28, 1999) ................................................... 16

*GEO Specialty Chems., Inc. v. Husisian*,
951 F. Supp. 2d 32 (D.D.C. 2013) ........................................................... 11, 22

*\*Headfirst Baseball LLC v. Elwood*,
999 F. Supp. 2d 199 (D.D.C. 2013) ............................... 10, 11, 12, 14, 16, 23

*Herrera-Shorthouse v. La Cubana Bail Bonds, Inc.*,
1999 WL 33266031 (S.D. Fla. July 14, 1999) ............................................... 16

*\*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
965 F. Supp. 2d 104 (D.D.C. 2013) ................................................. 10, 24, 26

*Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*,
482 F.3d 1 (1st Cir. 2007) .............................................................................. 17

*INTS It Is Not The Same, GmbH v. Disidual Clothing, LLC*,
2015 TTAB LEXIS 525 (TTAB Mar. 28, 2015) ............................................. 29

*Koller By & Through Koller. v. Richardson-Merrell Inc.*,
737 F.2d 1038 (D.C. Cir. 1984) ................................................................... 9, 25

*Konarski v. Donovan*,
    763 F. Supp. 2d 128 (D.D.C. 2011) ................................................................ 9, 10

*Layne Christensen Co. v. Purolite Co.*,
    2011 WL 1113543 (D. Kan. Mar. 24, 2011) ................................................... 22

*Marks Const. Co. v. Huntington Nat'l Bank*,
    2010 WL 1404590 (N.D.W. Va. Apr. 2, 2010) .............................................. 26

*T. C. Theatre Corp. v. Warner Bros. Pictures*,
    113 F. Supp. 265 (S.D.N.Y. 1953) ................................................................ 14

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    836 F.2d 1332 (Fed. Cir. 1988) ...................................................................... 22

*Therasense Inc. v. Becton Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ...................................................................... 29

\*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.,
    505 F. Supp. 2d 20 (D.D.C. 2007) ............................................................ 20, 21

\*United States v. Crowder,
    313 F. Supp. 3d 135 (D.D.C. 2018) ........................................................ 9, 14, 15

*Walker v. Sweet Cravings, Inc.*,
    1990 WL 300284 (E.D. Mich. Sept. 6, 1990) ................................................ 25

## Statutes, Rules and Regulations

15 U.S.C. § 1058 ............................................................................................... 14

15 U.S.C. § 1065 ............................................................................................... 15

37 C.F.R. § 2.161 .............................................................................................. 15

37 C.F.R. § 2.167 .............................................................................................. 15

37 C.F.R. § 2.71(d) ........................................................................................... 13

37 C.F.R. § 2.183 .............................................................................................. 15

D.C. R. Prof'l Conduct 1.6 ............................................................................... 24

D.C. R. Prof'l Conduct 1.7 ............................................................................... 23

\*D.C. R. Prof'l Conduct 1.9 ........................................... 7, 10, 11, 12, 16, 19, 23, 24

\*D.C. R. Prof'l Conduct 1.10 ......................................................... 7, 17, 23, 24

\*D.C. R. Prof'l Conduct 3.7 ............................................................... 7, 27, 29

## **Additional Authorities**

ABA Informal Opinion No. 89-1529, ABA Comm. on Ethics & Prof'l Resp,
  *Witness-Lawyer Participating in Pre-Trial Proceedings* (Oct. 20, 1989)........................28

*D.C. Bar Ethics Opinion No. 228 (May 1992) ...........................................................................28

*D.C. Bar Ethics Opinion No. 247 (May 1994) ...........................................................................13

*D.C. Bar Ethics Opinion No. 312 (April 2002) .....................................................................13, 23

Trademark Manual of Examining Procedure § 803.06.................................................................. 13

Trademark Manual of Examining Procedure § 1201.02............................................................... 13

Plaintiff United States Soccer Federation Foundation, Inc. (the "Foundation") respectfully submits this Memorandum of Law in Opposition to Defendant United States Soccer Federation, Inc.'s (the "USSF") Motion to Disqualify Counsel and Stay Proceedings (Dkt. 21).

## PRELIMINARY STATEMENT

By this motion to disqualify, the USSF apparently is determined to distract the Court from attending to the crucial matter at issue:  the Foundation's exclusive right to own and use its own name and logos (the "Foundation Marks"), as it has done for nearly 30 years in connection with its charitable services, free and clear of the USSF's encroachment.  Instead, the USSF resorts to diversionary tactics, claiming that the Foundation's counsel of choice—Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and partner Robert Raskopf—should be disqualified.  The USSF's request is as outrageous as it is baseless, as none of the grounds asserted by the USSF comes even close (let alone satisfies their "extraordinarily high burden") to warrant disqualification.

First, the USSF argues that certain trademark registrations obtained in the early 1980s for the USSF by the first firm for which Mr. Raskopf worked when he was an associate nearly forty years ago (before the Foundation was even founded), and which registrations are ***not even contested*** in this case, should somehow bar him from representing the Foundation here.  Second, the USSF also claims that Mr. Raskopf (and by extension, Quinn Emanuel) should be charged with representing the USSF more recently (as if Mr. Raskopf and the USSF were ***actually*** attorney and client, which indisputably they were not) because he was allegedly a "sub-agent" of the USSF through the firm's work for the Foundation (and its general counsel, Rob Kaler) in maintaining the trademark registrations for the Foundation Marks while the USSF and the Foundation attempted to resolve their longstanding claims to ownership of those Marks.  The

USSF would thus have it that Mr. Raskopf is, by some illogical operation of law, the agent of the party adverse to the client he actually represents in this dispute. None of these strained arguments can force the Foundation to replace its chosen counsel.

Under the relevant legal standard, the USSF must show that trademark maintenance filings are of the type that would require the disclosure of confidential information. The USSF has not even tried to make any such showing and, indeed, the very nature of trademark registration renewals, which generally rely on publicly available information, strongly refutes any inference that confidential information would be disclosed during the course of the representation. In fact, trademark registration and maintenance filings are routine matters customarily filed by paralegals under the supervision of an attorney, as has been the case at each of the firms where Mr. Raskopf has worked. Mr. Raskopf generally has not supervised trademark prosecutions or maintenance filings at any of the firms with which he has been associated. For almost all of that time, his colleague Alan Blum (now deceased) would have supervised these matters. Mr. Raskopf recalls not a single confidential communication with the USSF in any of the years in question, nor does the USSF claim such a communication occurred.

Finally, Mr. Raskopf is hardly a "necessary" witness to this dispute. Mr. Raskopf has functioned exclusively as an attorney for the Foundation concerning this dispute and its underlying facts. The USSF's ploy to undermine Mr. Raskopf's relationship with the Foundation, his client of many years, by claiming he represents the USSF (his firm's *adversary*) should be seen for what it is. In any event, the rule prohibiting a lawyer from acting as advocate in a trial in which the lawyer is likely to be a "necessary witness" is not implicated at this early stage of proceedings, where neither party nor the Court know if the case will go to trial.

The USSF's motion to disqualify Mr. Raskopf and Quinn Emanuel should be denied.

## FACTUAL BACKGROUND

### A.   The Foundation

The Foundation is an independent, section 501(c)(3) nonprofit organization formed in 1991, dedicated to enhancing, assisting and growing the sport of soccer in the United States, with a special emphasis on children in underserved communities.  (Dkt. 1 ("Compl.") ¶¶ 2, 7, 13; Dkt. 16 ("Ans.") ¶¶ 2, 7, 13.)  For more than 20 years, the Foundation—and only the Foundation—has used the name "U.S. Soccer Foundation" and associated logos (the "Foundation Marks" or the "Marks")[1] to identify it to the public as the exclusive source of good and services it provides to the community.  (Compl. ¶ 1.)

The Foundation was initially funded by a grant from surplus funds from the 1994 World Cup, as well as subsequent donations and grants.  (Compl. ¶ 13; Ans. ¶ 13.)  In the past 25 years, the Foundation has awarded more than $100 million in grants to non-profit organizations across the country, distributed over one million items of soccer equipment to children in need, and educated members of Congress on the power of using sport as a vehicle to promote mentorship and healthy lifestyles.  (Compl. ¶¶ 16-17.)  The Foundation has provided services aimed at children in underserved communities, including a free after-school program currently serving more than 70,000 children, has transformed underutilized public areas into soccer pitches, and has run a program to collect and redistribute new and gently used soccer equipment to children in

---

[1]    In its Complaint, the Foundation defines the trademarks that are the subject of this action as the "Foundation Marks" or the "Marks."  (Compl. ¶ 3 ("the name 'U.S. Soccer Foundation' and certain logos bearing that name").)  In its motion, however, the USSF changes the defined term for these same Marks to the "Marks at Issue."  (Mot. 3.)  The USSF's nomenclature is particularly confusing because its motion also refers to other trademarks that are **_not_** the subject of the Foundation's claims.  (Mot. 6-7.)  To avoid such confusion and inconsistency, in this brief the Foundation uses the language of its Complaint and refers to the name and logos for the U.S. Soccer Foundation—*i.e.*, the trademarks that are the subject of its Complaint—as the "Foundation Marks" or the "Marks."

underserved communities.  (Compl. ¶ 16.)  Today, the Foundation has an active fundraising program that brought in approximately $18 million from supporters over the past year alone. (Compl. ¶ 20.)

The Foundation is independent of the USSF.  (Compl. ¶ 21.)  Among other things, the entities have different bylaws, separate boards of directors, different employees, and separate missions.  (*Id.*)  Specifically, the Foundation promotes soccer as a vehicle for social change by nurturing the physical and personal development of children in underserved communities; the USSF, in contrast, serves as the governing body for elite soccer in the United States, with a focus on identifying and supporting international-caliber athletes who play on world-class National Teams.  (*Id.*)  The USSF even has its own, distinct charitable arm—the U.S. Soccer Development Fund—which solicits donations to "develop world-class players, coaches and National Teams that inspire a nation."  (*Id.*)

### B.    The Registration And Use Of The Foundation Marks

Since it began its work, the Foundation has used the Foundation Marks in countless ways and invested millions of dollars to promote the Foundation Marks.  (Compl. ¶ 28.)  The Foundation Marks appear on jerseys worn by children participating in its programs, on fundraising material sent to prospective donors, at the top of the Foundation's website and social media pages, on all marketing materials, on the surface of pitches the Foundation has built across the country, and on numerous other public-facing materials.  (*Id.*) The Foundation also has enforced the Foundation Marks against third-party use.  (*Id.*)  The substantial goodwill the Foundation has built over that time is closely tied to both the "U.S. Soccer Foundation" name and its associated logos.  (*Id.*)  The USSF, however, has never made its own use of any of the Foundation Marks, has never produced goods or offered services under the Marks, and has never exerted any control over the Foundation's use of the Marks.  (Compl. ¶¶ 25, 27-29.)

4

While the USSF and the Foundation previously shared the understanding that the Foundation exclusively used and controlled all aspects of the Foundation Marks, and that the Foundation is the actual owner of the Marks, the USSF nonetheless has, through the law firm Arter & Hadden, filed applications with the United States Patent and Trademark Office ("USPTO") to register certain of the Foundation Marks.  (Compl. ¶ 22.)  The Foundation Marks that list the USSF as the owner of those registrations are as follows:

| Registration No. | Mark | Registration Date |
| --- | --- | --- |
| 2,327,950 | **U.S. SOCCER FOUNDATION** | March 14, 2000 |
| 2,235,888 | U♦S SOCCER FOUNDATION | March 30, 1999 |
| 2,702,785 | **U.S. SOCCER FOUNDATION** | April 1, 2003 |
| 2,702,781 | U♦S SOCCER FOUNDATION | April 1, 2003 |

(Compl. ¶ 23.)  Consistent with the fact that only the Foundation, and not the USSF, has ever used the Foundation Marks, the USSF's initial application in 1997 for the word mark "U.S. Soccer Foundation" (which became Registration No. 2,327,950) submitted excerpts from the ***Foundation's*** annual report to prove that the Mark had been used in commerce.  (*See* Declaration of Scott E. Lerner ("Lerner Decl."), Ex. A at 16-27.)

In addition, on June 19, 2017, through the law firm Covington & Burling LLP, the USSF filed with the USPTO an application for registration that lists the USSF, and not the Foundation, as the owner of the following Foundation Mark:



(Compl. ¶ 24.)

5

The USSF does not claim to have itself used the Foundation Marks.  (*See, e.g.*, Compl. ¶¶ 3, 25, 29.)  Indeed, as early as **2003**—more than 15 years ago—the USSF acknowledged in a contract with the Foundation that "*[t]he logo shall remain at all times the sole and exclusive intellectual property of the Foundation*, and the Foundation shall have the right, from time to time, to request samples of use from which it may determine compliance with these terms and conditions." (Lerner Decl., Ex. B ¶ 11 (emphasis added).)

### C.    Proceedings Before This Court

Despite this previously shared understanding that the Foundation owned the Foundation Marks, in the Fall of 2018, the USSF demanded that the Foundation cease using the Foundation Marks, claiming that it owns the Foundation Marks and intends to use the Foundation Marks in the future.  (Compl. ¶ 33.)

For that reason (among others), on December 6, 2018, the Foundation filed a Complaint in this Court requesting:  (1) a declaratory judgment that the Foundation has not infringed any of the USSF's alleged trademark rights in the Foundation Marks; (2) a declaratory judgment that the Foundation is not liable for any infringement of the USSF's purported trademark rights in the Foundation Marks; and (3) an order directing the USPTO to rectify the Trademark Register such that either the Foundation is listed as the sole rightful owner of the relevant registrations and application at issue, or in the alternative, cancelling these registrations and denying the application.  (Compl. ¶¶ 35-55.)  The Foundation also asserts claims for  unfair or deceptive trade practices and unjust enrichment.  (Compl. ¶¶ 56-62.)  The USSF filed an Answer and Counterclaim on February 18, 2019, asserting various affirmative defenses and counterclaims, and generally denying the crux of the allegations in the Foundation's Complaint.  (*See generally* Dkt. 16.)  On March 25, 2019, the Foundation filed its Answer to the USSF's Counterclaim. (Dkt. 20.)

**D.      The USSF's Motion To Disqualify**

On March 25, 2019, less than twelve hours before the Court's Rule 16 scheduling conference, the USSF filed this motion, seeking to disqualify Mr. Raskopf and Quinn Emanuel from representing the Foundation in this lawsuit.  (Dkt. 21 ("Mot.").)

The Motion seeks to disqualify Mr. Raskopf and Quinn Emanuel for purportedly violating Rules 1.9 (Conflict of Interest: Former Client), 1.10 (Imputed Disqualification: General Rule), and 3.7 (Lawyer as Witness) of the D.C. Rules of Professional Conduct.  (Mot. 13.)  The USSF filed this motion almost four months after the Complaint was filed, and two months after it sent Mr. Raskopf a letter requesting an extension to file its response to the Complaint, advising him of "certain communications between the Foundation and [the USSF] that took place immediately before your law firm began supporting the prosecution of" the Foundation Marks. (Ervin Decl., Ex. H at 2; *see also* Fike Decl., Ex. A.)  In that letter, the USSF did not raise any assertions of purported conflicts or other grounds for disqualification; to the contrary, the USSF noted that the provision of such information was "***not to suggest that you or your firm have done anything inappropriate***."  (*Id.*) (emphasis added).

Notwithstanding these prior representations, the USSF now seeks to disqualify Mr. Raskopf and Quinn Emanuel based on:  (1) the registration of certain of the USSF's trademarks more than 35 years ago—all of which predate the very existence of the Foundation, and none of which are even contested here, let alone relevant to the Foundation's claims—by the law firm Townley & Updike, when Mr. Raskopf was an associate there after graduating law school in 1976; and (2) ***the Foundation's*** (not the USSF's) hiring of Mr. Raskopf and Quinn Emanuel for maintenance of registrations for the Foundation Marks in the mid-2000s.  (Mot. 14-18.)

***The USSF Registrations From The Early 1980s***: As to the old USSF registrations, Townley & Updike was listed on USPTO correspondence on behalf of the USSF from 1980 to

1982 in connection with three registrations:  (1) "USSF" (Reg. No. 1,186,213); (2) "United States Soccer Federation" (Reg. No. 1,201,646); and (3) "United States Soccer Federation" (Reg. No. 1,216,276).  (*See* Ervin Decl., Ex. A at 1; B at 6-7; C at 5.)  Townley & Updike did not take any actions with the USPTO to maintain these registrations; the power of attorney to maintain at least two of the registrations were transferred to attorneys at another firm in 1983; and by 1987 the USSF had requested that yet another law firm take responsibility for their intellectual property portfolio.  (*See* Declaration of Robert L. Raskopf ("Raskopf Decl.") ¶¶ 3, 5-6; *see also* Fike Decl., Ex. D.)  Mr. Raskopf does not recall ever receiving any confidential information from the USSF.  (*See* Raskopf Decl. ¶ 4.)  These trademark prosecution matters were primarily handled by other attorneys and paralegals at Townley & Updike.  (*Id.* ¶ 3.)  Quinn Emanuel never represented the USSF in connection with any of these registrations.  (*Id.* ¶ 13.)

**<u>The Foundation Marks</u>**: As to the Foundation Marks, Mr. Raskopf and Quinn Emanuel had no involvement in applying for or registering any of the Foundation Marks.  (*Id.* ¶ 11.)  Each of the registered Foundation Marks were applied for and registered before Mr. Raskopf and Quinn Emanuel performed any legal services for the Foundation.  (*See* Ervin Decl. Exs. D-G; Lerner Decl. Ex. A; Raskopf Decl. ¶¶ 8, 11.)  Although Mr. Raskopf has worked at law firms that handled the Foundation's intellectual property portfolio starting in 2005, Alan Blum, an internationally recognized global branding and trademark lawyer, filed and supervised the paperwork for maintaining the registrations for the Foundation Marks.  (Raskopf Decl. ¶¶ 8, 10.)  In 2011, Mr. Blum left Quinn Emanuel; also in 2011, the Foundation's intellectual property portfolio (including for the Foundation Marks) were transferred to an attorney at Arent Fox

LLP.[2]  (*Id.* ¶ 14.)  The USSF has never been a client of Quinn Emanuel,[3] and Mr. Raskopf is not aware of either he nor anyone at Quinn Emanuel having had any communications with the USSF related to the registrations or maintenance of the Foundation Marks (let alone receiving confidential information from the USSF).  (*Id.* ¶¶ 11-13, 16.)  The USSF agrees that it never signed an engagement agreement with or paid Quinn Emanuel.  (*Id.* ¶ 13; Mot. at 7-8 ("U.S. Soccer did not pay Mr. Raskopf …").)

## ARGUMENT

"[D]isqualification is highly disfavored, and any motion to disqualify counsel is therefore examined with a skeptical eye."  *United States v. Crowder*, 313 F. Supp. 3d 135, 141 (D.D.C. 2018); *see also Konarski v. Donovan*, 763 F. Supp. 2d 128, 135-36 (D.D.C. 2011) (disqualification "is a drastic measure that is disfavored by the courts." (quotations omitted)).  A motion to disqualify faces an "extraordinarily high burden."  *Cauderlier & Assocs., Inc. v. Zambrana*, 2006 WL 3445493, at *2 (D.D.C. Oct. 6, 2006).  Thus, "unless an attorney's conduct tends to 'taint the underlying trial,' by disturbing the balance of the presentations … courts should be quite hesitant to disqualify an attorney."  *Koller By & Through Koller. v. Richardson-*

---

[2]  Moreover, it is undisputed that neither Mr. Raskopf nor Quinn Emanuel currently represent the Foundation with regard to any USPTO maintenance activity for any of the registrations for the Foundation Marks.  As to Registration Nos. 2,702,781 and 2,702,785, Alec Rosenberg of Arent Fox is listed as the law firm for attorney correspondence, which was updated at the time that the maintenance documents for those registrations were due.  (*See* Lerner Decl. Exs. D & E (identifying new attorney in connection with filing of 2013 maintenance documents).)  As to Registration Nos. 2,235,888 and 2,327,950, the now-deceased Mr. Blum, under Quinn Emanuel's prior firm name, is still (inaccurately) listed as the contact attorney because the last maintenance documents were filed in 2009 and 2010, respectively, under Mr. Blum's supervision, so there has been no occasion for Arent Fox to update its status as the law firm for attorney correspondence on those dockets.  (*See* Lerner Decl., Exs. F & G.)

[3]  Despite the USSF's attempt to confuse the Court (Mot. 14 n.11), Mr. Raskopf's online firm biography specifically states he has represented "United States Soccer ***Foundation*** ('USSF')" (Ervin Decl. Ex. J at 2) (emphasis added), so no one reading his biography would be misled by this "curious[]" acronym.

*Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, 472 U.S. 424 (1985) (quotations omitted).

"A motion to disqualify counsel is committed to the sound discretion of the district court." *Ambush v. Engelberg*, 282 F. Supp. 3d 58, 61 (D.D.C. 2017). A court should employ "particularly strict judicial scrutiny" *Konarski*, 763 F. Supp. 2d at 136 (quotations omitted), because "disqualification 'negates a client's right to freely choose his counsel,'" *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 204 (D.D.C. 2013). In addressing a motion to disqualify, a court "must consider two questions in turn: first, whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 110 (D.D.C. 2013) (quotations omitted). "[T]he mere claim of a conflict is not enough; there must be proof." *Id.* at 111 (quotation omitted).

## I.   THE USSF HAS NOT MET THE HIGH BURDEN FOR DISQUALIFYING MR. RASKOPF OR QUINN EMANUEL DUE TO A CONFLICT OF INTEREST

### A.   The USSF Fails To Show A Conflict Of Interest Requiring Disqualification Under Rule 1.9

The USSF first seeks to disqualify Mr. Raskopf and Quinn Emanuel under Rule 1.9 of the D.C. Rules of Professional Conduct, governing conflicts of interest, which states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

D.C. R. Prof'l Conduct 1.9. The USSF is correct (Mot. 13) that, to establish a violation of Rule 1.9, the party seeking disqualification must show that:

> (1) "the attorney accused of the violation is a 'former attorney' with respect to a party presently before the court";

10

(2) "the subject matter of the former representation is the same as, or substantially related to, the present matter on which the alleged violation of Rule 1.9 is based"; and

(3) "the interests of the former client are adverse to the interests of the party represented by the attorney who is accused of violating Rule 1.9."

*GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 41 (D.D.C. 2013) (citation omitted).  Because the USSF must establish each one of the three conditions for disqualification, the USSF's failure to meet its high burden on ***any*** one of the three requires denial of the motion.  Here, the USSF has not demonstrated satisfaction of all of these prerequisites.

## 1.   Any Purported Prior Representation Is Not "Substantially Related" To The Instant Dispute

Without citing a single case, the USSF makes the conclusory assertion that this litigation is substantially related to the work that the USSF claims Mr. Raskopf and Quinn Emanuel purportedly performed on behalf of the USSF.  (Mot. 18-19.)  But the USSF has not and cannot show that any prior tasks (1) that Mr. Raskopf and Quinn Emanuel performed to maintain the Foundation Marks in 2005 to 2013 as the ***Foundation's*** counsel; or (2) that were performed the ***uncontested*** trademark registrations by Townley & Updike (when Mr. Raskopf was an associate) almost 40 years ago—are substantially related to the instant dispute.  This alone requires denial of the USSF's motion.

"To determine whether two matters are 'substantially related,' courts look to "both the facts and the legal issues involved."  *Headfirst Baseball*, 999 F. Supp. 2d at 210 (quotations omitted).  In doing so, courts engage in a three-step analysis:

(1)  First, the court must "make a factual reconstruction of the scope of the prior legal representation."

(2) "If the factual contexts overlap, the court then has to determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those [prior] matters."

(3) Then, "if such [confidential] information apparently was available to counsel in the prior representation, the court has to determine whether it is relevant to the issues raised in the litigation pending against the former client."

*Id.* (quotations omitted). The relevance to the new representation of the information obtained in the prior representation is alone insufficient to warrant disqualification where the matters are not actually the same transaction or legal dispute. *See* D.C. R. Prof'l Conduct 1.9, cmt. 3. Rather, there must be a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* Here, by any measure, any "prior representation" by Mr. Raskopf or Quinn Emanuel is not "substantially related" to the instant action.

*First*, as to the registration of three of the USSF's marks in the early 1980s—none of which were for the Foundation Marks, as the Foundation did not even come into existence until 1991—the scope of any such prior representation by Townley & Updike does not overlap with the dispute here. To the extent the USSF intends its broad statement that "[t]his matter thus involves the same transactions and issues—the validity, use, and ownership of U.S. Soccer's marks" (Mot. 19) to encompass Townley & Updike's representation of the USSF in the 1980s, the USSF has not demonstrated the requisite factual overlap because the Foundation does not here contest the validity, use or ownership of those registrations. (Ervin Decl, Ex. A; *see generally* Compl.) Further, very shortly after these three trademark registrations were obtained (and long before the Foundation even existed), ***other*** firms took over the USSF's intellectual property portfolio. (Raskopf Decl. ¶ 6; Fike Decl. Ex. D.) The mere existence of decades-old, uncontested registrations for non-Foundation marks, for which other Townley & Updike personnel were primarily responsible (*see* Raskopf Decl. ¶¶ 3, 5), cannot bar Quinn Emanuel's representation of the Foundation for the simple reason that any such facts are irrelevant to this case.

*Second*, while the USSF argues that Mr. Raskopf and Quinn Emanuel prosecuted the Foundation Marks on the USSF's behalf (Mot. 7-9, 14-18), the relevant dispute here does not concern any representation in which Mr. Raskopf or Quinn Emanuel was involved.  Rather, the dispute concerns the validity of the *initial* registrations for the Foundation Marks—in 1999, 2000, and 2003.  Quinn Emanuel did not represent the USSF at that time (and the USSF does not assert it did), and had no role in the applications for those registrations.  (Raskopf Decl. ¶¶ 11, 13.)  The statutory framework makes apparent that the dispute here concerns the right to own those *original* registrations, as an incorrectly named applicant cannot later be changed through maintenance or renewal filings except under limited circumstances.  *See* 37 C.F.R. § 2.71(d); TMEP §§ 803.06, 1201.02(b) (no ability to correct application filed in the name of a party who had no basis for assertion of ownership of mark as of filing date; rather, such an error renders the original application void).[4]

*Third*, the USSF does not demonstrate—as to either Mr. Raskopf's firm's 1980s representation on the three  USSF registrations, or as to Quinn Emanuel's representation of the Foundation in connection with maintenance of the Foundation Marks' registrations—that such representation was of the type encompassing the provision of confidential information.  (Raskopf Decl. ¶¶ 4, 12, 16.)  The USSF is simply wrong that it is "immaterial" whether Mr. Raskopf in fact had access to "any confidential information," incorrectly arguing that there "is an

---

[4]    For this reason, the USSF's reliance (at 20-21) on D.C. Bar Ethics Opinion No. 247 does not support disqualification of Mr. Raskopf or Quinn Emanuel.  In that decision, the D.C. Bar determined that performing certain tasks for the seller as part of real estate transaction without disclosing that the attorney represented only the purchaser disqualified the attorney's firm from litigating a subsequent dispute concerning the sale.  (*See* Lerner Decl., Ex. H (D.C. Bar Ethics Op. No. 247).)   Here, the USSF's claims of purported ownership arise from the initial registrations the USSF filed for the Foundation Marks, in which the USSF (wrongfully) attested that it was the rightful owner of or had made use of those Marks, and with which neither Mr. Raskopf nor Quinn Emanuel had any involvement.

*irrebuttable* presumption that [he] may have received information that could be used against" the USSF.  (Mot. 19 (emphasis in original).)   To the contrary, such an irrebuttable presumption arises **only after** the party seeking disqualification has demonstrated the matters are substantially related.  *See Crowder*, 313 F. Supp. 3d at 144 n.4 ("Once a 'substantial relationship' between the prior representation and the present matter is shown[,] ... [there is] an irrebuttable presumption that the attorney has information that can be used for the benefit of the present client to the detriment of the former.  ***Yet one must first answer the substantial relationship question in the positive before making this presumption.***") (emphasis added, quotations omitted).   That "substantially related" determination requires proof that it is "reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those [prior] matters."  *Headfirst Baseball*, 999 F. Supp. 2d at 210.  But here, the USSF has not even attempted to demonstrate (and thus waives) that any of the filings at issue—either for the USSF's registrations in the 1980s or for the Foundation's maintenance filings for the Foundation Marks—required the disclosure of confidential information.  Thus, the irrebuttable presumption does not attach and the USSF may not rely upon it as a hook for disqualification.[5]

_Fourth_, the USSF has not and cannot make a showing that it would be reasonable to infer that Mr. Raskopf and/or Quinn Emanuel received confidential information in the context of the work performed for filing routine maintenance paperwork with the USPTO.  Indeed, the type of information at issue in these filings—far from being confidential—is generally ***public*** information.  *See, e.g.*, 15 U.S.C. § 1058 (requiring renewal affidavit to "state that the mark is in

---

[5]    The USSF's reliance (at 19) on *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265 (S.D.N.Y. 1953), supports the Foundation's analysis.  The passage the USSF cites confirms that courts analyze whether the representation would have required receipt of confidential information, but does not examine "the actual confidential matters previously entrusted to the attorney and their possible value to the present client."  113 F. Supp. at 268.

use in commerce," "set forth the goods and services recited in the registration on or in connection with which the mark is in use in commerce," and "be accompanied by such number of specimens or facsimiles showing current use of the mark in commerce); *id.* § 1065 (requiring declaration of incontestability to state the mark has been in continuous use in commerce for a period of five years after the date of registration and the mark is still in use in commerce").[6] Thus, it is *not* reasonable to infer any such representation would require the disclosure of confidential information.  *See Crowder*, 313 F. Supp. 3d at 143 ("[T]he scope of [the] representation—isolated phone calls seeking limited information about the District's regulatory processes—was so narrow and so far from this case that it is not reasonable to infer counsel may have received information during the first representation that might be useful to the second.") (quotations omitted).

That the Foundation—and not the USSF, as the listed registrant—could prepare and file the requisite maintenance documents confirms that confidential information from the registrant was not required.  Thus, the purported prior representations upon which the USSF relies cannot be "substantially related" to the dispute here because it is not reasonable to infer that any

---

[6]   Notably, filing documents to maintain extant trademark registrations is a ministerial task that requires only a declaration of use in commerce, which includes the registration number of the mark, "specif[ies] the goods, [or] services … for which the mark is in use in commerce," and provides a specimen showing use in commerce, along with the payment of a fee.  37 C.F.R. § 2.161.  Requests for renewal, often filed in a combined declaration of use in commerce, merely require a signed request for renewal and a payment of fees.  37 C.F.R. § 2.183.  Similarly, an individual who files a declaration to acquire incontestability for a registered mark need only "identify the certificate of registration by the certificate number and date of registration," "recite the goods or services stated in the registration on or in connection with which the mark has been in continuous use in commerce, for a period of five years," and "specify that there has been no final decision adverse to the owner's claim of ownership" and "that there is no proceeding involving said rights pending." 37 CFR § 2.167.  All of these submission requirements can be accomplished by filling out an online form.  (*See* Lerner Decl., Ex. C.)  The limited nature of filing renewals and declarations of use and incontestability are reflected in the documents themselves.  (*See, e.g.*, Ervin Decl, Ex. E at 5-17.)

confidential information would have been given to a lawyer representing a client in maintaining a trademark registration. *See, e.g.*, *G.D. Searle & Co. v. Nutrapharm Inc.*, 1999 WL 249725, at *3 (S.D.N.Y. Apr. 28, 1999) (denying motion to disqualify plaintiff's counsel in trademark infringement action, finding the "current trademark dispute is not substantially related to [the] prosecution of the patents" and that "general assertions, without any specifics, that relevant and confidential information was provided … in the course of the previous representation are insufficient"); *Herrera-Shorthouse v. La Cubana Bail Bonds, Inc.*, 1999 WL 33266031, at *4 (S.D. Fla. July 14, 1999) ("The standard for disqualification is not met merely by alleging that two actions share a general subject matter—for example, trademarks.  Nor does the fact that Mr. Faibisch received general legal advice concerning trademark issues make the two actions 'substantially related.'").

*Finally*, even if the Court were to construe the USSF's motion to somehow assert any exchange of (unidentified) confidential information, the USSF has not met the high burden for proving entitlement to disqualification.   Vague allegations about obtaining confidential information, or information that would materially advance the party's position in the litigation, are insufficient to show a prior representation is substantially related to the current one.  *See Headfirst Baseball*, 999 F. Supp. 2d at 213 ("These vague allegations are insufficient.  Given the lack of evidence, and bearing in mind that the defendants have the heavy burden of persuading the Court that the alleged prior representation is substantially related to the present litigation, it would be inappropriate on this record to find that Rule 1.9 has been violated and to disqualify Williams & Connolly as the plaintiffs' counsel on that basis at this time.") (citation omitted).

Because the USSF has not shown this action is substantially related to any purported prior representation by Mr. Raskopf or Quinn Emanuel, the USSF cannot show that they should be disqualified.  The motion should be denied for this reason alone; the Court need go no further.

> **2.      The USSF Has Not Demonstrated That Mr. Raskopf Or Quinn Emanuel Ever Had An Attorney-Client Relationship With The USSF**

Because the USSF has no proof of a prior representation that is substantially related to the instant dispute, the Court need not even reach whether Mr. Raskopf and/or Quinn Emanuel and the USSF ever had an attorney-client relationship.  But even if the Court were to continue its analysis (and it doesn't need to) the absence of any evidence establishing such an attorney-client relationship here provides an additional, independent ground to deny the USSF's motion.

***Townley & Updike's 1980s Representation Of The USSF Does Not Create An Attorney-Client Relationship For Conflicts Purpose.***  To start, because Mr. Raskopf did not receive confidential information relating to the USPTO filings for the USSF in the early 1980s (Raskopf Decl. ¶¶ 3-5), Townley & Updike's representation of the USSF does not follow Mr. Raskopf to his subsequent law firms.  D.C. R. Prof'l Conduct 1.10, cmt. 14 ("[I]f a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, ***neither the lawyer individually nor the second firm is disqualified*** from representing another client in the same or a substantially related matter even though the interests of the two clients conflict.") (emphasis added).

Although Mr. Raskopf was listed—along with other attorneys—on correspondence with the USPTO, such limited representation without more does not establish an attorney-client relationship.  *See, e.g.*, *Allergia, Inc. v. Bouboulis*, 2015 WL 11735651, at *6 (S.D. Cal. May 5, 2015) ("the existence of the power of attorney which gave Holland the right to prosecute the patents on behalf of Defendant did not create an attorney-client relationship such that he must

now be disqualified"); *Int'l Strategies Grp., Ltd. v. Greenberg Traurig, LLP*, 482 F.3d 1, 8 (1st Cir. 2007) (limited power of attorney did not create an express attorney-client relationship where attorney was granted "only a circumscribed agency power to … facilitate the physical return of the missing funds"); *Cardiogrip Corp. v. MD Sys., Inc.*, 2007 WL 1464249, at *3 (D. Idaho Jan. 4, 2007) ("the power of attorney does not create an attorney-client relationship").  The USSF asserts that Mr. Raskopf represented it in the early 1980s—nearly 40 years ago—when he served "as the attorney of record for [the USSF's] registration and prosecution" of certain USSF trademark, and "respond[ed] on multiple occasions to USPTO Office Actions regarding [the USSF's] applications." (Mot. 6-7.)  But in 1980, when the USSF applied to register those marks (Ervin Decl., Ex. A), Mr. Raskopf was just four years out of law school.  (Raskopf Decl. ¶¶ 2-3.)  And, even at that time, his practice did not generally involve trademark prosecution.  (Raskopf Decl. ¶ 3.)  The USSF has not provided *any* evidence showing that Mr. Raskopf did anything other than appear on correspondence with USPTO, and therefore has not met its burden to demonstrate an attorney-client relationship for purposes of disqualification.[7]

### _Quinn Emanuel's And Mr. Raskopf's Representation Of The Foundation Did Not Create An Attorney-Client Relationship With The USSF._ Nor has the USSF established the existence of an attorney-client relationship with Mr. Raskopf and Quinn Emanuel.

_First_, the USSF's unsupported assertion that "[f]rom 2005 through 2013, *U.S. Soccer* [*i.e.*, the USSF] gave Mr. Raskopf power of attorney and Mr. Raskopf served as counsel of record, prosecuting multiple renewals for the [Foundation Marks] on behalf of U.S. Soccer" does

---

[7]   Townley & Updike (Mr. Raskopf's firm) apparently did not file additional paperwork to maintain these registrations—for example, by 1983, just after two of the registrations were procured, it was replaced as counsel for those registrations' maintenance; by 1987, the USSF had requested that another law firm handle the maintenance work for the USSF's intellectual property portfolio.  (Raskopf Decl. ¶¶ 3, 6; Fike Decl. Ex. D.)

not create an attorney-client relationship even if true (and it isn't, *see* Raskopf Decl. ¶¶ 10-13, 16), particularly where the USSF "did not pay Mr. Raskopf for his services."   (Mot. 7-8 (emphasis added).)   The USSF implicitly recognizes as much:  Despite asserting that the USSF "may even be considered Quinn Emanuel's ***current*** client" because "Quinn Emanuel is listed as the attorney of record for the '888 and '950 [Foundation Marks registrations] based on its previous prosecution efforts," the USSF seeks to disqualify Mr. Raskopf and Quinn Emanuel under D.C. Rule of Professional Conduct 1.9—the rule on "Conflict of Interest: ***Former Client***." (*See, e.g.*, Mot. 13 (emphasis added).)[8]

*Second*, the USSF relies on a novel "subagent" theory to establish the client relationship. (Mot. 15-18.)  But the USSF's argument on this point—unsupported by the necessary evidence and instead premised upon ***disputed*** facts—goes to the heart of Foundation's ownership claim in this very action, and requires interpretation of the meaning and relevance of the Foundation's prior filings to maintain the registrations for its Foundation Marks at this early stage in this proceeding.  The USSF's "proof" on this point is thus insufficient to establish the facts it claims support its motion, and certainly cannot meet the "extraordinarily high burden," *Cauderlier & Assocs.*, 2006 WL 3445493 at *2, required for a motion to disqualify.

For example, the USSF argues that "the Foundation retained counsel to prosecute renewals of the [Foundation Marks] on behalf of, and under the control of, [the USSF]—and [the USSF] and that counsel often communicated about and coordinated these prosecution efforts"— presumably referring to Rob Kaler, the Foundation's general counsel.  (Mot. 16.)  But the USSF has not submitted any proof that it authorized or required the Foundation to retain Mr. Kaler, nor

---

[8]   Indeed, while Quinn Emanuel still appears on the USPTO docket for two of the Foundation Marks, the docket lists Alan Blum as the attorney appearing.  As mentioned, Mr. Blum left Quinn Emanuel in 2011 and died in 2014.  (Raskopf Decl. ¶¶ 14-15.)

that it controlled Mr. Kaler.  The Court thus cannot find that Quinn Emanuel or Mr. Raskopf—who all agree were retained by the Foundation through its general counsel, Mr. Kaler—were "under the control of" the USSF.[9]

The USSF's theory that Mr. Kaler acted as an "agent" of USSF, and Quinn Emanuel as a "subagent," suffers from multiple other flaws.  For Mr. Kaler to act as the "agent" of the USSF, he would have to agree to act on the USSF's behalf and subject to its control.  As the USSF's own case recites, "basic precepts of agency law establish that agency relationships do not emerge by accident, as well they should not."  *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 505 F. Supp. 2d 20, 32 (D.D.C. 2007) (cited at Mot. 16).  But the USSF has set forth no evidence that Mr. Kaler **agreed** to act as the USSF's agent subject to the USSF's control.  The correspondence between Mr. Kaler and the USSF regarding maintenance of the registrations shows nothing more than reminders as to the timing for various filings and Mr. Kaler specifically writes in 2013 that "We've taken care of the filings—as well as the fees—for the intellectual property associated with our organization."  (*See, e.g.*, Fike Decl., Ex. A at 13.)  This comports with the parties' understanding that the Foundation, **not** the USSF, is the actual owner of the Marks.  (Compl. ¶ 30.)  Mr. Kaler never agreed to act on behalf of the USSF—instead of acting in the interest of the Foundation—and therefore Mr. Kaler cannot be considered an "agent" of the USSF.

Nor has the USSF submitted evidence that Quinn Emanuel can be considered a "subagent" of the USSF.  Absent an "agency" relationship between the USSF and the Foundation, the Foundation's hiring of Quinn Emanuel cannot be linked back to the USSF,

---

[9]   This is consistent with the Foundation's organizational independence from the USSF—the Foundation is an entirely independent entity with its own bylaws, a separate board of directors, its own employees, and entirely distinct missions.  (*See* Compl. ¶ 21.)  The USSF even has its own charitable arm that solicits donations to further the USSF's, not the Foundation's, mission.  (*Id.*)

whether the USSF was aware the Foundation would hire counsel or not.  (Mot. 15.)  And, even if

the USSF had demonstrated that Mr. Kaler agreed to act as its agent (it hasn't), no subagent

relationship with Quinn Emanuel may be found absent proof that Quinn Emanuel "knew [it] was

subject to the authority of [the USSF], that [Quinn Emanuel] attempted to act on behalf of [the

USSF], or that [Quinn Emanuel] considered [it]self bound to act in [the USSF's] interest."  *U.S.*

*ex rel. Miller*, 505 F. Supp. 2d at 32.  Contrary to the USSF's unsupported assertion, it is not the

case that "Mr. Raskopf and Quinn Emanuel always knew that [the USSF] was the principal on

behalf of whom they were working."   (Mot. 17.)   Mr. Raskopf and/or Quinn Emanuel

represented the Foundation only (Raskopf Decl. ¶¶ 13-16; *see also id.* ¶ 10), which has its own

interest in maintaining the registrations, and the USSF cites no facts demonstrating otherwise.

Indeed, by the time Quinn Emanuel began representing the Foundation in 2006 (*id.* ¶ 10), the

USSF already had acknowledged that its Marks "shall remain at all times the sole and exclusive

intellectual property of ***the Foundation***, and the Foundation shall have the right, from time to

time, to request samples of use from which it may determine compliance with these terms and

conditions."  (Lerner Decl., Ex. B ¶ 11 (2003); *see also* Compl. ¶ 31 (USSF agreed in 2009 and

2010 that USSF must provide notice to the Foundation before it used "a Foundation logo").)

_Finally_, this Court need not resolve the disputed facts underlying the USSF's subagent

theory of representation to determine that Quinn Emanuel clearly did not represent the USSF.

Under either side's version of the facts, Mr. Raskopf and Quinn Emanuel did not represent the

USSF when the firm assisted in filing the Foundation's maintenance documents.  If, as the

Foundation pleaded, it is the rightful owner of the Marks (the registrations for which the USSF

wrongfully obtained only by submitting the ***Foundation's*** use history), then the Foundation's

engagement of Quinn Emanuel to maintain the Foundation Marks did not result in any

representation of the USSF.  But, *even if* the USSF is correct (it is not) and the Foundation is only a purported licensee or potential assignee, Quinn Emanuel's representation of the Foundation *still* would not create an attorney-client relationship with the USSF.  *See Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560, 565 (C.D. Cal. 1994) (no disqualification where lawyers for former licensee of plaintiff was representing defendant:  "Alchemy did not become a client of Brown & Bain by virtue of the fact that it licensed its copyrights to WOW.  Thus, Alchemy was not a 'former client,' and the Rules of Professional Conduct do not require disqualification of Yes!'s counsel of choice in this matter."); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988) ("Medtronic claimed 'former client' status as the assignee of AO. The district court correctly found that Medtronic was never a client of either Rackman or Nealon because the assignment of a patent does not transfer an attorney-client relationship."); *see also id.* at 1339 ("attorneys represent clients—not legal positions or patents") (emphasis omitted); *Layne Christensen Co. v. Purolite Co.*, 2011 WL 1113543, at *12 (D. Kan. Mar. 24, 2011) (denying motion to disqualify; citing *Telectronics* and holding that law firm was working on behalf of patent licensee rather than inventor).

Thus, notwithstanding the USSF's tortured logic, the USSF has not shown that Mr. Raskopf or Quinn Emanuel is a "'former attorney' with respect to a party presently before the court," *GEO Specialty Chems., Inc.*, 951 F. Supp. 2d at 41, and the motion must be denied for this additional reason.[10]

---

[10]  The Foundation does not dispute here that the USSF's interests are adverse to the interests of the Foundation's—but the Court need not even reach that issue because, as detailed above (*see supra* Part I.A), the USSF has not demonstrated either the existence of substantially related matters or that the USSF is former client of Mr. Raskopf or Quinn Emanuel, both of which are required to show a violation of Rule 1.9.  *See GEO Specialty Chems., Inc.*, 951 F. Supp. at 41.

**B.     Any Purported Prior Representation Of The USSF In The Early 1980s By Mr. Raskopf May Not Be Imputed To Quinn Emanuel Under Rule 1.10**

The USSF also argues that if Mr. Raskopf has a conflict of interest, it would necessarily be imputed to all of Quinn Emanuel, thereby disqualifying the entire law firm from continuing its representation of the Foundation.   (*See* Mot. 21.)   That is not correct.   Even if the Court determines that Mr. Raskopf's representation of the USSF in the 1980s while associated with a different firm for uncontested marks is substantially related to the instant dispute (and it is not), the USSF has not shown that such representation requires disqualification of Quinn Emanuel.

As an initial matter, as discussed *supra* Part I.A, the USSF has failed to establish the existence of a conflict of interest under Rule 1.9 that would prevent Mr. Raskopf from representing the Foundation.   As a result, by definition there is no conflict that can be imputed to Quinn Emanuel.   For that reason alone, the USSF's attempt to impute its illusory conflict to Quinn Emanuel fails.   *See Headfirst Baseball*, 999 F. Supp. 2d at 214 ("Because the Court has found that there is insufficient evidence at this time to find either a Rule 1.7 or Rule 1.9 violation, the Court must decline the demand to disqualify the law firm of Williams & Connolly as the plaintiffs' counsel at this juncture.").

Even if the Court were to conclude that Mr. Raskopf has a conflict of interest based on Townley & Updike's representation of the USSF on undisputed registrations in the early 1980s (when Mr. Raskopf was an associate), such a conflict would ***not*** be imputed to Quinn Emanuel pursuant to Rule 1.10.   Rule 1.10(b) provides "that where a lawyer joins a firm, that firm may not represent a client in any matter that is the same as or substantially related to a matter on which the lawyer formerly worked for a client adverse to the present firm's client, but ***only where the moving lawyer 'has in fact acquired information protected by Rule 1.6 that is material to the matter*.'"   (*See* Lerner Decl., Ex. I (D.C. Bar Ethics Op. No. 312) at 1 (quoting D.C. R. Prof.

Cond 1.10(b) (emphasis added)).)  Thus, by its own terms, Rule 1.10(b) would operate to impute a conflict to a firm only if the moving attorney "has actual knowledge of information protected by Rule 1.6." D.C. R. Prof. Cond 1.10(b), cmt. 14.  Absent proof of such "confidences" or "secrets," as defined by Rule 1.6, "neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a substantially related matter even though the interests of the two clients conflict." *Id.*  In this way, the test under Rule 1.10(b) is "narrower" than "the former-client substantial relationship test as imposed by the combination of Rule 1.9 and Rule 1.10(a)" because "Rule 1.10(b) turns on whether a lawyer ***actually received confidential information*** in the earlier representation that is material to the current matter." D.C. Bar Ethics Op. No. 312 (discussing the differences between Rule 1.9 and Rule 1.10).

Here, the USSF does not even argue (let alone show) that Mr. Raskopf acquired ***any*** confidential or attorney-client privileged information protected under Rule 1.6.  At most, the USSF alleges (at 7) that Mr. Raskopf's firm was tangentially involved in the ministerial "trademark prosecution efforts" of the USSF in the early 1980s.  Because the USSF does not assert—much less meet its high burden of proof—that Mr. Raskopf has "actual knowledge" of the USSF's "confidences" or "secrets" based on any representation of the USSF in the 1980s, any purported conflict may not be imputed to Quinn Emanuel.  (*See generally* Raskopf Decl.)

### C.    Any Alleged Violations Are Not Sufficient Grounds For Disqualifying Mr. Raskopf And Quinn Emanuel

Even if this Court finds that the USSF has demonstrated a violation of Rule 1.9 (and it hasn't), in any event the USSF has not demonstrated that such a violation requires disqualification.  In fact, it would not.  In addition to showing a violation of the Rules of Professional Conduct, a party seeking disqualification also must demonstrate that such "violation provides sufficient grounds for disqualification." *In re Rail Freight*, 965 F. Supp. 2d at 110

24

(quotations omitted).   "The D.C. Circuit has cautioned that, even where a violation is found, disqualification is warranted only 'rarely' in cases where there is a 'serious question as to counsel's ability to act as a zealous and effective advocate for the client' or the 'substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party[.]'" *Ambush*, 282 F. Supp. 3d at 62 (quoting *Koller*, 737 F.2d at 1056).

This is nowhere close to one of those "rare[]" cases.   The USSF makes no showing that Townley & Updike's representation of the USSF in the 1980s resulted in the Foundation obtaining an "unfair advantage" over the USSF by hiring Mr. Raskopf and Quinn Emanuel for the instant action.   The limited nature of the USPTO filings in the 1980s (merely applying for a few trademark registrations) strongly counsels against such a finding.   Similarly, the USSF seeks to *impute* representation of the USSF to Quinn Emanuel and Mr. Raskopf for some maintenance of registrations for the Foundation Marks on behalf of the Foundation, but neither Quinn Emanuel or Mr. Raskopf ever *agreed* to represent the USSF or had *any contact* with the USSF in the course of the purported representation (Raskopf Decl. ¶¶ 12-13, 16)—such circumstances certainly do not give the Foundation any "unfair advantage" in this lawsuit.   Again, the limited nature of the USPTO maintenance filings, which generally rely on public information, reinforce the absence of any possible unfair advantage here.   *See, e.g.*, *Walker v. Sweet Cravings, Inc.*, 1990 WL 300284, at *3-4 (E.D. Mich. Sept. 6, 1990) (denying motion to disqualify in trademark case where plaintiff's firm also registered trademark for defendant because attorneys stated they did not receive confidential information and because of limited nature of trademark search and registration).   And, of course, no one has questioned that Mr. Raskopf and Quinn Emanuel have the ability to act as zealous and effective advocates for the Foundation.   Thus, even if the Court

were to somehow find that a conflict exists, the Court should exercise its discretion to decline to disqualify Mr. Raskopf or Quinn Emanuel.

### D.       The USSF Unreasonably Delayed In Filing The Motion To Disqualify

Finally, in addition to not satisfying the substantive standards for disqualification, the USSF's motion was brought almost four months after the Foundation filed the Complaint, and thus may be denied as untimely.   Motions to disqualify must be made with "reasonable promptness after the party seeking the disqualification learns of the conflict of interest." *Etkin & Co. v. SBD LLC*, 2012 WL 5398966, at *5 (S.D. Fla. Nov. 5, 2012).   Courts routinely reject untimely motions to disqualify.  *See, e.g.*, *Enslein v. Di Mase*, 2018 WL 1426361, at *4 (W.D. Mo. Mar. 22, 2018) (denying motion to disqualify based on undue delay); *Marks Const. Co. v. Huntington Nat'l Bank*, 2010 WL 1404590, at *4 (N.D. W.Va. Apr. 2, 2010) (rejecting motion to disqualify where "every essential fact which underlies this motion was known to the defendants from the start of the litigation").   Bringing a late motion to disqualify counsel highlights that the motion is wrongly being "used as 'procedural weapon[]' to advance purely tactical purposes.'" *Ambush*, 282 F. Supp. 3d at 61-62 (quoting *In re Rail Freight*, 965 F. Supp. 2d at 110).

The USSF had knowledge of this purported conflict for months but failed to bring a motion.  As the documents in its own possession indicate, the USSF has been aware of Townley & Updike's and Quinn Emanuel's respective representation relating to trademark registrations and maintenance ***at all times***.  (*See* Ervin Decl., Exs. A-E.)  On January 16, 2019, the USSF sent a letter to Mr. Raskopf acknowledging that White & Case and Quinn Emanuel attorneys had "served as counsel of record for renewals" of the Foundation Marks at issue in this case.  (Ervin Decl., Ex. H at 1.)  The USSF explicitly stated that, in bringing up this past activity to the Foundation's counsel, it did not mean "to suggest that [Mr. Raskopf] or [his] firm have done anything inappropriate" in representing the Foundation.  (*Id.* at 2.)  Only when the parties were

set to agree upon a discovery schedule did the USSF suddenly decide a conflict existed.[11]   Such

delay demonstrates that the motion is wrongly being exploited purely for strategic purposes.[12]

## II.   THE USSF DOES NOT SHOW THAT MR. RASKOPF SHOULD BE DISQUALIFIED BECAUSE HE WILL BE A NECESSARY WITNESS

The USSF's alternative request to disqualify Mr. Raskopf under Rule 3.7, which

addresses attorneys who are necessary witnesses at trial (Mot. 22-24) may easily be denied.

Because no trial is set in this matter—and may never be—the USSF's motion on this ground is

inherently premature.   In fact, the USSF has argued that the primary claims for "declaratory

relief and related equitable claims and defenses" might be resolved by the Court "before trying

any legal claims to a jury."   (Dkt. 19 at 11-12.)   Thus, if the USSF has its way, there never will

be a trial here.   Regardless, nothing prohibits Mr. Raskopf from representing the Foundation up

until trial.   And in any event, even were a motion to disqualify under Rule 3.7 appropriate at this

time, the USSF has not carried its burden of showing Mr. Raskopf should be disqualified.

### A.   The USSF's Motion To Disqualify Mr. Raskopf As A Necessary Witness Is Premature

The USSF's attempt to disqualify Mr. Raskopf on the ground that he will be a necessary

witness at trial is facially premature.   Rule 3.7 states that "[a] lawyer shall not act as advocate *at*

*a trial*."   D.C. R. Prof'l Conduct 3.7(a) (emphasis added).   The rule expressly does not apply to

*pre-trial* proceedings:

---

[11]   When counsel for the Foundation met with counsel for the USSF in January 2019, the USSF never raised the conflicts it now asserts here, only insinuating its position that Mr. Raskopf might be a necessary witness.   (Raskopf Decl. ¶ 17.)

[12]   In the motion, the USSF moved for a stay of discovery pending resolution of the instant motion.   (Mot. 10-12.)   The Court denied the USSF's request at the Rule 16 schedule conference on March 26, 2019 and entered a Scheduling Order the following day.   (Dkt. No. 22). Accordingly, the USSF's request for a stay is moot by the Court's earlier order.

> Rule 3.7(a)'s reach is limited to the trial stage, i.e., the lawyer is prohibited from acting only as 'advocate at a trial' when he or she is likely to be a necessary witness. Given the Rule's express limitation and the trial-stage purposes it is intended to serve, we conclude that a lawyer who is likely to be a necessary witness at trial may represent a client in most pre-trial matters. This includes, but is not limited to, taking witness depositions, pre-trial discovery and argument of most pre-trial motions, and also assisting in trial preparation.

(Lerner Decl., Ex. J (D.C. Bar Ethics Op. No. 228)); *see also Ambush*, 282 F. Supp. 3d at 65 ("[E]ven a lawyer who is likely to be a necessary witness at trial is not disqualified from representing his client during pretrial proceedings."); *cf.* Lerner Decl., Ex. K, ABA Inf. Op. 89-1529 at 1 (Oct. 20, 1989) ("A lawyer who anticipates testifying as a witness on a contested issue at a trial may represent a party in discovery and other pre-trial proceedings provided the client consents after consultation and the lawyer reasonably believes that the representation will not be adversely affected by the lawyer's own interest in the expected testimony."). Here, the parties are in the early stages of discovery. A trial may be years away. For this reason, the USSF's motion to bar Mr. Raskopf now from serving as trial counsel is not ripe for decision. *See Ambush*, 282 F. Supp. 3d at 65-66 ("[P]laintiff's objections to Mr. Sher's role are premature at this stage in the proceedings. Should plaintiff's complaint survive any dispositive motions and proceed toward trial, plaintiff may renew this motion to disqualify Mr. Sher as trial counsel.").

## B.    The USSF Has Not Shown Mr. Raskopf Will Be A Necessary Witness

Even if the Court were to address whether Mr. Raskopf would need to testify at any trial, the USSF has not demonstrated that Mr. Raskopf is, in fact, a necessary witness.

<u>*First*</u>, the USSF argues that it will seek Mr. Raskopf's testimony on "his prosecution efforts and whether he understood that the Foundation owned the [Foundation Marks] during his eight years prosecuting the marks." (Mot. 23.) But it is not the case that "***only*** Mr. Raskopf can testify on [the USSF's] behalf as to why he represented to the USPTO that the [Foundation Marks] were in use by [the USSF]." (Mot. 23.) As the general counsel of the Foundation who

executed the declarations at issue, Mr. Kaler is equally well situated—indeed, **better** situated—to testify in this regard. The USSF's assertion that Mr. Raskopf should testify as to "why the declarations he filed (executed by Mr. Kaler) identify Mr. Kaler as a representative of [the USSF]" (Mot. 23) confirms that Mr. Kaler is the appropriate witness. As the USSF admits, Mr. Kaler executed the declarations, and Mr. Raskopf's firm (and not even Mr. Raskopf himself) only undertook the ministerial task of filing the documents. *See INTS It Is Not The Same, GmbH v. Disidual Clothing, LLC*, 2015 TTAB LEXIS 525, *10-11 (TTAB Mar. 28, 2015) (rejecting argument that lawyer who signed trademark applications, statements of use, renewals, and declarations of use and incontestability was a necessary witness). "[A] policy of disqualifying an attorney for signing a declaration on behalf of his client, especially where it is permitted by the Trademark Rules of Practice, without anything more, would have an undesired consequence of rendering many attorneys practicing before the Board eligible for disqualification." *Id.* Accordingly, Mr. Raskopf is not a necessary witness.[13]

_Second_, as the USSF apparently recognizes (*see* Mot. 22 ("***Mr. Raskopf*** should be disqualified …" (emphasis added)), even if Mr. Raskopf were a necessary witness and could not represent the Foundation at trial, such a ruling would not extend to Quinn Emanuel as a firm. *See* Rule 3.7 cmt. 5 ("[T]here is no reason to disqualify other lawyers in the testifying lawyer's firm from acting as advocates in that trial."). Thus, even if this Court (prematurely) determines

---

[13] *Caluori v. One World Techs., Inc.*, 2012 WL 2004173, at *5 (C.D. Cal. June 4, 2012) (cited at Mot. 23) does not support a contrary conclusion. That case involved a claim for inequitable conduct in filing a patent application, *see id.*—in essence, actions taken "knowingly and deliberately with the purpose of defrauding the PTO and the courts," *Therasense Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.* None of the Foundation's claims or the USSF's counterclaims require such a showing for the renewal applications. (*See generally* Compl. ¶¶ 35-62; Ans. ¶¶ 61-108.)

at this juncture that Mr. Raskopf will be a necessary witness, such a finding does not affect Quinn Emanuel's representation of the Foundation at any trial.

## **CONCLUSION**

For these reasons, the Foundation respectfully requests that the Court deny the USSF's motion to disqualify Quinn Emanuel and Mr. Raskopf.

Date:  April 25, 2019

*/s/ Scott E. Lerner*

Scott E. Lerner (#1024964)
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
scottlerner@quinnemanuel.com

Robert L. Raskopf (admitted *pro hac vice*)
robertraskopf@quinnemanuel.com
Todd Anten (admitted *pro hac vice*)
toddanten@quinnemanuel.com
Julia M. Beskin (admitted *pro hac vice*)
juliabeskin@quinnemanuel.com
Ellyde R. Thompson (admitted *pro hac vice*)
ellydethompson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (202) 849-7100

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2019, I caused copies of the foregoing document, Plaintiff's Opposition To Defendant's Motion To Disqualify Quinn Emanuel Urquhart & Sullivan, LLP, to be served by email on the following attorneys for Defendant/Counter-Plaintiff United States Soccer Federation, Inc.:

> David Jeffrey Ervin
> CROWELL & MORING LLP
> 1001 Pennsylvania Avenue, NW
> Washington, DC 20004
> Telephone:  (202) 624-2622
> Fax:  (202) 628-5116
> Email: dervin@crowell.com
>
> Shari Ross Lahlou
> CROWELL & MORING LLP
> 1001 Pennsylvania Avenue, NW
> Washington, DC 20004
> Telephone:  (202) 624-2679
> Fax:  (202) 628-5116
> Email: slahlou@crowell.com
>
> Kent B. Goss
> CROWELL & MORING LLP
> 515 South Flower Street, 40th Floor
> Los Angeles, CA 90071
> Telephone:  (213) 443-5504
> Fax:  (213) 622-2690
> Email:  KGoss@crowell.com

*/s/ Scott E. Lerner*
Scott E. Lerner