UNITED STATES SOCCER FEDERATION
FOUNDATION, INC.,

*Plaintiff*,

v.

Civil Action No. 18-2856 (TJK)

UNITED STATES SOCCER FEDERATION,
INC.,

*Defendant*.

## MEMORANDUM OPINION AND ORDER

This is a dispute between soccer's official governing body in the United States and the

sport's major charitable arm here about which organization is the rightful owner of various

trademarks, including the name "U.S. Soccer Foundation."  Before the Court is Defendant's

motion to disqualify Plaintiff's counsel because of a purported conflict of interest due to his prior

trademark work.  For the reasons explained below, the Court will deny the motion.

## I.     Background

Defendant United States Soccer Federation ("the Federation"), originally founded in

1913, is the national governing body of soccer in the United States.  ECF No. 16 at 10–37

("Countercls.") ¶ 10.  The Federation is a tax-exempt Section 501(c)(3) organization; its mission

is "to make soccer the preeminent sport in the United States." *Id.* ¶ 11–12.  Plaintiff United

States Soccer Federation Foundation ("the Foundation"), also a Section 501(c)(3) organization,

was formed in 1991 to manage surplus funds from the 1994 World Cup, which was held in the

United States.  ECF No. 1 ("Compl.") ¶¶ 1–2, 7.  Its mission is to help grow the sport of soccer

in the United States, with an emphasis on promoting the sport in underserved communities. *Id.* ¶ 2.

Between 1999 and 2003, the Federation registered four trademarks, including the name "U.S. Soccer Foundation" and certain associated logos, with the United States Patent and Trademark Office (USPTO). Compl. ¶¶ 22–24. But according to the Foundation, although the Federation was listed as the owner, the *Foundation* was always the actual owner, and used them with the Federation's knowledge and consent. Compl. ¶¶ 25–31. Whatever the history, the Federation has now asserted ownership over the trademarks at issue and, according to the Foundation, in November 2018 it demanded that the Foundation change its name. Compl. ¶¶ 33–34. The next month, the Foundation filed this action, seeking a declaratory judgment that it is not liable for infringing the Federation's trademark rights by continuing to use the marks at issue, including its name. *Id.* ¶ 6.

Shortly before the parties were set to begin discovery in March 2019, the Federation filed this motion seeking the disqualification of the Foundation's counsel, Robert L. Raskopf, and his law firm, Quinn Emanuel Urquhart & Sullivan, LLP, ("Quinn Emanuel"). Briefing on the motion was complete in late June. The Federation alleges that in representing the Foundation, Raskopf and Quinn Emanuel are violating District of Columbia Rules of Professional Conduct 1.9, 1.10, and 3.7 because of Raskopf's prior work on trademarks registered by the Federation, including the marks at issue here. *See* ECF No. 21 ("Mot.") at 13. A brief summary of Raskopf's work on relevant trademark matters follows.

In 1980, the Federation hired Townley & Updike, a law firm that employed Raskopf as an associate, to register two trademarks, neither of which is at issue in this case. *Id.* at 6. The registration documents list Raskopf as the attorney of record for the marks, and he signed related

correspondence with the USPTO.  *See* ECF No. 21-3 at 6–7, 9–10; ECF No. 21-4 at 5, 9–10.  In

1995, Raskopf moved to White & Case.  ECF No. 27-13 ("Raskopf Decl. I") ¶ 7.  In 2005, the

Foundation hired White & Case to maintain the trademarks at issue here.[1]  *Id.* ¶ 8; Mot. at 7–8.

The representation was mainly handled by partner Alan Blum.  Raskopf Decl. I ¶ 8; Mot. at 7

n.5.

      In 2006, Raskopf and Blum both left White & Case and joined Quinn Emanuel as

partners, where Blum continued to maintain the trademarks at issue for the Foundation.  Raskopf

Decl. I ¶ 10.  Raskopf filed renewal applications for certain of these trademarks.  *See* ECF No.

27-7; ECF No. 27-8.  In 2011, Blum left Quinn Emanuel and passed away a few years later.

Raskopf Decl. I ¶¶ 14–15.  Also in 2011, the Foundation transferred its intellectual property

matters, including work on the trademarks at issue, to another law firm.  *Id.*  Raskopf has not

worked on any of the marks at issue since then.  *See id.*

## II.  Legal Standard

      A court may disqualify an attorney from appearing in a case if there is a conflict of

interest or if the attorney has committed ethical violations.  *See United States v. Crowder*, 313

F. Supp. 3d 135, 141 (D.D.C. 2011) (quoting *Konarski v. Donovan*, 763 F. Supp. 2d 128, 135

(D.D.C. 2011)).  But "disqualification is highly disfavored, and any motion to disqualify counsel

is therefore examined with a skeptical eye."  *Id.*  Accordingly, the movant must make a

"substantial showing . . . to support the 'drastic measure' of disqualifying counsel of a party's

---

[1] As the Court understands from the parties' briefs, the "prosecution" of a trademark includes, among other things, the initial filing of a trademark application and defense of that application before the USPTO.  In contrast, the "maintenance" of a trademark refers to the timely filing of renewal applications for a registered trademark, along with the payment of associated fees.  *See Registration Maintenance/Renewal/Correction Forms*, United States Patent and Trademark Office, https://www.uspto.gov/trademarks-application-process/filing-online/registration-maintenancerenewalcorrection-forms.

choice." *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 67 (D.D.C. 2015) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 110 (D.D.C. 2013)).

To assess a motion to disqualify, a court "must consider two questions in turn: first, whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification." *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 213 (D.D.C. 2013) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d at 110). If the Court finds that an attorney violated the rules, "disqualification is appropriate if the Court is convinced that the lawyer's 'ability to act as a zealous and effective advocate for the client' is compromised, or if the representation poses 'a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party.'" *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d at 110 (quoting *Koller v. Richardson-Merrell, Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), *vacated on other grounds*, 472 U.S. 424 (1985)).

## III.    Analysis

The Federation seeks Raskopf's disqualification for violating D.C. Rules of Professional Conduct 1.9 and 3.7, as well as Quinn Emanuel's disqualification because Raskopf's conflict should be imputed to the firm under Rule 1.10. *See* Mot. The Court addresses each in turn, and ultimately concludes that neither must be disqualified, at least on this record and at this stage in the proceedings.

### A.    Raskopf's Disqualification Under Rule 1.9

Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former

client gives informed consent." D.C. R. Prof'l Conduct 1.9. Both the Federation and the Foundation agree that the parties' interests in the current matter are materially adverse and that the Federation has not consented to Raskopf representing the Foundation. *See* ECF No. 27 at 22 n.10. Therefore, to establish that a Rule 1.9 violation occurred, the Federation must show that an attorney-client relationship formerly existed between Raskopf and the Federation and that the current litigation is either the same or substantially related to Raskopf's prior representation. *See Derrickson v. Derrickson*, 541 A.2d 149, 152 (D.C. 1988).

### 1. Whether an Attorney-Client Relationship Existed Between Raskopf and the Federation

"An attorney-client relationship is formed when a client and an attorney 'explicitly or by their conduct, manifest an intention to create the attorney/client relationship.'" *Headfirst Baseball*, 999 F. Supp. 2d at 209 (quoting *In re Ryan*, 670 A.2d 375, 379 (D.C. 1996)). The Federation alleges that it had an attorney-client relationship with Raskopf over two separate time periods: (1) from 1980 to 1982, while he was an associate at Townley & Updike; and (2) from 2005 to 2013, while he was a partner, first at White & Case, and then at Quinn Emanuel.[2] Mot. at 6–7. Raskopf denies that such a relationship existed, pointing to—as discussed more below— his apparent lack of substantive work on the trademarks at issue and the lack of evidence that he had any confidential communications with the Federation. However, the Court need not wade into this question. Even if Raskopf *had* an attorney-client relationship with the Federation during either of those periods, because of the very limited nature of his involvement with the

---

[2] While the Federation contends that Raskopf's second representation continued into 2013, *see* Mot. at 7, Raskopf states that that representation ended in 2011 when Blum left Quinn Emanuel and the Foundation transferred its intellectual property work to another law firm, *see* Raskopf Decl. I ¶ 14. For purposes of this motion, the precise year the representation ended is immaterial.

marks at issue, the Federation has not established that the matters he worked on and the present

litigation are "substantially related" under Rule 1.9, such that they warrant his disqualification.

### 2. Whether Raskopf's Prior Representation is the Same as or Substantially Related to this Litigation

When considering disqualification under Rule 1.9, assuming an attorney-client

relationship has been established, the Court must determine whether the prior representation

concerned either "the same" or "a substantially related matter." D.C. R. Prof'l Conduct 1.9.

Both inquiries are highly fact-intensive. Comments to Rule 1.9 instruct that, relevant to

determining whether the matters at issue are the same, the "[t]he scope of a 'matter' for purposes

of this rule may depend on the facts of a particular situation or transaction." D.C. R. Prof'l

Conduct 1.9 cmt. 2. Moreover, a lawyer's involvement in a matter is not an either-or question; it

"can also be a question of degree." *Id.* "The underlying question is whether the lawyer was so

involved in the matter that the subsequent representation can be justly regarded as a changing of

sides in the matter in question." *Id.*

Even if the matters at issue are not the same, disqualification is required if they are

substantially related. Comments to Rule 1.9 advise that "[m]atters are 'substantially related' for

purposes of this rule if they involve the same transaction or legal dispute or if there otherwise is a

substantial risk that confidential factual information as would normally have been obtained in the

prior representation would materially advance the client's position in the subsequent matter."

*Id.*, cmt. 3. To determine whether issues are substantially related, courts apply the following

three-part analysis:

> The court must first make a factual reconstruction of the scope of the prior legal
> representation. Second, if the factual contexts overlap, the court then has to
> determine whether it is reasonable to infer that the confidential information
> allegedly given would have been given to a lawyer representing a client in those
> [prior] matters. Third, if such information apparently was available to counsel in

the prior representation, the court has to determine whether it is relevant to the issues raised in the litigation pending against the former client.

*Headfirst Baseball*, 999 F. Supp. 2d at 210 (citing *Brown v. D.C. Bd. of Zoning Adjustment*, 486 A.2d 37, 49 (D.C. 1984)) (internal quotation marks omitted).  In doing so, the Court may draw conclusions about whether confidential information was exchanged "based on the nature of the services the lawyer provided the former client and the information that would in ordinary practice be learned by a lawyer providing such services."  *Id.* at 211 (quoting D.C. R. Prof'l Conduct 1.9 cmt. 3).  And although the Federation "is not required to reveal the confidential information" it may have provided to Raskopf in moving for disqualification, *id.*, it "still must plead facts showing that information from the first 'matter might be useful in the second,'" *id.* (quoting *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 43 (D.D.C. 2013)).  Indeed, "because it has substantial impact in time and money on a client who would have to hire new lawyers after others may have already done a significant amount of work, disqualification is not mandated when the grounds are vague or tenuous."  *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326, 328 (D.D.C. 1980).

As to Raskopf's work in the 1980s, the matters are plainly not the same or substantially related because the prior matter concerned the registration of trademarks that are not in dispute here.  ECF No. 27, Ex. A at 1; Ex. B at 6–7, Ex. C at 5.  While the Federation argues that the matters involve "the same transactions and issues" because each is about "the validity, use, and ownership of [the Federation's] marks," it concedes that Raskopf's work from 1980 to 1982— over a decade before the Foundation was established—dealt with different trademarks.  *See* Mot. at 6–7.  Even so, the Federation argues that the matters are substantially related because the Foundation's use of the trademarks at issue here "will cause confusion and damage the goodwill associated with [the Federation's] *other* trademarks," including those registered by Townley &

Updike.  ECF No. 28 ("Reply") at 17–18.  That the outcome of this litigation may affect the strength of other intellectual property held by the Federation, however, does not create the necessary factual overlap between the two matters to establish that they are substantially related. Moreover, the Federation has not demonstrated a substantial risk that Raskopf would have received any confidential information from the Federation in the prior matter, nearly 40 years ago, that would benefit the Foundation's position here.  The Federation has thus not met the high standard for disqualification as it concerns Raskopf's work as a Townley & Updike associate in the 1980s.

Raskopf's later work on behalf of the Foundation presents a closer question, but the result is the same.  Even assuming that he had an attorney-client relationship with the Federation, the Federation has not shown that his prior representation was the same or is substantially related to this litigation such that he must be disqualified.

First, Raskopf's purported representation during this more recent period was not for the same "matter" for which he currently represents the Foundation.  In *Brown v. District of Columbia Zoning Adjustment*—a case cited in the comments of Rule 1.9—the District of Columbia Court of Appeals considered a "matter" to be "a discrete and isolatable transaction or set of transactions between identifiable parties."  486 A.2d 37, 42 n.4 (D.C. 1984) (en banc) (emphasis omitted) (quoting *Comm. for Washington's Riverfront Parks v. Thompson*, 451 A.2d 1177, 1188 (D.C. 1982)).  As a result, "[t]he same lawsuit or litigation is the same matter." *Comm. for Washington's Riverfront Parks*, 451 A.2d at 1188.  Here, the prior matter involved the uncontested submission of renewal applications and other maintenance filings to the USPTO for the marks at issue, the main purpose of which was to demonstrate that the marks continued to be in use.  In contrast, the instant litigation concerns a dispute between the Federation and the

Foundation over the ultimate ownership of those marks, which were initially registered by the Federation without Raskopf or Quinn Emanuel's involvement. Because these matters are "discrete and isolatable" from each other, they are not the same matter for purposes of assessing whether a violation of Rule 1.9 has occurred.

Second, the matters are not "substantially related" for purposes of disqualification, as defined under Rule 1.9. In reaching this determination, the Court first looks to whether the "factual contexts" of each representation overlap. *Headfirst Baseball*, 999 F. Supp. 2d at 210. Certainly, there is some factual overlap between the two, but only—as reflected by the discussion below—insofar as both matters concern the same trademarks. However, the degree of a lawyer's involvement in a matter can affect whether two matters are substantially related for purposes of disqualification. D.C. R. Prof'l Conduct 1.9 cmt. 2. And that is what ultimately saves Raskopf here. Moving to the second part of the analysis, the matters here are not substantially related because it is not reasonable to infer—again, even assuming Raskopf was representing the *Federation*—that the Federation's confidential information "would have been given to [him] in [the] [prior] matters." *Headfirst Baseball*, 999 F. Supp. 2d at 210. To the contrary, it seems clear from the record he had very little, if any, substantive involvement in the prior matters.

Although the Federation baldly argues that Raskopf "provided specific advice about how to maintain and protect the validity" of the marks at issue, Reply at 16, it has not identified *any* communications between it and Raskopf during this period. And while the Federation is not required to prove that it provided confidential information to Raskopf, it must at least demonstrate a factual basis for the Court to infer that there is a substantial risk that that happened. It has not done so. To the contrary, the record strongly suggests otherwise. Raskopf

denies that he ever served as counsel for the Federation; had any conversations with attorneys, employees, or officers employed by the Federation; or received any documents from the Federation about the trademarks at issue. Raskopf Decl. I ¶¶ 13, 16. And the Foundation has provided powerful evidence suggesting that Raskopf had minimal involvement in Quinn Emanuel's maintenance of the marks at issue, including timesheets from the firm showing that Raskopf did not record *any* billable hours for those matters. *See* ECF No. 33-1 ("Raskopf Decl. II"), Ex. B. Rather, almost all the 34 hours Quinn Emanuel billed to the Foundation during this time were worked by a trademark paralegal, which suggests that its work was limited and did not involve the exchange of confidential information with (or the offering of legal advice to) any party. *Id.* And a significant portion of the hours reflected in those timesheets, Raskopf contends, concerned trademarks not at issue in this case. *Id.* ¶ 9. On this record, the Court cannot find that there is a "substantial risk" that Raskopf obtained confidential information from the Federation in the prior matters that would materially advance the Foundation's position in this case.[3] *See Headfirst Baseball*, 999 F. Supp. 2d at 210; D.C. R. Prof'l Conduct 1.9 cmt. 3.

The Federation argues that the Court may infer that confidential information was exchanged based on Quinn Emanuel's filings with the USPTO listing the Federation as the owner and registrant of the marks. Reply at 14–15. It contends that courts "routinely conclude that an attorney who helps secure trademark rights on behalf of a client is barred from later attacking that client's trademark rights." *Id.* at 15. But the cases it cites for this proposition are

---

[3] Even if the Court *did* have reason to infer a substantial risk that Raskopf received confidential information about the *Federation*, given the parties' close working relationship at that time, it appears likely that the Foundation would also have received that information, regardless of their choice of counsel in this case. And the Foundation's possession of any such information would negate any "substantial possibility of an unfair advantage" it might gain by hiring Raskopf. *Koller*, 737 F.2d at 1056.

readily distinguishable. In *Graham v. TPII, LLC*, for example, the allegedly conflicted law firm had performed much more extensive legal work for the party seeking disqualification, including the initial registration of trademarks bearing the same "specimens" as the marks at issue, which required "more than mere technical representation."[4] No. MO:16-CV-00286-RAJ, 2016 WL 10520947, at *4 (W.D. Tex. Nov. 2, 2016). Similarly, in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, it was "undisputed" that the attorney, who served as in-house counsel to the party seeking disqualification, provided legal advice to that party and "had extensive involvement with [their trademark] prosecution and enforcement." No. C 07-03752 JSW, 2007 WL 3203056, at *4 (N.D. Cal. Oct. 29, 2007). And in *John Crane Production Solutions, Inc. v. R2R and D, LLC*, the disqualified law firm—unlike Raskopf—had previously undertaken significant efforts to prosecute and register the marks at issue and in doing so had made arguments to the USPTO regarding the same issues that would arise in that case. Civil Action No. 3:11–CV–3237–D, 2012 WL 3453696, at *6–7 (N.D. Tex. Aug. 14, 2012). Notably, the court in *John Crane* did not find that the law firm's status as "the counsel of record" with the USPTO for the one of the marks at issue or its non-substantive legal work while serving as counsel of record presented a conflict requiring disqualification. 2012 WL 3453696, at *7. So too here.

The Federation also argues that, to the extent the resolution of the instant motion requires the Court to resolve disputed facts related to the merits of this case, it should grant the motion

---

[4] Although the Foundation, at various points in its briefing, places too much weight on the distinction between the registration of the marks at issue (which involved neither Raskopf nor Quinn Emanuel) and the subsequent renewal of those marks, the Court agrees that the effort of initially registering trademarks would likely require more substantive input and advice from counsel, which would give rise to a stronger inference that the representation required the exchange of confidential information.

out of an abundance of caution. Reply at 12 (citing *Home Ventilating Inst., Inc. v. Air Movement & Control Ass'n*, No. 04 C 1898, 2004 WL 2005809, at *7–8 (N.D. Ill. Aug. 30, 2004)). But because the Court cannot infer that there is a substantial risk that Raskopf obtained confidential information from the Federation, it need not resolve any such disputed facts. *See United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (holding that disqualification should be ordered "only if the facts present a real risk that the trial will be tainted").

For these reasons, the Federation has not established that either Raskopf's purported representations between 1980 and 1982, or between 2005 and 2013, are substantially related to this litigation such that his disqualification is warranted for violating Rule 1.9.[5]

## B.    Raskopf's Disqualification under Rule 3.7

Rule 3.7 prevents an attorney from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness." D.C. R. Prof'l Conduct 3.7. As such, the rule only applies to trial counsel and "even a lawyer who is likely to be a necessary witness at trial is not disqualified from representing his client during pretrial proceedings." *Ambush v. Engelberg*, 282 F. Supp. 3d

---

[5] The Federation's reliance on D.C. Bar Ethics Opinion No. 247 to support its argument for disqualification is misplaced. In that opinion, the D.C. Bar explained that when a single lawyer "performed some services for both [the] seller and purchaser in a residential real estate transaction," but "did not notify the seller that he represented only the purchaser," the lawyer "should not represent the purchaser against the seller in a subsequent dispute concerning the sale." D.C. Bar Legal Ethics, Op. 247 (1994). In contrast, Raskopf declares that he had no relevant contact with the Federation at all. *See* Raskopf Decl. I ¶ 16; Raskopf Decl. II ¶ 7. Moreover, the reasoning of that opinion turns on Rule of Professional Conduct 4.3, which governs the conduct of lawyers "dealing on behalf of a client who is not represented by counsel." That rule requires that "[w]hen the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding." D.C. Rule of Professional Conduct 4.3(b). Given that neither of these sophisticated parties were unrepresented during their past dealings, *see* ECF No. 21-12, ¶ 2, that opinion has no applicability here.

58, 65 (D.D.C. 2017).  Given the early stage of these proceedings, it would be premature to

disqualify Raskopf from participating in a possible trial that may be years down the road—

although the Court recognizes that, given the facts here, that may very well be what happens.

The Federation is free to renew its motion to disqualify Raskopf as trial counsel should this

action proceed to trial.

### C.     Quinn Emanuel's Disqualification Under Rule 1.10(a)

Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall

knowingly represent a client when any one of them practicing alone would be prohibited from

doing so" by Rule 1.9.  D.C. R. Prof'l Conduct 1.10(a).  But because Raskopf is not disqualified

under Rule 1.9, neither is Quinn Emanuel.[6]  In its reply, the Federation suggests that Quinn

Emanuel "may still be conflicted based on other attorneys' work for [the Federation]."  Reply at

20–21.  More specifically, the Federation alleges that, under Rule 1.10(c), Blum's prior work

maintaining the trademarks at issue should disqualify Quinn Emanuel from acting as counsel for

the Foundation.  *Id.*  That rule provides that a firm is disqualified from a representation if (1) "the

matter is the same or substantially related to that in which the formerly associated lawyer

represented the client," *and* (2) "any lawyer remaining in the firm has [confidential]

information . . . that is material to the matter."  D.C. R. Prof'l Conduct 1.10(c).  But, as noted

above, Blum left Quinn Emanuel in 2011, and passed away a few years later.  Raskopf Decl. I

¶¶ 14–15.  And none of the other attorneys who billed time to maintaining the trademarks at

issue remain at Quinn Emanuel.  Raskopf Decl. II ¶¶ 8–9.

---

[6] The Federation makes no allegation under Rule 1.7.

## IV.    Conclusion

For all the above reasons, it is hereby **ORDERED** that the Federation's Motion to Disqualify Counsel, ECF No. 21, is **DENIED** without prejudice.  The Federation may renew its motion upon the discovery of any additional relevant facts or if the case proceeds to trial.


**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 25, 2019