IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES SOCCER FEDERATION FOUNDATION, INC.**, <br><br>     Plaintiff/Counter-Defendant, <br><br> v. <br><br> **UNITED STATES SOCCER FEDERATION, INC.**, <br><br>     Defendant/Counter-Plaintiff. | Civil Action No. 1:18-cv-02856-TJK |

## [REDACTED] JOINT REPORT CONCERNING DISCOVERY DISPUTE

Plaintiff/Counter-Defendant United States Soccer Federation Foundation, Inc. ("Foundation"), together with Defendant/Counter-Plaintiff United States Soccer Federation ("USSF" or "U.S. Soccer") respectfully submit this Joint Report pursuant to the Court's Minute Orders dated March 20 and 25, 2020 concerning a discovery dispute that has arisen between the Parties.

**The Foundation's Position**

**I. BACKGROUND**

This discovery dispute concerns the USSF's improper collection of documents that belong exclusively to the Foundation, and the USSF's refusal to delete those documents.

As the Foundation previously explained (*see* 11/22/2019 Hr'g Tr. (Ex. A)), in the course of discovery, the USSF's counsel collected documents from various current and former members of the USSF's Board of Directors.  Importantly, at least one of these USSF document custodians also served on ***the Foundation's*** Board of Directors from 1994 until February 12, 2020.  When the USSF collected documents from these "overlapping" Board members, it made no effort to exclude such Foundation-owned documents from its search for, or collection of documents.  As a result, the USSF collected ***thousands*** of the Foundation's confidential and proprietary documents, received by these USSF custodians ***solely*** in their capacity as Foundation Board members.

After the Foundation learned of the USSF's improper collection, the Foundation demanded that the USSF:  (1) review its collection to identify all documents that belonged to the Foundation; and (2) return all such materials to the Foundation.  The USSF refused, and the Foundation sought the Court's intervention.  On November 22, 2019, this Court conducted a telephonic hearing to address the Foundation's concerns.  The Court ordered the USSF to "***return***[]" the improperly collected materials to the Foundation.  Hr'g Tr. 21:3-7.  In doing so, the Court recognized "that the burden is on [the USSF] to go through what they have collected … [and] to make sure they ***don't have anything*** that, arguably, should only be [the Foundation's]." *Id.* at 20:1-5; *see also id.* at 21:3-7; 22:9-1.  The Court directed the USSF to "err on the side of caution" and "if there is a document or documents that [the USSF] think[s], at least arguably, the Foundation might claim that is solely their document, that [the USSF] raise it with [the Foundation]." *Id.* at 23:21-25.

The USSF eventually returned 3,754 documents to the Foundation on January 29, 2020,

including: (1) privileged Foundation Board materials; (2) confidential Foundation Board minutes; and (3) internal confidential communications involving the Foundation's Board members. Of these 3,754 documents, the USSF confirmed that 2,965 are Foundation-only documents ("Category 1"). As for the remaining 609 documents ("Category 2"), the USSF requested that the Foundation review them to provide guidance as to whether or not these documents are, in fact, Foundation-only documents. Although the Foundation completed this review on February 13, 2020 and provided the USSF with its view as to the status of each individual document—identifying 531 that are Foundation-only—the USSF has still not responded.

Also on February 13, 2020, the Foundation asked the USSF to confirm that it had ***deleted*** its copies of the documents that the Parties agreed were Foundation-only documents (*i.e.*, all of Category 1 and the Category 2 documents for which the Parties also agree are Foundation-only documents). Although a response twice was promised to be forthcoming, none arrived. On March 4, 2020, the Foundation followed up in writing on this lack of response. Finally, on March 9, 2020, the USSF responded, refusing to delete the Foundation's documents. *First*, the USSF insisted that the Foundation's Board documents belong to the USSF, not the Foundation. *Second*, the USSF argued that it need not delete the improperly-collected documents because they are "relevant." *Third*, and most distressingly, the USSF revealed that it intended to ***continue*** using these improperly-collected documents as a sword against the Foundation, notwithstanding that the USSF should never have collected these documents in the first place (much less reviewed them). As it turns out, the USSF has followed through on its threat, attaching to this very filing one of the Category 1 documents that it has already conceded ***belongs to the Foundation***. *See* Ex. E.

## II. ARGUMENT

The Court should order the USSF to immediately delete all Category 1 and Category 2 documents the USSF improperly collected and that belong to the Foundation. At the outset, the

issue before the Court is *not* what the documents contain; rather, the sole question is whether the USSF can *keep* and *use* Foundation documents that it has only because it improperly collected them from "overlapping" custodians, and that were not supposed to be shared with the USSF.

First and foremost, there is no dispute that *these documents belong to the Foundation*. The only reason that the key USSF custodian at issue even had these documents is because he happened to also sit on the Foundation's Board—an entity to which he owed a duty of loyalty. Put simply, these documents should never have been collected by the USSF. That is why the Court previously directed the USSF to "return[]" them to the Foundation—an order that would have been meaningless if the USSF could also continue to retain and use its own copies. Having failed to properly limit the scope of its collection, the USSF should not stand to exploit its ill-gotten gains.

Nor is "sequestering" these documents (as the USSF proposes) a sufficient remedy. Given that the USSF should never have had these documents, there is no basis to allow the USSF to keep them. The danger of this approach is confirmed by the USSF's stated desire to retain copies so that it can later look for supposed deficiencies in the Foundation's document production. The USSF, of course, cannot be permitted to use documents that it improperly collected as a future check against the Foundation—just as it would not be permitted to keep materials it obtained from an inadvertent production of privileged materials. *See* Dkt. 40 ¶ 18 (Protective Order) (receiving party must "delete and/or destroy all copies").

Finally, the USSF has contended that the Foundation intends to withhold responsive, non-privileged Foundation Board documents in Categories 1 and 2. **This is incorrect**—the Foundation repeatedly told the USSF that, after the parties reach an agreement as to the status of the Category 1 and 2 documents, it will conduct its own review of these documents, and upon completion: (1) produce all responsive, non-privileged communications to the USSF; and (2) log all responsive,

privileged communications. This should not be shocking—it is how discovery is conducted every day. At base, the Foundation—like all parties—is entitled to make its own independent responsiveness determinations about its own documents. Just as the Foundation is not entitled to access USSF documents that the USSF determined are non-responsive, so too the USSF cannot use documents it improperly collected to challenge the Foundation's responsiveness calls. The USSF will therefore suffer no prejudice by deleting the Foundation's documents that it collected.

None of the USSF's counterarguments for retaining copies is persuasive. *First*, the USSF has argued that the Foundation's Board documents are in the "possession, custody, or control" of the USSF. This rehashes the same arguments this Court previously rejected at the November hearing—if the Foundation's documents belonged to the USSF, the Court would not have ordered the USSF to spend *months* identifying them and returning them to the Foundation, nor have directed the USSF to cease collecting documents from these Board members. *See* Hr'g Tr. at 17:9-18. Moreover, the USSF errs in arguing, as it did during the meet-and-confer process, that these USSF custodians sat on the Foundation's Board "in their capacity as key decision-makers" at the USSF. Rather, each person who serves on the Foundation's Board does so solely in his or her capacity as a fiduciary to *the Foundation*, to which its Directors owe an unwavering duty of loyalty, which includes a duty of confidentiality. *See e.g., Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 129 (Del. Ch. 1969); *Dusel v. Castellani*, 350 N.Y.S.2d 258, 259 (1973). It is hornbook law that "there is no 'safe harbor'" for directors with "divided loyalties." *Weinberger v. UOP, Inc.,* 457 A.2d 701, 710 (Del. 1983). The mere fact that these Directors contemporaneously served as officers and directors of the USSF is irrelevant. By analogy, the Board of Directors of IBM includes the current CEO of Johnson & Johnson ("J&J"); it would be absurd to suggest that because this Board member receives confidential IBM Board materials, those materials somehow

4

are in the "possession, custody or control" of J&J.  Finally, the Court should decline the USSF's invitation to inspect the Foundation's corporate governance—the Court *already* determined that the USSF was required to *return* these documents.  Thus, the USSF must delete its own copies.

*Second*, the USSF has argued that it need not delete the improperly-collected Foundation documents because they are all purportedly relevant, and would be produced back to the USSF anyway.  But this dispute has nothing to do with relevance.  To the extent any documents are responsive, they will be produced or logged by the Foundation as part of discovery; the USSF's renegade collection does not throw the rules of discovery out the window.[1]  Nor did the Foundation "acquiesce" to the collection of Foundation documents, as the USSF has claimed.  The USSF never disclosed its document custodians to the Foundation, much less that it would collect *Foundation* documents from them.  And when the Foundation learned of the USSF's improper collection in September 2019, it promptly objected.

*Third*, the USSF has argued that its deletion of these documents would deprive the Court of the ability to review them in the event a dispute arises as to these materials.  But the USSF already returned these documents to the Foundation, and the Foundation will retain these copies until the conclusion of this litigation.  In any event, the instant discovery dispute concerns deleting documents that the parties *agree* belong to the Foundation, so there is no reason for the Court to "review" them to determine who owns them.

The Court should order the USSF to immediately delete and destroy all of the Foundation's documents that it improperly collected as part of its discovery efforts.

---

[1] The USSF also argued that all of these documents are relevant because each supposedly hit on one of the USSF's search terms, but that position is contrary to law.  *See, e.g., Ala. Aircraft Indus., Inc. v. Boeing Co.*, 2017 WL 9565521, at *3 (N.D. Ala. Oct. 25, 2017) (rejecting argument "that because these 13 documents may contain a search term that they are automatically responsive to its RFPs and must be produced").

5

**U.S. Soccer's Position**

The Foundation has sued U.S. Soccer and now demands that US Soccer delete documents (the "Disputed Foundation Documents") requested by the Foundation during discovery.[2] This demand is improper because those documents are (1) in U.S. Soccer's possession, custody, or control, and have been for years, (2) relevant to this litigation and must be produced by the Foundation, (3) not properly the subject of any privilege or immunity from disclosure, and (4) have been sequestered from all other documents since the Foundation first raised this issue many months ago. The demand also ignores the longstanding practical and legal inter-relationship between the Foundation and U.S. Soccer. For example, the Foundation was **created** by and exists in part to support U.S. Soccer. The Foundation's governing documents require U.S. Soccer's oversight of the Foundation's Board of Directors by several key decision-makers at U.S. Soccer. Destruction of the documents further ignores their relevance to core issues in this case. Tellingly, the Foundation has only produced back to U.S. Soccer some of these critically relevant documents, and, even then, only selectively so. Finally, the requested relief is premature in light of the specific procedure that the Court ordered the parties to follow on November 22, 2019. For any of these reasons, the Court should deny the Foundation's request and allow the parties to continue their meet-and-confer process pursuant to the Court's previous Order.

**The Foundation Exists to Support U.S. Soccer and Requires U.S. Soccer Oversight**

The Disputed Foundation Documents were properly within U.S. Soccer's possession, custody, and control because the Foundation existed to support U.S. Soccer and required U.S. Soccer's oversight. U.S. Soccer created the Foundation in 1993, and the Foundation's stated reason for existence since has been, in part, to support U.S. Soccer. Even today, the Foundation's

---

[2] Regardless of the shorthand name for these documents, whether "Category 1," "Foundation documents," etc., U.S. Soccer is entitled to them for the reasons set forth in this joint submission.

6

Articles of Incorporation state one of its purposes is "investing . . . , any and all revenues and contributions it receives and, to the extent the Corporation shall determine, applying the income from such investments and the principal thereof, to the general purposes of [U.S. Soccer]." Ex. B at -0001279. To that same end, if the Foundation ever dissolves, its remaining assets will be distributed back to the entity that created it and it exists to support: U.S. Soccer. *Id.* at -0001282.



███ Ex. C at -0006149. ███

███ The Foundation also requires that ███

███ Ex. D at -0009350. ███

███ *Id.* Even today, the Foundation's Articles of Incorporation require seven of its Board seats to be reserved for U.S. Soccer, and U.S. Soccer maintains discretion over who at U.S. Soccer should fill those seats. Ex. B at -0001283-84.

The entire reason for having so many key decision-makers at U.S. Soccer on the

7

Foundation's Board is to allow U.S. Soccer to oversee and provide guidance to the Foundation and for the Foundation to relay information to U.S. Soccer in furtherance of the Foundation's support of U.S. Soccer. It was expected (and the custom and practice) that the U.S. Soccer representatives on the Foundation's Board would keep U.S. Soccer apprised of all Foundation-related activities. Further, the Foundation's CEO presents to the U.S. Soccer Board of Directors at its Annual Meeting to report on the Foundation's marketing and fundraising activities.

The Foundation's litigation-created theory that U.S. Soccer is not entitled to the Disputed Foundation Documents is contradicted by its own corporate governance documents and actions. U.S. Soccer is clearly entitled to the documents it collected from U.S. Soccer individuals who also sit on the Foundation's Board. In fact, because U.S. Soccer is a beneficiary of the Foundation, the Foundation owes a fiduciary duty to U.S. Soccer. *See Oberly v. Kirby*, 592 A.2d 445, 462 (Del. 1991) ("[B]ecause the Foundation was created for a limited charitable purpose rather than a generalized business purpose, those who control it have a special duty to advance its charitable goals and protect its assets."); *see also Gassis v. Corkery*, No. CIV.A. 8868-VCG, 2014 WL 2200319, at *14 (Del. Ch. May 28, 2014) ("[A] nonprofit charitable corporation's board owes fiduciary duties to its beneficiaries, not to its members qua members or directors qua directors."), *aff'd*, 113 A.3d 1080 (Del. 2015). U.S. Soccer's representatives were on the Foundation's Board to ensure the Foundation was acting within such fiduciary duties.

### U.S. Soccer Collected the Relevant Documents at the Foundation's Request

Relatedness of the parties aside, U.S. Soccer is nonetheless entitled to the Disputed Foundation Documents in this litigation, and while the contents of the documents may hurt the Foundation's claims before this Court, that is not sufficient under the law to compel their destruction. Both parties propounded discovery requests that seek the Disputed Foundation

8

Documents, and, therefore, U.S. Soccer is entitled to these documents in this litigation. In fact, the entire reason that U.S. Soccer collected the Disputed Foundation Documents in the first place is because the Foundation issued Requests for Production that sought *those very documents from U.S. Soccer and its representatives on the Foundation's Board*.

The Foundation sought from U.S. Soccer "All Documents and Communications Concerning Your involvement in the governance of the Foundation, including Your involvement in the Foundation's Board of Directors." Pursuant to those requests, U.S. Soccer searched its records for responsive documents, including in the records of U.S. Soccer personnel who are representatives of U.S. Soccer on the Foundation's Board, and collected, among other things, the Disputed Foundation Documents. Prior to that search, U.S. Soccer even provided the Foundation with a list of search terms it intended to use to collect potentially relevant documents. Those search terms are the terms that hit on and led to collection of the Disputed Foundation Documents.[3] This was no clandestine document collection without the Foundation's knowledge, but was done fully with the Foundation's knowledge—and, indeed, at its request.

One of the Disputed Foundation Documents that the Foundation requested and U.S. Soccer collected is one of the most case-dispositive documents in this litigation, yet the Foundation wants to destroy it. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. E at -00028918. This document is central to the nature of the ongoing relationship between U.S. Soccer and the Foundation as it relates to

---

[3] The Foundation never responded or otherwise objected to U.S. Soccer's plans to collect documents from its custodians that hit on those search terms.

the trademarks at issue, arguably the key dispositive issue in this case.

The Disputed Foundation Documents, including the example ▄▄▄▄▄▄▄▄, are also responsive to U.S. Soccer's requests to the Foundation.  For example, U.S. Soccer seeks, "All Documents and Communications which mention, discuss, or refer to U.S. Soccer's involvement in Your governance, including U.S. Soccer's involvement on Your Board of Directors."  Despite this request, the Foundation did not produce a majority of the Disputed Foundation Documents and still refuses to produce many relevant, responsive documents that U.S. Soccer knows to exist.  This, together with the Foundation's request for destruction, evidences the Foundation's desire to remove clearly relevant documents from this litigation by judicial fiat.  The Court should decline approval of the Foundation's antics.

### The Foundation's Request Is Premature under the Court's November 22 Order

The Foundation already sought the same relief it seeks now, but the Court instead ordered the parties to confer "to determine the status of the documents identified."  Order of November 22, 2019.  The Court further ordered the parties to request a telephonic conference with the Court only if "a dispute remains *after* the parties have met and conferred."  *Id.* (emphasis added).  The parties' meet and confer is ongoing.  The parties have not even agreed on a complete universe of documents for which judicial intervention is necessary.  Regardless of the Court's ruling on the Foundation's current request, the Foundation is certain to raise similar—if not the same—issues on other documents after the parties complete their meet-and-confer process to "determine the status" of the remaining documents.  This piecemeal approach to fact-intensive determinations by the Court on a document-by-document basis is a waste of party and judicial resources and time.  Accordingly, and especially in light of the process outlined in the Court's November 22, 2019 Order, the Foundation's request for judicial intervention is premature.

Dated: March 27, 2020

Jointly Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Robert L. Raskopf*
    Robert L. Raskopf (admitted *pro hac vice*)
    Todd Anten (admitted *pro hac vice*)
    Julia M. Beskin (admitted *pro hac vice*)
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Telephone: (212) 849-7000
    Fax: (202) 849-7100
    robertraskopf@quinnemanuel.com
    toddanten@quinnemanuel.com
    juliabeskin@quinnemanuel.com

    Scott E. Lerner (#1024964)
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
    1300 I Street NW, 9th Floor
    Washington, D.C. 20005
    Telephone: (202) 538-8000
    Fax: (202) 538-8100
    scottlerner@quinnemanuel.com

    *Attorneys for Plaintiff/Counter-Defendant United States Soccer Federation Foundation, Inc.*

CROWELL & MORING, LLP

By: */s/ David J Ervin*
    David J. Ervin (D.C. Bar #445013)
    DErvin@crowell.com
    Shari Ross Lahlou (D.C. Bar #476630)
    SLahlou@crowell.com
    Crowell & Moring LLP
    1001 Pennsylvania Avenue, NW
    Washington, D.C. 20004
    Tel: (202) 624-2500

Kent B. Goss (admitted *pro hac vice*)
KGoss@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Tel: (213) 443-5504

*Attorneys for Defendant/Counter-Plaintiff*
*United States Soccer Federation, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2020 I electronically filed the foregoing document using the Court's CM/ECF system, which sent notification of such filing to all counsel of record.

 

*/s/ Scott E. Lerner*
Scott E. Lerner